# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

_____

C.B.,
*Appellant-Plaintiff,*

v.

NASEEB INVESTMENTS, INC.,
*Appellee-Defendant.*

_____

Appeal from the United States District Court
for the Northern District of Georgia
Case No. 1:20-cv-04213-AT

_____

**Brief of Appellee-Defendant**

_____

Kori Wagner
Tracy Anne Gilmore
SWIFT, CURRIE,
MCGHEE & HIERS, LLP
1420 Peachtree Street NE,
Suite 800
Atlanta, GA 30309
T: (404) 888-6191
kori.wagner@swiftcurrie.com
tracy.gilmore@swiftcurrie.com

Laurie Webb Daniel
Jonathan Bradley Spital
WEBB DANIEL
FRIEDLANDER LLP
75 14th Street NE
Suite 2450
Atlanta, GA 30309
T: (404) 795-5088
laurie.daniel@webbdaniel.law
jonathan.spital@webbdaniel.law

*Counsel for Appellee-Defendant Naseeb Investments, Inc.*

## <u>Certificate of Interested Persons & Corporate Disclosure Statement</u>

In accordance with Federal Rule of Appellate Procedure 26.1 and

Eleventh Circuit Rules 26.1-1 through 26.1-3, counsel for Appellee-Defendant

Naseeb Investments, Inc. certifies that the following is a complete list of all

trial judges, attorneys, persons, associations of persons, firms, partnerships, or

corporations (including subsidiaries, conglomerates, affiliates, parent

corporations, any publicly held corporation that owns 10% or more of the

party's stock, and other identifiable legal entities related to a party) that have

an interest in the outcome of this particular case or appeal:

- Amin, Nalini (Joint Owner of Defendant Naseeb Investments)

- Amin, Vic (Joint Owner of Defendant Naseeb Investments)

- Atkins, Sabrina Lynn (Counsel for Defendant-Appellee)

- Baker, Donelson, Bearman, Caldwell & Berkowitz, P.C. (Counsel for Movant Choice Hotels International Inc.)

- Beranek, Lori M. (Counsel for Movants U.S. Attorney's Office and FBI)

- Bondurant, Mixson & Elmore LLP (Counsel for Plaintiff-Appellant)

- Cartiga Consumer Funding, LLC (Litigation Funding) C.B. (Plaintiff-Appellant)

- Choice Hotels International, Inc. (Movant in District Court)

- Colette, Hervey Joseph (Counsel for Movant View Point Health)

- Cooper, Belle-Anne (Counsel for Plaintiff-Appellant)

- Federal Bureau of Investigation (Movant in District Court)

- Freeman Mathis & Gary, LLP (Counsel for Movant View Point Health)

- Gilmore, Tracy Anne (Counsel for Defendant-Appellee)

- Greenaway, Amber (Counsel for Plaintiff-Appellant)

- Harris, Roger E. (Counsel for Defendant-Appellee)

- Lee, Christopher Sue (Counsel for Movant View Point Health)

- Merrill, Marissa (Counsel for Defendant-Appellee)

- Naseeb Investments, Inc. d/b/a The Hilltop Inn a/k/a Econolodge (Defendant-Appellee)

- Patel, Atul (Joint Owner of Defendant Naseeb Investments)

- Patel, George (Joint Owner of Defendant Naseeb Investments)

- Ramachandrappa, Naveen (Counsel for Plaintiff-Appellant)

- Spital, Jonathan (Counsel for Defendant-Appellee)

- Stoddard, Matthew (Counsel for Plaintiff-Appellant) Swift, Currie, McGhee & Hiers, LLP (Counsel for Defendant-Appellee)

- The Stoddard Firm (Counsel for Plaintiff-Appellant)

- Totenberg, Hon., Amy (District Court Judge, N.D. Ga.)

- Tropper, Joshua (Counsel for Movant Choice Hotels International Inc.)

- Turner, Sara Marie (Counsel for Movant Choice Hotels International Inc.)

- United States Attorney's Office (Movant in District Court)

- View Point Health (Movant in District Court)

- Wagner, Kori (Counsel for Defendant-Appellee)

- Webb Daniel, Laurie (Counsel for Defendant-Appellee)

- Webb Daniel Friedlander LLP (Counsel for Defendant-Appellee)

- WLG Atlanta, LLC (Counsel for Plaintiff-Appellant)

- Zabresky, Janelle (Counsel for Plaintiff-Appellant)

Counsel for Appellee Naseeb Investments, Inc. further certifies that

Choice Hotels International, Inc. (CHH) is a publicly traded company that has

an interest in the outcome of this case or appeal.

Submitted this March 31, 2025.

*/s/ Laurie Webb Daniel*
Laurie Webb Daniel
Jonathan Bradley Spital
WEBB DANIEL FRIEDLANDER LLP
75 14th Street NE
Suite 2450
Atlanta, GA 30309
(404) 433-6430
laurie.daniel@webbdaniel.law
Jonathan.spital@webbdaniel.law

Kori Wagner
Tracy Ann Gilmore
SWIFT, CURRIE,
MCGHEE & HIERS, LLP
1420 Peachtree Street NE
Suite 800
Atlanta, GA 30309
(404) 874-8800
kori.wagner@swiftcurrie.com
tracy.gilmore@swiftcurrie.com

*Attorneys for Appellee-Defendant*

## Statement Regarding Oral Argument

There is no need for oral argument in this case because this Court already has resolved the dispositive issues in a binding, published decision. *See Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 719 (11th Cir. 2021). In *Red Roof*, this Court "decide[d] a question of first impression about the elements" of a civil beneficiary claim under the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1595(a). *Id.* Applying the plain meaning of the statute, this Court held that:

> [T]o state a claim for beneficiary liability under the TVPRA, a plaintiff must plausibly allege that the defendant (1) knowingly benefited (2) from taking part in a common undertaking or enterprise involving risk and potential profit, (3) that the undertaking or enterprise violated the TVPRA as to the plaintiff, and (4) that the defendant had constructive or actual knowledge that the undertaking or enterprise violated the TVPRA as to the plaintiff.

*Id.* That is the law of this Circuit. And the district court correctly applied it.

While it is true that *Red Roof* involved claims against a hotel franchisor rather than a hotel operator, this Court has already explained that this distinction is "immaterial." *See K. H. v. Riti, Inc.*, 2024 WL 505063, at *3 (11th Cir. Feb. 9, 2024) (unpublished opinion). And *Red Roof* made clear that receiving a financial benefit from the rental of hotel rooms does "nothing to show that the [defendant] participated in a common undertaking involving risk or profit that violated the TVPRA." *See Red Roof*, 21 F.4th at 727. Moreover, consistent with the plain

language of the TVPRA, *Red Roof* squarely held that Plaintiff must show "that the defendant had constructive or actual knowledge that the undertaking or enterprise violated the TVPRA *as to the plaintiff*." 21 F.4th at 719 (emphasis added).

Plaintiff, "C.B.," suggests that oral argument should be granted because "this appeal could avoid or could create a circuit split," Br. at iii-iv. A circuit split already exists, however, in light of *G.G. v. Salesforce.com, Inc.* 76 F.4th 544, 551 (7th Cir. 2023). And that opinion itself was a split decision, with a strong dissent construing the statute the same way this Court did in *Red Roof* and *Riti*. *G.G. v. Salesforce* is no basis for this Court to change its existing and correct application of the TVPRA. *See Brush v. Sears Holdings Corp.*, 466 F. App'x 781, 787, n.7 (11th Cir. 2012) ("[I]t should go without saying that [this Court is] not bound by the decisions of other circuits."). Indeed, this panel is bound to follow *Red Roof*. *See Cargill v. Turpin*, 120 F.3d 1366, 1386 (11th Cir. 1997) ("The law of this circuit is emphatic that only the Supreme Court or this court sitting *en banc* can judicially overrule a prior panel decision.") (quoting *United States v. Woodard,* 938 F.2d 1255, 1258 (11th Cir. 1991)).

In short, there is nothing to be gained by oral argument because Plaintiff's theories of recovery have already been fully considered and rejected by this Court. While there may be occasion for this Court to further refine the parameters for beneficiary liability under the TVPRA, this case is not it.

# Table of Contents

Certificate of Interested Persons & Corporate Disclosure Statement...................C-1

Statement Regarding Oral Argument ........................................................ i

Table of Contents ........................................................................ iii

Table of Citations .........................................................................v

Statement of Issues..........................................................................1

Statement of Case............................................................................1

    Factual and Procedural Background........................................................1

    Standard of Review .....................................................................7

Summary of Argument ........................................................................8

Argument....................................................................................11

    I.  C.B. failed to demonstrate a genuine dispute of material fact as to
        whether Naseeb "participated in a venture" with her trafficker.................14

      A. Merely renting a hotel room to a trafficker is insufficient to show
          "participation in a venture" as a matter of law........................................14

        i.  Renting a hotel room does not establish a common enterprise
            with the trafficker...............................................................14

        ii. The District Court properly held that C.B. failed to present
            evidence that Naseeb took actions to support or facilitate her
            alleged trafficking. ...........................................................20

        iii. Participation in a "commercial venture" is not sufficient to
            establish beneficiary liability. ..............................................22

        iv. C.B.'s attempts to distinguish *Red Roof* and *Riti* are unavailing..........24

      B.  There is no evidence that Naseeb did anything to facilitate Chappell's
         trafficking of C.B. beyond allowing him to rent a hotel room.................27

II. C.B. failed to demonstrate a genuine dispute of material fact as to whether Naseeb "knew or should have known" that she was being trafficked...............................................................................30

  A. There is no evidence that Naseeb had any knowledge that Chappell was trafficking C.B....................................................................30

  B. To establish beneficiary liability under Section 1595, the venture must violate the TVPRA as to the Plaintiff...............................34

    i. *Red Roof*'s statement of the elements of a TVPRA beneficiary claim is binding Eleventh Circuit precedent.........................35

    ii. *Red Roof* correctly states the elements of a TVPRA beneficiary claim...............................................................................36

    iii. *Red Roof* is binding on this panel. .........................................39

  C. There is no evidence that Naseeb was aware that Chappell was generally engaged in sex trafficking. ......................................40

Conclusion ....................................................................................42

# Table of Citations

**Page(s)**

## Cases

*A.B. v. H.K. Grp. of Co.*,
  2022 WL 467786 (N.D. Ga. Feb. 9, 2022)............................................22

*A.D. v. Best W. Int'l, Inc.*,
  2023 WL 2955712 (M.D. Fla. Apr. 14, 2023) ....................................41

*Bonner v. City of Prichard, Ala.*,
  661 F.2d 1206 (11th Cir. 1981) ........................................................37

*Brush v. Sears Holdings Corp.*,
  466 F. App'x 781 (11th Cir. 2012) ............................................... ii, 37

*Cargill v. Turpin*,
  120 F.3d 1366 (11th Cir. 1997) ................................................... ii, 40

*Clarence L. Martin, P.C. v. Chatham Cnty. Tax Com'r*,
  258 Ga. App. 349 (2002) ..................................................................32

*Cordoba v. Dillard's, Inc.*,
  419 F.3d 1169 (11th Cir. 2005) ..........................................................8

*Doe 1 v. Apple Inc.,*
  96 F.4th 403 (D.C. Cir. 2024) ..........................................................18

*Doe 1 v. Red Roof Inns*, Inc.,
  2020 WL 1872335 (N.D. Ga. Apr. 13, 2020) ....................................23

*\* Doe #1 v. Red Roof Inns, Inc.*,
  21 F.4th 714 (11th Cir. 2021)........................... i-ii, 5-10, 13-16, 20-27, 30, 34-40

*Doe (G.N.C.) v. Uniquest Hosp., LLC*,
  2024 WL 4149251 (S.D.N.Y. Sept. 11, 2024) ....................................38

*Doe (K.B.) v. G6 Hosp., LLC,*
  2023 WL 8650785 (N.D. Ga. Dec. 14, 2023) ............................... 22, 36

*Doe (K.B.) v. G6 Hosp., LLC,*
2024 WL 4701891 (N.D. Ga. Nov. 5, 2024) ......................................................41

*Doe (K.E.C.) v. G6 Hosp., LLC*,
2024 WL 4501095 (E.D. Tex. Sept. 24, 2024) ...............................................38

*Doe (M.J.J.) v. Wyndham Hotels & Resorts, Inc.*,
2025 WL 342092 (D.N.J. Jan. 30, 2025) .........................................................38

*Doe (S.C.) v. Sheraton, LLC*,
2024 WL 1329422 (D.N.M. Mar. 28, 2024) ....................................................38

*Doe (S.J.C.) v. ESA P Portfolio LLC*,
2024 WL 4808137 (N.D. Ga. Nov. 15, 2024) ........................................... 17, 31

*Doe by Doe v. Piraino*,
688 F. Supp. 3d 635 (M.D. Tenn. 2023) ..........................................................38

*Doe v. Mindgeek USA Inc.*,
558 F. Supp. 3d 828 (C.D. Cal. 2021) ..............................................................38

*Does 1-4 v. Red Roof Inns, Inc.*,
688 F. Supp. 3d 1247 (N.D. Ga. 2023) .............................................................31

*Florida Central Railroad Co. v. Schutte*,
103 U.S. 118 (1881) ..........................................................................................36

*G.G. v. Salesforce.com, Inc.*,
76 F.4th 544 (7th Cir. 2023) ...........................................................ii, 22, 36-38

*G.W. v. Northbrook Indus., Inc.*,
739 F. Supp. 3d 1243 (N.D. Ga. 2024) ...................................................9, 17, 29

*Geiss v. Weinstein Co. Holdings LLC*,
383 F. Supp. 3d 156 (S.D.N.Y. 2019) ..............................................................23

*I.R. v. I Shri Khodiyar, LLC*,
723 F. Supp. 3d 1327 (N.D. Ga. 2024) .............................................................31

* *K. H. v. Riti, Inc.*,
2024 WL 505063 (11th Cir. Feb. 9, 2024) ....................i-ii, 9-10, 15-16, 21, 24-27

*Kimble v. Marvel Ent., LLC*,
   576 U.S. 446 (2015) ..................................................................................39

*L.H. v. Red Roof Inn, Inc.*,
   2023 WL 5725574 (W.D. Ky. Sept. 5, 2023)……………………………..38

*M.A. v. Wyndham Hotels & Resorts, Inc.*,
   425 F. Supp. 3d 959 (S.D. Ohio 2019).......................................... 19-20

*Minor v. Dugger*,
   864 F.2d 124 (11th Cir. 1989)...............................................................40

*Nat'l Min. Ass'n v. Sec'y, U.S. Dep't of Lab.*,
   812 F.3d 843 (11th Cir. 2016).............................................................39

*Noble v. Weinstein*,
   335 F.Supp.3d 504 (S.D.N.Y. 2018)....................................................23

*Physician Specialists in Anesthesia, P.C. v. Wildmon*,
   238 Ga. App. 730 (1999)......................................................................32

*Ricchio v. McLean*,
   853 F.3d 553 (1st Cir. 2017) ........................................................... 25-26

*S.C. v. Wyndham Hotels & Resorts, Inc.*,
   728 F. Supp. 3d 771 (N.D. Ohio 2024) ...............................................23

*S.Y. v. Naples Hotel Co.*,
   476 F. Supp. 3d 1251 (M.D. Fla. 2020) ..............................................20

*United States v. $121,100.00 in U.S. Currency*,
   999 F.2d 1503 (11th Cir. 1993)..............................................................8

*United States v. Adamson*,
   665 F.2d 649 (5th Cir. 1982) ...............................................................36

*United States v. Futrell*,
   209 F.3d 1286 (11th Cir. 2000).............................................................16

*United States v. Woodard*,
   938 F.2d 1255 (11th Cir. 1991)..................................................... ii, 40

*Young Apartments, Inc. v. Town of Jupiter, Fla.*,
406 F. App'x 376 (11th Cir. 2010) ........................................................7

## <u>Statutes</u>

\* 18 U.S.C. § 1595 ..............................................i, 11, 13, 21-23, 36-39

18 U.S.C. § 1589 ................................................................. 11-12

18 U.S.C. § 1591 ............................................................ 11-13, 21, 37

O.C.G.A. § 10-6-1..................................................................33

## Statement of Issues

(1)     Did the district court correctly hold that the rental of a hotel room to a guest in an arms-length transaction fails to satisfy the second essential element of a claim under the Trafficking Victims Protection Reauthorization Act ("TVPRA")—participation in a venture—where there is no other evidence that the hotel operator facilitated the trafficking of the plaintiff?

(2)     Did the district court correctly hold that the plaintiff in this case failed to satisfy the fourth essential element of her TVPRA claim (knowledge that the venture violated the TVPRA as to the plaintiff) where there is no evidence that the hotel operator knew that the plaintiff was present at the hotel, much less that she was being trafficked?

## Statement of Case

### Factual and Procedural Background

Plaintiff, "C.B.," alleges that on a single occasion in June 2010, Timothy Chappell forced her to engage in sexual activity with four "Johns" over an approximately 36-hour time period. Doc. 13 (Am. Compl.), ¶ 34; Doc. 123 (C.B. Dep.), 64:7-10, 75:1-6.[1] This conduct is alleged to have occurred at the

---

[1] Pursuant to 11th Cir. R. 28-5, the record references in this brief refer to the page number that appears in the header generated by the district court's electronic filing system. For those deposition transcripts whose original pagination does not match the district court's CM/ECF pagination, Naseeb has provided both the CM/ECF pagination and, in parentheses, a pin cite to the original pagination.

Hilltop Inn in Conley, Georgia, which was at all relevant times owned and operated by Naseeb. Doc. 13 (Am. Compl.) ¶¶ 14, 26, 29, 34. The Hilltop Inn is a "three-story structure with a lobby, open air staircases and open-air hallways that lead to motel rooms." *Id.,* ¶ 17.

Mr. Chappell, who is a registered sex offender, checked into the Hilltop Inn in April of 2010. *Id.*, ¶ 19. At some point during his stay, Chappell posted an advertisement for a free room for rent on Craigslist. *Id.*, ¶ 21. C.B., who was fourteen years old at the time, responded to the advertisement and began regularly communicating with someone who identified himself as "Steve." *Id.* ¶ 22; Doc. 123 (C.B. Dep.), 23:18-24:7. After the communications started, C.B. turned fifteen and told "Steve" her age. Doc. 123 (C.B. Dep.), 24:4-20. A few weeks later, "Steve" introduced C.B. to Chappell, who was also unconcerned with her age. *Id.* at 28:10-17, 30:14-31:6, 32:25-33:1, 35:3-10. It appears, however, that "Steve" was a pseudonym initially used by Chappell. *See id.* at 122:20-24. C.B. continued to communicate with Chappell through online chats and telephone calls over the next several weeks. *Id.* at 37:17-20; Doc. 13 (Am. Compl.), ¶¶ 22-23.

In June of 2010, C.B. agreed to meet Chappell in person. An unknown man picked her up at her aunt's house and brought her to the Hilltop Inn. Doc. 123 (C.B. Dep.), 44:23-45:22; *see also* Doc. 13 (Am. Compl.) ¶ 26. This was C.B.'s first time at the hotel. When she arrived at the Hilltop Inn, C.B. had one or two

pieces of luggage and her cell phone with her. Doc. 123 (C.B. Dep.), 47:8-13. C.B.'s intention in going to meet Chappell was that they were going to live together indefinitely. *Id.* at 48:12–18.

Prior to C.B.'s arrival at the Hilltop Inn, Chappell went to the front desk and paid for a second room that was next to his. Doc. 13 (Am. Compl.) ¶¶ 24-25. Chappell did not inform anyone at the Hilltop Inn of his intended use of the room, or who would be staying in the second room. *See* Doc. 144 (Amin Dep.) at 88-89 (87:4-88:13). When C.B. arrived, Chappell met her in the parking lot and then they went upstairs to the hotel room. Doc. 123 (C.B. Dep.), 48:21-49:10, 50:2-5, 51:2-7. Because Chappell had already checked into the room, there was no need for C.B. to get a key from the front desk and she never entered the lobby. *See id.* at 70:22-71:2. Instead, she went directly to the motel room rented by Chappell and was instructed by Chappell to remain in her room at all times. *See id.* at 71:3-13, 77:21-78:4; Doc. 13 (Am. Compl.), ¶ 29.

C.B. was trafficked for sex on approximately four (4) occasions while at the Hilltop Inn. Doc. 13 (Am. Compl.), ¶ 34. Approximately 24 hours after arriving at the Hilltop Inn, C.B. asked one of the "Johns" for help. Doc. 123 (C.B. Dep.), 63:3-64:10. After she made repeated phone calls to this unidentified man, he returned to the Hilltop Inn later that night and took C.B. back to the area near her aunt's house. *Id.* at 73:15-25; Doc. 13 (Am. Compl.) ¶ 43. Chappell was

subsequently arrested and pled guilty to trafficking C.B. *See* Doc. 120-10 (Chappell's Guilty Plea).

While C.B. was at the Hilltop Inn, she did not speak with any hotel employees. Doc. 123 (C.B. Dep), 173:17-24. The only potential interaction C.B. recalled was a "few seconds" of eye contact with an unidentified woman she believed to be in housekeeping, though it is undisputed that housekeeping never entered C.B.'s room. *Id.* at 72:6-73:10.

During C.B.'s stay at the Hilltop Inn, she did not come and go from her motel room for any reason. *Id.* at 71:3-13, 179:7-9. In fact, the only times C.B. was outside of her room were when she arrived at the Hilltop Inn, the few moments while she held her motel room door open for a "John," and when she left the hotel. *Id.* at 71:10-18, 175:1-21.

***The Complaint***. C.B. filed her initial complaint against Naseeb on October 13, 2020. Doc. 1. Naseeb timely answered C.B.'s complaint denying liability and asserting affirmative defenses. Doc. 10. On that same day, Naseeb also filed a motion for judgment on the pleadings asserting, *inter alia*, that the Complaint was an impermissible shotgun pleading and that it failed to plausibly allege a civil beneficiary claim under the TVPRA. *See* Doc. 11. On November 30, 2020, C.B. filed an amended complaint, as a result of which the district court denied Naseeb's motion as moot. *See* Doc. 13 (Am. Compl.); Doc. 44 (Order); *see also* Doc. 15

(Resp. to Def.'s Mot. on the Pleadings). C.B.'s Amended Complaint alleged two counts against Naseeb arising under the civil beneficiary provisions of the TVPRA, one for sex trafficking and another for labor trafficking. Doc. 13 (Am. Compl.), ¶¶ 91-110.

**Naseeb's Summary Judgment Motion.** On August 16, 2022, Naseeb filed a motion for summary judgment. Doc. 116. Citing binding Eleventh Circuit authority, Naseeb explained that, notwithstanding multiple allegations that Naseeb knew of prior unrelated incidents involving prostitutes and sex trafficking on the premises, C.B.'s TVPRA beneficiary claim failed as a matter of law because, *inter alia*, there was no evidence that Naseeb had actual or constructive knowledge that C.B. was ever at the Hilltop Inn, much less that she was being trafficked for sex by Chappell.

Following a hearing, the district court granted Naseeb's motion for summary judgment, applying binding Eleventh Circuit TVPRA precedent requiring a plaintiff pursuing a beneficiary claim under the TVPRA to "plausibly allege that the defendant: (1) knowingly benefited, (2) from taking part in a common undertaking or enterprise involving risk and potential profit, (3) that undertaking or enterprise violated the TVPRA *as to the plaintiff*, and (4) the defendant had constructive or actual knowledge that the undertaking or enterprise violated the TVPRA *as to the plaintiff*." Doc. 164 at 24 (quoting *Doe #1 v. Red Roof Inns, Inc.*,

21 F.4th 714, 726 (11th Cir. 2021)) (emphasis added). The district court further recognized "that the Eleventh Circuit intends the [TVPRA beneficiary] statute to be narrowly construed." *Id.* at 2.

With regard to the second element, the district court concluded that merely renting a second room to Chappell, even knowing his status as a sex offender, could not establish that Naseeb entered into a common undertaking with him. *Id.* at 39. The district court considered evidence cited by C.B. suggesting that Naseeb "generally turned a blind eye to conduct that should have raised red flags as to trafficking and sexual exploitation on the property," but concluded that this was insufficient in the absence of any evidence that Naseeb "took any action to support or facilitate Chappell's specific activities, beyond allowing him to purchase the room rental." *Id.* at 39-40.

Regarding the fourth element, the district court found that there was "no evidence of a direct association between Naseeb and Chappell that would establish its actual knowledge of Chappell's trafficking of C.B." *Id.* at 42. For example, unlike other cases where liability was found, Naseeb's employees "did not act as lookouts for Chappell, nor were they otherwise directly involved in his operation. There is also no evidence that Chappell had previously rented rooms at the Hilltop Inn for sex trafficking purposes." *Id.* at 42-43. The district court further found that Naseeb's knowledge of *prior* instances of prostitution or trafficking would be

insufficient to establish liability, as Eleventh Circuit precedent "require[s] actual or constructive knowledge *as to the trafficking of the individual plaintiff*, plus some degree of acceptance or welcome of that trafficking." *Id.* at 46. The district court also carefully considered all of the other evidence C.B. claimed "create[d] a fact issue as to whether Defendant knew or should have known that Plaintiff was being trafficked." *Id.* at 46-47. "But even construing all of those pieces of evidence in the light most favorable to Plaintiff," the district court found that there was no evidence "indicat[ing] that Defendant knew or should have known that Plaintiff was being trafficked in this short timeframe." *Id.* at 48. And circumstantial evidence regarding the hotel's general practices is not enough. *Id.*

Because the district court granted summary judgment to Naseeb on Plaintiff's TVPRA claims, the court also granted summary judgment to Naseeb on Plaintiff's derivative claims for punitive damages and attorneys' fees. *Id.* at 49.

## Standard of Review

This Court reviews a summary judgment *de novo*, viewing the record and drawing all reasonable inferences in the light most favorable to the non-moving party. *Young Apartments, Inc. v. Town of Jupiter, Fla.*, 406 F. App'x 376, 377 (11th Cir. 2010) (quotations omitted). "A grant of summary judgment is appropriate when the non-moving party fails to come forward with sufficient evidence on each element that must be proved." *Id.* (quotations and alterations

omitted); *see also* Fed. R. Civ. P. 56(a) (summary judgment is appropriate if the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."). "Speculation does not create a genuine issue of fact; instead it creates a false issue, the demolition of which is a primary goal of summary judgment." *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005) (internal quotation marks omitted). "This court will affirm a grant of summary judgment if it is correct for any reason." *United States v. $121,100.00 in U.S. Currency*, 999 F.2d 1503, 1507 (11th Cir. 1993).

## Summary of Argument

This Court should affirm because this Circuit's binding precedent in *Red Roof* forecloses C.B.'s claims against Naseeb. Indeed, in a recent unpublished but persuasive opinion, a panel of this Court, relying on that binding precedent, considered and rejected many of the same arguments C.B. repeats here. In this case, the district court properly applied the test for TVPRA beneficiary liability set forth in *Red Roof* and correctly found that there was insufficient evidence to support two of the requisite elements of C.B.'s civil beneficiary claim— (1) participation in a common venture and (2) knowledge that the venture violated the TVPRA as to the plaintiff.

*First*, the district court correctly found that Naseeb's rental of a hotel room to Chappell in an arm's-length transaction was insufficient to establish

participation in a *common* venture. It is undisputed that Chappell was just a *customer* of the Hilltop Inn, with no ongoing interest in the success of the hotel. Under these facts, Chappell could hardly be said to have been engaged in a common venture with Naseeb to rent hotel rooms. C.B.'s arguments to the contrary would rewrite the *Red Roof* test to eliminate the word "common" from the phrase "common undertaking or enterprise," and lead to the absurd result that "the participation requirement would automatically be satisfied any time the defendant is a hotel operator"—a result never intended by the TVPRA or this Court. *See G.W. v. Northbrook Indus., Inc.*, 739 F. Supp. 3d 1243, 1251 (N.D. Ga. 2024).

The district court also correctly found that Naseeb did not take any action to support or facilitate Chappell's sex trafficking. Unable to point to any evidence that Naseeb supported Chappell directly, C.B. focuses instead on Naseeb's housekeeping and room assignment practices that she claims enabled prostitution. But C.B.'s argument is fatally undermined by her own expert testimony, which established that there was no known link between renting rooms to sex offenders, prostitution, and sex trafficking. Indeed, the conduct that C.B. points to is the same type of conduct that *Riti* previously found did not rise to the level of a "common undertaking or enterprise" under the TVPRA.

*Second*, the district court correctly found there is no evidence that Naseeb knew or should have known that C.B. was being trafficked during her short time at

the Hilltop Inn. Naseeb clearly did not have actual knowledge of C.B.'s trafficking, as it is undisputed that C.B. remained in her room during her whole stay and did not interact with any hotel staff. And C.B.'s arguments that Naseeb had constructive knowledge based on observations allegedly made by a *hotel guest* and another *unidentified individual* fail because none of this is attributable to Naseeb, who undisputedly did not observe C.B. or receive reports of any suspicious activity.

C.B.'s alternative argument that knowledge of a specific trafficking victim is not required is explicitly foreclosed by the plain language of the TVPRA as well as by *Red Roof*, which is binding on this panel. But even the broader standard urged by C.B. could not save her claims. C.B. argues, with the benefit of hindsight, that Naseeb should have been generally aware that Chappell was engaged in trafficking based on the fact that he was a known sex offender renting a second hotel room. But C.B.'s argument is once again undermined by her own expert testimony that there is no direct connection between the presence of sex offenders on the property and sex trafficking.

Simply put, C.B. did not (and cannot) present sufficient evidence to meet the requirements for TVPRA liability laid down by this Court in *Red Roof* – and recently reaffirmed in *Riti*.

**<u>Argument</u>**

The TVPRA prohibits the sex trafficking of a child or adult. In addition to that criminal prohibition, it provides sex-trafficking victims with a civil cause of action not only against the perpetrator but also against "whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in <u>*an act in violation of this chapter*</u>." 18 U.S.C. § 1595(a) (emphasis added). In turn, "an act in violation of this chapter" is defined—in both of the statutory sections pled by C.B.—in terms of knowledge relating to the specific person who claims to have been trafficked. *See* 18 U.S.C. §§ 1589 and 1591.

The "forced labor" code section, Section 1589, requires proof that the defendant knowingly benefitted from a forced labor venture while knowing it was forced labor of a particular person, or did so in reckless disregard of that fact. And, where, as here, the alleged forced labor results from physical restraint of or threats to the claimant herself, the statute refers specifically to restraints of or threats to "that person":

> **(a)** Whoever knowingly provides or obtains the labor or services <u>*of a person*</u> by any one of, or by any combination of, the following means--
>
> **(1)** by means of force, threats of force, physical restraint, or threats of physical restraint <u>*to that person*</u> or another person;
> **(2)** by means of serious harm or threats of serious harm to <u>*that person*</u> or another person;

**(3)** by means of the abuse or threatened abuse of law or legal process; or

**(4)** by means of any scheme, plan, or pattern intended to cause *the person* to believe that, if *that person* did not perform such labor or services, that person or another person would suffer serious harm or physical restraint, shall be punished as provided under subsection (d).

**(b)** Whoever knowingly benefits, financially or by receiving anything of value, from participation in a venture which has engaged in the providing or obtaining of labor or services by any of the means *described in subsection (a)*, knowing or in reckless disregard of the fact that the venture has engaged in the providing or obtaining of labor or services *by any of such* means [relating to "that person"], shall be punished as provided in subsection (d).

18 U.S.C. § 1589 (emphasis added).

The code section providing a civil remedy in particular for "sex trafficking of children or by force," Section 1591, also frames the claim in terms of knowledge of the sex trafficking of *a specific person*, not generalized knowledge of sex trafficking at the premises:

**(a)** Whoever knowingly—

**(1)** in or affecting interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States, recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person; or

**(2)** benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1) *knowing, or . . . in reckless disregard of the fact*, that means of force, threats of force, fraud, coercion described in subsection (e)(2), or any combination of such means will be used to cause *the person* to engage in a commercial sex act, or that *the person* has not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be punished as provided in subsection (b).

18 U.S.C. § 1591 (emphasis added).

Thus, to state a civil beneficiary claim under § 1595(a) alleging that she was a victim of these alleged violations, a plaintiff must show more than the defendant's knowing participation in a forced labor or sex trafficking venture involving unknown victims. Rather, the plaintiff must show that the defendant knowingly benefitted from the forced labor or sex trafficking of a specific person, referred to as "the person" or "that person" in these statutes, which in this scenario must be the particular plaintiff. And that is exactly what this Court held in *Red Roof*:

> [A] plaintiff must plausibly allege that the defendant (1) knowingly benefited, (2) from taking part in a common undertaking or enterprise involving risk and potential profit, (3) that undertaking or enterprise violated the TVPRA *as to the plaintiff*, and (4) the defendant had constructive or actual knowledge that the undertaking or enterprise violated the TVPRA *as to the plaintiff*.

*Red Roof*, 21 F.4th at 726 (emphasis added).

Applying this test, the district court correctly concluded that C.B. could not satisfy either the second essential element (Naseeb's participation in a venture with Chappell) or the fourth essential element (Naseeb's knowledge that the venture violated the TVPRA as to C.B.) because Naseeb did nothing more than rent hotel rooms to Chappell in an arms-length transaction, and had no knowledge that these rooms were being used for forced labor or sex trafficking of anyone, much less C.B. *See* Doc. 164.

### I. **C.B.** failed to demonstrate a genuine dispute of material fact as to whether Naseeb "participated in a venture" with her trafficker.

The district court correctly rejected C.B.'s theory that Naseeb's room rentals to Chappell, standing alone, were sufficient to satisfy the participation element. *See* Doc. 164 (Order) at 39; *see also* Br. at 24. As discussed below, this Court has already made clear that merely receiving a financial benefit (such as hotel room rental revenue) is insufficient to establish the defendant's participation in a common undertaking or enterprise with the trafficker. And because there is no evidence that Naseeb otherwise facilitated Chappell's trafficking of C.B., C.B. cannot establish the second essential element of her claim.

### A. Merely renting a hotel room to a trafficker is insufficient to show "participation in a venture" as a matter of law.

#### i. Renting a hotel room does not establish a common enterprise with the trafficker.

In *Red Roof*, the plaintiffs alleged that they were trafficked at hotels the defendant franchisors licensed, and that the franchisors knowingly benefitted from the room revenue generated by traffickers. 21 F.4th at 724-25. In support of their theory "that the franchisors participated in sex trafficking ventures," plaintiffs alleged (1) that hotel employees assisted in the trafficking by acting as police lookouts; (2) that one of the franchisors sent inspectors to examine the hotel; (3) that plaintiffs exhibited several visible signs of a sex trafficking victim; and (4) that online reviews of the hotel "reported widespread prostitution and crime occurring

at the hotel." *Id.* at 719–20. This Court affirmed the dismissal of plaintiff's claims, holding that "these allegations were insufficient to allege a common sex trafficking undertaking or enterprise" because "observing something is not the same as participating in it." *Id.* at 727.

This Court again considered what it means to "participate in a venture" in *Riti*. In that case, "K.H." brought suit against defendant Riti, the owner and manager of the hotel where she was trafficked, contending that "Riti knew or should have known that K.H. and others were being trafficked at its hotel," but "continued to rent rooms to sex traffickers so that it could earn rental revenue." *Riti*, 2024 WL 505063, at *1. Specifically, K.H. alleged that "(1) Riti knew or should have known that sex trafficking was occurring at its hotel—based on online reviews, police reports, and visible indicators—yet (2) Riti continued to engage in a hotel business relationship with and collect room rental revenue from [her trafficker] for approximately four years." *Id.* at *3. This Court affirmed the dismissal of K.H.'s complaint, holding that she failed to plausibly allege "that Riti took part in a common undertaking or enterprise with [her trafficker]" because "allegations of financial benefit alone are not sufficient to establish that the defendant participated in a sex trafficking venture and observing signs of sex trafficking 'is not the same as participating in it.'" *Id.* at 2, 24 (quoting *Red Roof,* 21 F.4th at 726).

*Riti* thus rejected the theory of liability advanced by C.B. in this case and made clear that merely profiting off rooms rented to Chappell, without more, is insufficient to establish participation in a common venture. *See* Br. at 24 (arguing that "[b]y itself, Naseeb's room rentals to Chappell . . . satisfy the participation element."); *see also* Doc. 13 (Am. Compl.) ¶¶ 95, 105. While it is true that *Riti* is an unpublished opinion, it is still persuasive authority, all the more so where it was decided just last year based on a straightforward application of *Red Roof. See United States v. Futrell*, 209 F.3d 1286, 1289 (11th Cir. 2000) ("Although an unpublished opinion is not binding on this court, it is persuasive authority.") (citing 11th Cir. R. 36-2).

C.B.'s arguments on appeal, if adopted, would rewrite the *Red Roof* test to eliminate the word "common" from the phrase "common undertaking or enterprise." She argues that "Naseeb's room rentals were a common undertaking with Chappell involving risk because. . . Chappell could've damaged Naseeb's rooms" and "involving profit because of the rent money alone." *See* Br. at 24. But that is true of *any* customer checking into *any* hotel. Because Chapell undisputedly had no ownership or financial interest in the Hilltop Inn, it was *Naseeb* alone who bore the risk that rooms may be damaged, and *Naseeb* alone who stood to profit from the room rentals. That Chappell's actions as a customer had the potential to *affect* Naseeb's business is insufficient to satisfy the second element of a TVPRA

claim because he lacked any "ongoing interest in the success" of the hotel. *See*

*G.W. v. Northbrook Indus., Inc.*, 739 F. Supp. 3d 1243, 1249 (N.D. Ga. 2024) (the

alleged participant must "have an <u>*ongoing interest in the success of a specific*</u>

<u>*venture*</u> and elect to further the ends of the venture beyond what would reasonably

be expected in an ordinary commercial transaction.") (quotations omitted)

(emphasis added) (collecting cases).

Indeed, accepting C.B.'s theory of liability would lead to the absurd result

that "the participation requirement would automatically be satisfied any time the

defendant is a hotel operator"—a result never intended by the TVPRA or this

Court:

> The implications are that the venture need not involve the trafficker and
> that simply running a hotel business (i.e., taking part in a commercial
> enterprise for profit) satisfies the participation prong.
>
> But if that were true, the participation requirement would automatically
> be satisfied any time the defendant is a hotel operator or other
> commercial entity, irrespective of whether the entity had any
> involvement in the plaintiff's trafficking. That cannot be what the
> Eleventh Circuit intended. To the contrary, the Eleventh Circuit's
> opinions establish that the plaintiff must connect the dots between the
> defendant's and the trafficker's actions and show how the defendant
> participated in the venture with the traffickers.

*Id.* at 1250-51 (evidence that hotel "financially benefitted from renting rooms to

Plaintiff's traffickers and that it had knowledge of and turned a blind eye to sex

trafficking at the property" insufficient to establish participation in a venture); *see*

*also, e.g.*, *Doe (S.J.C.) v. ESA P Portfolio LLC*, 2024 WL 4808137, at *4 (N.D.

Ga. Nov. 15, 2024) (plaintiff failed to plausibly allege that the defendant hotel participated in a common sex trafficking enterprise with her trafficker in the absence of any allegations that "hotel employees assisted in the trafficking by acting as police lookouts," "that the trafficker and the hotel employees had any sort of close relationship, [or] that hotel employees witnessed abuse or that hotel employees ignored Plaintiff's pleas for help.").

The D.C. Circuit also recently rejected a similar theory of liability in *Doe 1 v. Apple Inc.,* 96 F.4th 403 (D.C. Cir. 2024). In that case, former child cobalt miners injured while being forced to work in the Congo sued American technology companies under the TVPRA. The plaintiffs claimed that "the global cobalt supply chain was a TVPRA 'venture' and the Tech Companies participated in that venture with the full knowledge that cobalt suppliers and their subsidiary mining companies employed and trafficked in forced labor." *Id.* at 408. The Court held that the plaintiffs did "not adequately allege[] the Tech Companies participated in a venture because there is no shared enterprise between the Companies and the suppliers who facilitate forced labor." *Doe 1 v. Apple Inc.,* 96 F.4th 403, 415 (D.C. Cir. 2024). "The Tech Companies own no interest in their suppliers. Nor do the Tech Companies share in the suppliers' profits and risks." *Id.* At bottom, "something more than engaging in an ordinary buyer-seller transaction is required to establish 'participation' in an unlawful venture." *Id.* Merely being "on opposite

sides of an arms-length transaction" does not suffice. *Id.* Similarly here, there is no "shared enterprise" between Naseeb and Chappell, as Chappell undisputedly did not "tak[e] part or shar[e]" in Naseeb's hotel business, did not own an interest in Naseeb's hotel business, and did not share in the profits and risks associated with Naseeb's hotel business. In other words, C.B. has failed to show that Naseeb did anything more than engage in an ordinary, arms-length transaction with Chappell.

The two out-of-circuit district court cases cited by C.B., on the other hand, are readily distinguishable. *See* Br. at 29. While C.B. claims that these cases "held that allegations of a hotel operator directly renting rooms to a trafficker satisfy the participation element," the allegations in those cases went well beyond merely "renting rooms." *See id.* For example, in *M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959, 968-71 (S.D. Ohio 2019), the district court found that the plaintiff alleged sufficient facts to show that the defendant hotel operators participated in a sex trafficking venture by renting rooms to people it knew or should have known were engaged in sex trafficking where, *inter alia*, the victim "was routinely escorted by her trafficker in view of the front desk"; "[d]espite her desperate pleas and screams for help, after being beaten or choked at the Defendants' hotel properties, the hotel staff ignored her and did nothing to prevent the ongoing and obvious torture she endured while she was regularly trafficked for sex at Defendants' hotel properties;" and her "trafficker operated the sex

trafficking venture out of the same hotel room for multiple days or weeks in succession."

Similarly, in *S.Y. v. Naples Hotel Co.*, 476 F. Supp. 3d 1251, 1257 (M.D. Fla. 2020), the district court found that plaintiffs' allegations were sufficient to infer that defendants knew they were renting rooms to sex traffickers, and thereby participated in the sex trafficking venture, based on, *inter alia*, the "[h]otel staff observing [plaintiffs] and their traffickers in the hotel"; plaintiffs' "being escorted by traffickers in the hotel"; "Pleas and screams [for] help coming from the rooms of [plaintiffs]," and "[o]peration of sex trafficking ventures out of the same hotel room for multiple days or weeks in succession."

In other words, unlike Naseeb, which had no prior dealings with Chappell, the defendant hotels in *Wyndham* and *Naples* were alleged to have been engaged in continuous business relationships with the traffickers and to have actually observed (and ignored) the victims being trafficked at their properties.

### ii. The district court properly held that C.B. failed to present evidence that Naseeb took actions to support or facilitate her alleged trafficking.

The Court also should reject C.B.'s argument that it was error to require evidence that Naseeb took "action to support or facilitate Chappell's specific activities, beyond allowing him to purchase the room rental" because, according to C.B., it is inconsistent with *Red Roof's* holding. *See* Br. at 25; Doc.164 at 40.

In *Red Roof*, this Court declined to incorporate the definition of "participation in a venture" from the criminal provisions in Section 1591. 21 F.4th at 724. And C.B. suggests that the district court conflated the requirements for criminal and civil liability here simply because similar "support or facilitate" language also appears in what Section 1591(e)(4) requires for a criminal violation. *See* Br. at 25; *see also* 18 U.S.C. § 1591(e)(4) ("The term 'participation in a venture' means knowingly assisting, supporting, or facilitating a violation of subsection (a)(1)"). But the district court acknowledged that *Red Roof* declined to "transpos[e] the statutory definition [of "participation in a venture] from [the] criminal section to the civil cause of action," because "Section 1591(a) includes a scienter requirement that does not appear in Section 1595(a)." Doc. 164 (Order) at 28-29, quoting *Red Roof,* 21 F.4th at 724. Moreover, while *Red Roof* refused to adopt the criminal scienter requirement, it did not hold that civil plaintiffs did not have to prove that the defendant's actions "support[ed] or facilitate[d]" the perpetrator's TVPRA violation.

Indeed, requiring something more than passive engagement in a business transaction is entirely consistent with—and required by— the plain language of the TVPRA. *See, e.g., Riti,* 2024 WL 505063, at *3-4 (holding that something "stronger than just an operator renting rooms to a trafficker" and/or merely observing signs of sex trafficking is necessary to show participation in a venture);

*A.B. v. H.K. Grp. of Co.*, 2022 WL 467786, at \*4 (N.D. Ga. Feb. 9, 2022) (plaintiff's allegations that defendant should have been aware that she was being sex trafficked after speaking with her and cleaning her room on several occasions, but failed to assist her, failed to allege a common undertaking with the traffickers).

### iii. Participation in a "commercial venture" is not sufficient to establish beneficiary liability.

Because Naseeb did not participate in any "common" undertaking or venture with Chappell, the Court need not reach the question of the type of "venture" that may support liability under Section 1595. But it is worth noting that C.B. relies entirely on the Seventh Circuit's decision in *G.G. v. Salesforce.com, Inc.,* which cited to *Red Roof* for the proposition that "the alleged venture can be a 'commercial venture[ ]' like running or expanding a business." 76 F.4th at 554. *Red Roof* held no such thing, however. Rather, *Red Roof* expressly declined to consider plaintiffs' theory that "the franchisors participated in commercial ventures to operate hotels" because it was incompatible with plaintiffs' complaints and because plaintiffs declined to raise this theory in the district court. *See Red Roof,* 21 F.4th at 727; *see also Doe (K.B.) v. G6 Hosp., LLC*, 2023 WL 8650785, at \*5 (N.D. Ga. Dec. 14, 2023) (rejecting argument that *Red Roof* recognized participation in a "commercial venture" as theory of liability). *Red Roof* focused instead on the alleged "sex trafficking ventures" because that is how the plaintiffs chose to frame the issue in their amended complaints. 21 F.4th at 726-27.

If the Court does reach this issue, however, it should join those courts that have held that a "'venture' for [TVPRA] purposes, must be a sex trafficking venture." *See S.C. v. Wyndham Hotels & Resorts, Inc.*, 728 F. Supp. 3d 771, 778 (N.D. Ohio 2024); *see also, e.g.*, *Geiss v. Weinstein Co. Holdings LLC*, 383 F. Supp. 3d 156, 168–70 (S.D.N.Y. 2019) (concluding that the "participation giving rise to the benefit must be participation *in a sex-trafficking venture*, not participation in other activities engaged in by the sex traffickers that do not further the sex-trafficking aspect of their venture") (emphasis in original); *Doe 1 v. Red Roof Inns*, Inc., 2020 WL 1872335, *3 (N.D. Ga. Apr. 13, 2020) ("Association alone cannot establish liability; instead, knowledge and 'some participation in the sex trafficking act itself must be shown.") (quoting *Noble v. Weinstein*, 335 F.Supp.3d 504, 524 (S.D.N.Y. 2018)).

Requiring the alleged "venture" to be a sex trafficking venture is consistent with the statutory language of the TVPRA because:

> The Trafficking Victims Act refers to "a venture which that person knew or should have known has engaged in an act in violation of this chapter," such as by committing a sex trafficking act. 18 U.S.C. § 1595(a). Since the relevant venture must be one that a defendant "knew or should have known" committed a sex trafficking act, it follows that the venture must have actually committed a sex trafficking act.

*Wyndham Hotels*, 728 F. Supp. 3d at 778. For this further reason, C.B.'s claims fail as a matter of law as she chose not to allege a sex trafficking venture. *See* Br. at 26.

### iv. C.B.'s attempts to distinguish *Red Roof* and *Riti* are unavailing.

C.B. tries to distinguish *Red Roof* and *Riti* on the basis that the plaintiffs in those cases alleged only a sex-trafficking venture, rather than a venture to rent hotel rooms. *See* Br. at 26, 29. But this distinction is immaterial, as the salient point in both *Red Roof* and *Riti* is that merely receiving a financial benefit from the rental of hotel rooms to a trafficker is not sufficient to establish a common undertaking that violated the TVPRA. *See Red Roof,* 21 F.4th at 726–27 (allegations that franchisors financially benefitted from renting hotel rooms to the Does' sex traffickers "do nothing to show that the franchisors participated in a common undertaking involving risk or profit that violated the TVPRA"); *Riti, Inc.*, 2024 WL 505063, at *4. That is true even if there were signs of trafficking at the property because "observing something is not the same as participating in it." *Riti, Inc.*, 2024 WL 505063, at *3 (quoting *Red Roof*, 21 F.4th at 727).

C.B. also argues that *Red Roof* is distinguishable because the plaintiff in that case sued the hotel franchisors, whereas C.B. brought claims against Naseeb as the hotel owner/operator. *See* Br. at 27. But this also is immaterial because, like Naseeb, the *Red Roof* defendants owned, managed, and supervised their hotels, including the renting of rooms. *See* Doc. 13 (Am. Compl.), ¶ 14, Doc. 144 (Amin Dep.) at 7-10 (6:24-9:25). Indeed, this Court has previously considered and rejected this same attempt to sidestep *Red Roof*:

K.H. argues that *Red Roof* is distinguishable because that case was brought against franchisors, while this case was brought against a franchisee. According to K.H., unlike Riti, the franchisors in *Red Roof* did not physically rent the rooms to the sex traffickers, they just received a percentage of the revenue from those rentals. But this distinction does little work for K.H. because the franchisors in *Red Roof* "owned, managed, supervised, operated, oversaw, controlled the operation of, and/or were inextricably connected to the renting of rooms." 21 F.4th at 726–27. The difference between physically renting the rooms (based on the facts of this case) and "control[ing] the operation of" renting the rooms (based on the facts of *Red Roof*) is immaterial.

*Riti, Inc.*, 2024 WL 505063, at *3.

C.B. further argues that, "[w]ithout the hotel rooms that Naseeb provided, Chappell couldn't have trafficked C.B. for sex at the Hilltop Inn." *See* Br. at 27. C.B. suggests that this "but for" causation is sufficient to establish a "common undertaking or enterprise," because *Red Roof* suggests in dicta that allegations like those in the First Circuit's *Ricchio v. McLean* decision would suffice to establish "participation in a venture." *Red Roof*, 21 F.4th at 725-26 (discussing *Ricchio v. McLean*, 853 F.3d 553 (1st Cir. 2017)). But that argument too has already been rejected by this Court, as "the allegations in *Ricchio* were far stronger than just an operator renting rooms to a trafficker." *Riti, Inc.*, 2024 WL 505063, at *3. For example, in *Ricchio*, "the motel operator and the trafficker 'exchang[ed] high-fives in the motel's parking lot while speaking about 'getting this thing going again,' in circumstances in which [the trafficker's] coercive and abusive treatment of [plaintiff] as a sex slave had become apparent to [the operator]'. . . . And the

operator had 'nonchalantly ignored [plaintiff's] plea for help in escaping from [the

trafficker's] custody at the motel' and likely seen the trafficker 'grab [plaintiff],

kick [plaintiff], and force [plaintiff] back toward the rented quarters ....'"

*Riti, Inc.*, 2024 WL 505063, at *3 (quoting *Ricchio*, 853 F.3d at 555). "So it was

under these circumstances that the First Circuit held that it was reasonably

inferable that the motel operator and trafficker were working together to force

[plaintiff] to serve their business objective*." Id.* (quotations omitted); *see also*

Doc. 164 (Order) at 30 (explaining that *Riti* "walked back *Red Roof*'s incorporation

of *Ricchio*'s broader language regarding participation in a venture — finding the

factual context much more specific than was stated in *Red Roof*"). In contrast to

*Ricchio*, there is no evidence of any prior dealings between Chappell and Naseeb,

no evidence that Naseeb was aware that C.B. was being trafficked on the property,

and no evidence that Naseeb participated in or condoned her trafficking.

     Finally, C.B. cites Judge Jordan's concurrence in *Red Roof* opining that

"similar claims against those who own, operate, or manage the hotels in question

(e.g., franchisees) would withstand a Rule 12(b)(6) motion to dismiss." *See* Br. at

28 (citing *Red Roof*, 21 F.4th at 729-30). But not only is Judge Jordan's concurring

opinion not binding, it is "dicta. . . made in the context of the particular facts of

*Red Roof*." *See Riti, Inc.*, 2024 WL 505063, at *4, n.6. As this Court has explained,

"in *Red Roof*, the plaintiffs alleged more than that hotel employees had rented

rooms to traffickers, they alleged that hotel employees worked directly with traffickers by providing lookouts in exchange for cash or drugs." *Id.* And as in *Riti*, in the absence of any "involvement between hotel employees and traffickers," Judge Jordan's concurrence "does not support [Plaintiff's] claim." *See id.*

### B. There is no evidence that Naseeb did anything to facilitate Chappell's trafficking of C.B. beyond allowing him to rent a hotel room.

In the alternative, C.B. argues that Naseeb "facilitate[d] Chappell's trafficking beyond the room rentals" by (1) assign all sex offenders, including Chappell, to the same area of its hotel"; (2) directing its housekeepers to enter the rooms of sex offenders and prostitutes only once a week"; and (3) "not reporting prostitution to the police but only within Naseeb." *See* Br. at 30. But C.B.'s argument is flawed in several respects.

*First*, C.B. falsely implies a connection between allowing sex offenders on the property and sex trafficking. Her own expert rebutted that notion, testifying that the mere presence of sex offenders on the property does not lead to sex trafficking. *See* Doc. 120-16 (Tallis Dep.) at 5-6 (76:25-77:3) (Q. "[I]is it your opinion, Mr. Tallis, that . . . the mere presence of sex offenders on a hotel property is going to lead to sex trafficking? A. No, I didn't say that."). Indeed, both Mr. Tallis and C.B.'s security expert, Fred Del Marva, admit that Chappell was the first sex offender to cause any issues while staying at the Hilltop Inn. *See id.* at 5 (76:4–24); Doc. 118 ("Del Marva Dep.") at 38 (147:14–19, 149:19–23); *see also* Doc. 131

(Vaughn Dep.) at 124 (123:9-17) (never received complaints about sex offenders or saw them with prostitutes or underage girls). Moreover, the evidence is clear that Naseeb's room assignment practices were in no way intended to facilitate sex trafficking. To the contrary, while sex offenders had never previously caused any issues at the Hilltop Inn, they were all placed in the same wing out of an abundance of caution to make "monitoring" them easier. *See* Doc. 131 (Vaughn Dep.), at 40-41 (39:14-40:15) (sex offenders all placed on same side of the property so that hotel staff could "keep a better eye on them").

*Second*, the only evidence that C.B. cites regarding Naseeb's housekeeping practices comes from a former housekeeper, Joan Blackmon, who stopped working at the Hilltop Inn in 2009—a year before C.B.'s alleged trafficking took place. *See* Doc. 134 at 7-8 (6:24-7:1); *see also* Br. at 10. Ms. Blackmon's testimony thus says nothing about Naseeb's housekeeping practices at the time that Chappell actually stayed at the property in 2010. Indeed, C.B.'s argument that housekeeping "complied" with Chappell's request not to clean his second room while C.B. was there would make no sense if it was already hotel policy not to clean his room but once per week. *See* Br. at 30. Moreover, while C.B. would have it seem as if Naseeb had a choice whether to "comply" with Chappell's request not to be disturbed, it is undisputed that Naseeb had no right to enter his room without cause. *See* Doc. 120-16 (Tallis Dep.) at 9 (103:17-22) (absent cause, investigating

hotel guests for illicit behavior "would be a violation of the guest's right to privacy"). In any event, there was nothing about Chappel's request that would have given Naseeb cause to investigate further. Hotel guests routinely decline housekeeping for a variety of innocuous reasons, whether their room is clean and not in need of servicing, or they do not want to be disturbed while sleeping. In other words, there was nothing about Chappell's request that suggested he planned to use the room for prostitution, much less to traffic C.B.

*Third*, C.B.'s emphasis on the alleged prostitution at the property misses the point. Even if it were true that Naseeb had knowledge that prostitution may have been occurring at the Hilltop Inn, there is no evidence that it knew or should have known that the presence of prostitution would lead to *sex trafficking of C.B*. *See Northbrook Indus., Inc.*, 739 F. Supp. 3d at 1251 ("plaintiff must connect the dots between the defendant's and the trafficker's actions and show how the defendant participated in the venture with the traffickers."). Indeed, C.B.'s expert, Mr. Tallis, admitted that he was not aware of any studies that linked the presence of prostitution to sex trafficking. Doc. 117 (Tallis Dep.) at 43:6-12.

The district court thus correctly concluded that there was no evidence "that would support a finding that Defendant took any action to support or facilitate Chappell's specific activities [i.e. sex trafficking], beyond allowing him to purchase the room rental." *See* Doc. 164 at 39-40.

**II. C.B. failed to demonstrate a genuine dispute of material fact as to whether Naseeb "knew or should have known" that she was being trafficked.**

The fourth element of a TVPRA beneficiary claims requires that the defendant "knew or should have known that the venture violated the TVPRA *as to Plaintiff*." *See* Doc. 164 at 40 (citing *Red Roof*, 21 F.4th at 725) (emphasis added) (internal quotations omitted). And as the district court correctly found, there is no evidence that Naseeb knew or should have known that C.B. was being trafficked during her short time at the Hilltop Inn. Doc. 164 (Order) at 48.

**A. There is no evidence that Naseeb had any knowledge that Chappell was trafficking C.B.**

The undisputed evidence established that Naseeb had no knowledge that C.B. was at the Hilltop Inn, much less that she was being trafficked. C.B. was at the Hilltop Inn for a day and a half, during which time she had no interactions with the owners, managers, or other staff at the Hilltop Inn. Doc. 123 (C.B. Dep) at 173:17-24. When C.B. arrived at the hotel, she proceeded directly to her room with Chappell and never went to the lobby or the front desk at any point. *Id.* at 71:3-13, 175:1-21, 179:3-18. Instead, C.B. remained in her room during the entirety of her stay, as instructed by Chappell. *Id.*

The district court thus correctly found that there was no evidence that would establish Naseeb's "actual knowledge of Chappell's trafficking of C.B.," and that C.B.'s claims were readily distinguishable from other cases that survived summary

judgment. *See* Doc. 164 (Order) at 42-43, citing *Does 1-4 v. Red Roof Inns, Inc.*, 688 F. Supp. 3d 1247, 1254 (N.D. Ga. 2023) ("some employees acted as lookouts and notified the pimps when police were nearby or on the premises; and some of the prostitutes had an emaciated appearance and exhibited signs of physical abuse and [d]efendants were aware that these manifestations are known indicators of sex trafficking"); *I.R. v. I Shri Khodiyar, LLC*, 723 F. Supp. 3d 1327, 1340–41 (N.D. Ga. 2024) (knowledge element satisfied where, *inter alia*, "[t]he hotel's manager . . . saw the middle-school-aged Plaintiff chained by her ankle to a bedframe in her trafficker's room" and defendant's managers solicited sex from the plaintiff).

After summary judgment was granted to Naseeb, yet another district court in this Circuit dismissed claims that were nearly identical to C.B.'s. *See Doe (S.J.C.) v. ESA P Portfolio LLC*, 2024 WL 4808137, at *1 (N.D. Ga. Nov. 15, 2024) (Boulee, J.) (granting defendant hotel's motion to dismiss in the absence of any "allegations that hotel staff observed [plaintiff's] trafficker forcefully bringing her to the hotel or abusing her in any way" and in the absence of any allegation that the plaintiff "had visible injuries or that she ever acted nervous or afraid around hotel employees.").

C.B. nonetheless argues that there was sufficient evidence to create a jury question as to whether Naseeb had constructive knowledge that she was being trafficked by Chappell. *See* Br. at 36. *First*, she argues that "one of Naseeb's

housekeepers saw C.B. outside of Chappell's second room with a John." *See id.* But the identity of the woman that C.B. allegedly made eye contact with is unknown, and it is unclear whether she was actually a housekeeper at the Hilltop Inn. Doc. 123 (C.B. Dep.) at 71:14-17, 72:6-73. Moreover, it is undisputed that C.B. did not make eye contact with this unidentified woman for more than a "few seconds." *See id.* at 71:21-23 and 73:6-8; Br. at 36. These "few seconds" would hardly have been enough time for this unidentified woman to have observed the age and race of C.B. and her "John," determine the relationship between them, and realize that something might be amiss.

But even *if* this unidentified woman had time to observe C.B.'s situation (which she did not) and even *if* she were actually a housekeeper at the Hilltop Inn (which there is no evidence of), her knowledge would not be imputable to Naseeb. Under Georgia law, Naseeb is only bound by the "knowledge of an officer or agent." *See Clarence L. Martin, P.C. v. Chatham Cnty. Tax Com'r,* 258 Ga. App. 349, 350 (2002) ("[a] corporation is bound by knowledge of an *officer or agent* when the knowledge pertains to matters within the scope of the officer's or agent's duties.") (emphasis added). And there is no suggestion that this unidentified woman was an officer of Naseeb, or that she had the authority to act on Naseeb's behalf as necessary to create a principal-agent relationship. *See Physician Specialists in Anesthesia, P.C. v. Wildmon*, 238 Ga. App. 730, 732 (1999) ("[A]n

employer-employee relationship does not typically create a principal-agent relationship. The distinguishing characteristic of an agent is that he is vested with authority, real or ostensible, to create obligations on behalf of his principal. . .") (internal quotations omitted); *see also* O.C.G.A. § 10-6-1.

*Second*, C.B. argues that the noise emanating from C.B.'s room was so loud at one point "that it could be heard in *other rooms*." *See* Br. at 36 (emphasis added). This appears to be a reference to C.B.'s testimony that after John #1 left her room, Chappell called her to complain about the noise. *See* Doc. 123 (C.B. Dep.) at 57:22-25. But to the extent that Chappell was able to hear noises coming from C.B.'s room, it was only because his room was located right next door. *See* Doc. 120-6 at 2-3. The front desk, on the other hand, was in an entirely different wing of the hotel, and there is no suggestion that these noises were ever heard by, or reported to, hotel staff. *See* Br. at 5, citing Doc. 144 (Amin Dep.) at 12-13 (11:20-12:4) (front desk located in the Upper Building); Br. at 13-14, citing, *e.g.*, Doc. 144 (Amin Dep.) at 78, 82-83 (77:6-17, 81:21-82:15) (Chappell and C.B's rooms located in lower building); *see also* Doc. 144 (Amin Dep.) at 47 (46:1-4) (no Hilltop staff stationed in lower building). And where Naseeb had no knowledge of these alleged noises, they could not have put Naseeb on notice of C.B.'s trafficking.

*Third*, C.B. alleges that her "presence with Chappell on Naseeb's

premises was so suspicious that another *guest* called that second room to see if C.B. was okay." *See* Br. at 36 (emphasis added). C.B. suggests that the caller may have been concerned because C.B.—a 15-year-old black girl—was with an older "white man." *See* Br. at 17. But unlike this unidentified guest, Naseeb never even knew that C.B. was at the hotel, much less that she was there with Chappell. And there is no suggestion that the unidentified guest's concerns were ever relayed to the hotel, perhaps because C.B. told the caller that everything was ok. *See* Doc. 123 (C.B. Dep.) at 69:15-18.

The district court thus correctly concluded that, even construing all of those pieces of evidence in the light most favorable to C.B., there was no "genuine issue of material fact as to whether Naseeb knew or should have known that this specific 'venture' was proceeding in violation of the TVPRA with regard to [Plaintiff's] trafficking." *See* Doc. 164 (Order) at 48 (explaining that "[n]one of the evidence indicates that Defendant knew or should have known that Plaintiff was being trafficked in this short timeframe.").

**B.  To establish beneficiary liability under Section 1595, the venture must violate the TVPRA as to the Plaintiff.**

Unable to show that Naseeb had any knowledge that C.B. was being trafficked, C.B. argues that knowledge that "Chappell was specifically trafficking C.B." is not legally required. *See* Br. at 33. But this argument is explicitly foreclosed by the statutory language as well as by *Red Roof*, which is controlling

precedent. 21 F.4th at 726 (requiring plaintiff to show that "the defendant had

constructive or actual knowledge that the undertaking or enterprise violated the

TVPRA *as to the plaintiff*.") (emphasis added).

### i. *Red Roof*'s statement of the elements of a TVPRA beneficiary claim is binding Eleventh Circuit precedent.

C.B.'s attempt to cast aside *Red Roof's* statement of the elements of a

TVPRA beneficiary claim as "non-binding *dictum*" misstates the holding in that

case. *See* Br. at 33. She argues that because the Does in *Red Roof* failed to

plausibly allege the second element (participation in a venture), the Court "never

reached and decided any question regarding the fourth element," and "anything

*Red Roof* says about the fourth element is non-binding." *See id.* To the contrary,

the first step in the Court's analysis was to "decide a question of first impression

about the elements of a TVPRA beneficiary claim," and the Court "address[ed]

each part in turn." *Red Roof*, 21 F.4th at 719, 723. Only then could the Court

"determine whether the Does have plausibly alleged facts that satisfy those

elements. . ." *Id.* The determination of the requisite elements of a TVPRA

beneficiary claim was thus squarely before the Court and necessary to the

resolution of defendant's motion to dismiss. There is simply no basis for C.B. to

arbitrarily parse out certain elements of this unitary test as "dicta." Indeed, it has

long been the law that where an issue is properly presented and decided, it is

binding even if another issue was ultimately found to be dispositive of the case:

It cannot be said that a case is not authority on one point because, although that point was properly presented and decided in the regular course of the consideration of the cause, something else was found in the end which disposed of the whole matter.

*United States v. Adamson*, 665 F.2d 649, 656, n.19 (5th Cir. 1982), on reh'g, 700 F.2d 953 (5th Cir. 1983) (quoting *Florida Central Railroad Co. v. Schutte*, 103 U.S. 118, 143 (1881) (holding that where the "precise question was properly presented, fully argued, and elaborately considered in the opinion," "[t]he decision on this question was as much a part of the judgment of the court as was that on any other of the several matters on which the case as a whole depended.")). Every Court in this Circuit to consider *Red Roof* has thus correctly applied its statement of the elements of a beneficiary claim as binding precedent. *See, e.g., Doe (K.B.) v. G6 Hosp., LLC*, 2023 WL 8650785, at *6 (N.D. Ga. Dec. 14, 2023) (finding "*Red Roof*'s plaintiff-specific knowledge requirement binding on this case" and rejecting argument "that the discussion of the knowledge element is mere dicta").

**ii.** ***Red Roof* correctly states the elements of a TVPRA claim.**

C.B. urges this Court to abandon *Red Roof's* statement of the elements of a TVPRA beneficiary claim and instead adopt a contrary interpretation reached by a divided panel of the Seventh Circuit in *G.G. v. Salesforce.com, Inc.* 76 F.4th 544, 551 (7th Cir. 2023). In *Salesforce*, the majority held that Section 1595 does not require "that the defendant knew or should have known of the *specific victim* who has brought the civil action," and instead requires only that the plaintiff show "that

36 of 43

It cannot be said that a case is not authority on one point because, although that point was properly presented and decided in the regular course of the consideration of the cause, something else was found in the end which disposed of the whole matter.

*United States v. Adamson*, 665 F.2d 649, 656, n.19 (5th Cir. 1982), on reh'g, 700 F.2d 953 (5th Cir. 1983) (quoting *Florida Central Railroad Co. v. Schutte*, 103 U.S. 118, 143 (1881) (holding that where the "precise question was properly presented, fully argued, and elaborately considered in the opinion," "[t]he decision on this question was as much a part of the judgment of the court as was that on any other of the several matters on which the case as a whole depended.")). Every Court in this Circuit to consider *Red Roof* has thus correctly applied its statement of the elements of a beneficiary claim as binding precedent. *See, e.g., Doe (K.B.) v. G6 Hosp., LLC*, 2023 WL 8650785, at *6 (N.D. Ga. Dec. 14, 2023) (finding "*Red Roof*'s plaintiff-specific knowledge requirement binding on this case" and rejecting argument "that the discussion of the knowledge element is mere dicta").

**ii.** ***Red Roof* correctly states the elements of a TVPRA claim.**

C.B. urges this Court to abandon *Red Roof's* statement of the elements of a TVPRA beneficiary claim and instead adopt a contrary interpretation reached by a divided panel of the Seventh Circuit in *G.G. v. Salesforce.com, Inc.* 76 F.4th 544, 551 (7th Cir. 2023). In *Salesforce*, the majority held that Section 1595 does not require "that the defendant knew or should have known of the *specific victim* who has brought the civil action," and instead requires only that the plaintiff show "that

the defendant had constructive knowledge that a venture *generally* has violated Section 1591." But "it should go without saying that [this Court is] not bound by the decisions of other circuits." *Brush v. Sears Holdings Corp.*, 466 F. App'x 781, 787, n.7 (11th Cir. 2012); *see also Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981) ("Under the established federal legal system the decisions of one circuit are not binding on other circuits."). Moreover, *Salesforce* contained a vigorous dissent supporting *Red Roof's* interpretation of Section 1595. *See Salesforce*, 76 F.4th at 568 (Kirsch, C.J, dissenting) (opining that the majority's analysis, would "render[] meaningless § 1595's requirement that the defendant have constructive knowledge of a § 1591 violation.").

As the dissent explained, "to be civilly liable as a participant in a venture that violated § 1591, by the plain language of § 1595, [defendant] must have had constructive knowledge of a §1591 violation." *Id.* "But there is no such thing as a general violation of § 1591." *Id.* "To plead a § 1595 violation, the plaintiffs must allege that [defendant] had constructive knowledge of [plaintiff's] trafficking."

> [Section] 1591's use of the terms "a person" and "the person" is victim-specific, meaning an individual is not guilty of the crime unless the government can prove that his actions were tied to a specific victim. Knowledge of a specific victim (not just general sex trafficking) is an element of § 1591. Thus, because § 1595 requires constructive knowledge of a § 1591 violation and a § 1591 violation requires knowledge of a specific victim, damages suits are available only when a plaintiff plausibly alleges that the defendant should have known that the venture engaged in her particular sex trafficking. See *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 726 (11th Cir. 2021). . .

*Id.* at 568-69 (concluding that plaintiffs' claims should have been dismissed because "[w]ithout constructive knowledge of G.G.'s identity and the trafficking offense committed against her . . . the plaintiffs cannot bring a civil § 1595 claim against Salesforce.") (emphasis added).

C.B.'s claim that *Salesforce* represents the "majority" rule is not only irrelevant where the Eleventh Circuit has already decided this issue, it is also highly misleading, as it is based on nothing more than a handful of district court decisions. *See* Br. at 35; *G.G. v. Salesforce.com, Inc.*, 76 F.4th at 558, n.13. In fact, many other courts have adopted *Red Roof's* victim-specific knowledge requirement. *See, e.g.*, *Doe (G.N.C.) v. Uniquest Hosp., LLC*, 2024 WL 4149251, at *2 (S.D.N.Y. Sept. 11, 2024); *Doe (K.E.C.) v. G6 Hosp., LLC*, 2024 WL 4501095, at *4 (E.D. Tex. Sept. 24, 2024); *L.H. v. Red Roof Inn, Inc.*, No. 3:22-CV-625-CHB, 2023 WL 5725574, at *6 (W.D. Ky. Sept. 5, 2023*); Doe (M.J.J.) v. Wyndham Hotels & Resorts, Inc.*, No. CV 24-6490 (SDW) (JRA), 2025 WL 342092, at *4 (D.N.J. Jan. 30, 2025); *Doe by Doe v. Piraino*, 688 F. Supp. 3d 635, 649 (M.D. Tenn. 2023); *Doe v. Mindgeek USA Inc.*, 558 F. Supp. 3d 828, 837, 839 (C.D. Cal. 2021); *see also Doe (S.C.) v. Sheraton, LLC*, 2024 WL 1329422, at *5 (D.N.M. Mar. 28, 2024) (finding plaintiff had alleged sufficient facts to plausibly establish that defendant "knew or should have known *she* was being trafficked") (emphasis added).

### iii.    *Red Roof* is binding on this panel.

Principles of stare decisis counsel against revisiting the test adopted by *Red Roof* just four years ago. *See Kimble v. Marvel Ent., LLC*, 576 U.S. 446, 455, (2015) (explaining that "[o]verruling precedent is never a small matter" and that stare decisis "is a foundation stone of the rule of law" "because it promotes the evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process.").

Even if *Salesforce's* alternative interpretation of Section 1595 was valid (which it is not), "[r]especting *stare decisis* means sticking to some wrong decisions." *See Kimble*, 576 U.S. at 455. "What is more, *stare decisis* carries enhanced force when a decision, like *[Red Roof],* interprets a statute." *See id.* at 456; *see also Nat'l Min. Ass'n v. Sec'y, U.S. Dep't of Lab.*, 812 F.3d 843, 862 (11th Cir. 2016) ("[T]he burden borne by the party advocating the abandonment of an established precedent is greater where we are asked to overrule a point of statutory construction.") (quotations omitted). That is because "unlike in a constitutional case, critics of [the Court's] ruling can take their objections across the street, and Congress can correct any mistake it sees." *Kimble*, 576 U.S. at 455.

In any event, this panel cannot simply "reject" *Red Roof's* holding because "[t]he law of this circuit is emphatic that only the Supreme Court or this court

sitting *en banc* can judicially overrule a prior panel decision." *Cargill v. Turpin*, 120 F.3d 1366, 1386 (11th Cir. 1997) (quoting *United States v. Woodard,* 938 F.2d 1255, 1258 (11th Cir.1991)); *see also Minor v. Dugger*, 864 F.2d 124, 126 (11th Cir. 1989) (adopting the "absolute rule that a prior decision of the circuit (panel or en banc) could not be overruled by a panel but only by the court sitting en banc."). Plaintiff's arguments as to the merits of the *Red Roof* decision are thus ultimately beside the point, as this panel is bound by its holding.

### C. There is no evidence that Naseeb was aware that Chappell was generally engaged in sex trafficking.

While civil beneficiary liability requires knowledge of a TVPRA violation *involving the plaintiff*, even the broader standard urged by Plaintiff would not save her claims in this case. C.B. contends that Naseeb should have known generally that "Chappell was engaged in trafficking" because "Naseeb knew that Chappell was a sex offender on probation, knew that he rented a second room on a nightly basis and told housekeeping not to clean that second room, and knew that trafficking was rampant at the Hilltop Inn." *See* Br. at 31-32.

C.B. relies heavily on Mr. Tallis's expert opinion that renting an adjoining room to a known sex offender was generally a "red flag." *See* Br. at 32. But Mr. Tallis's opinion suffers from hindsight bias, as the reality is that sex trafficking prevention education and awareness was in its infancy in 2010, and there were no formal training programs on indicators of sex trafficking available throughout the

hospitality industry at the time. *See* Doc. 117 (Talis Dep.), 99:14–100:3, 101:7- 9;

Doc. 118 (Del Marva Dep.) at 28 (107:1-12); *see also* Doc. 118 at 30 (117:6-14)

(no studies showing that training programs reduce the incidence of sex trafficking).

In the absence of any such training, Naseeb reasonably relied on its past experience

that no sex offender had ever caused a problem at the Hilltop Inn. *See* Doc. 120-16

(Tallis Dep.) at 5-6 (76:4-77:11); Doc. 118 (Del Marva Dep.) at 38 (147:14-19,

149:19-23); Doc. 131 (Vaughn Dep.) at 125-126 (124:15-125:13). Indeed,

Naseeb's experience was consistent with Mr. Tallis's opinion that there is no direct

connection between the presence of sex offenders on the property and sex

trafficking. *See* Doc. 117 (Tallis Dep.) at 76:25-77:3. And where Naseeb had no

reason to be concerned about Chappell's status as a sex offender, it similarly had

no reason to be alarmed by his otherwise mundane request to decline

housekeeping.

C.B.'s further argument that if employees at the Hilltop Inn "had been

watching for suspicious activity. . . Naseeb would've learned of Chappell's

trafficking" is contrary to both the undisputed facts and established law. *See* Br. at

32. As an initial matter, Naseeb was under no obligation to "watch[] for suspicious

activity" because "the TVPRA does not impose an affirmative duty to prevent sex

trafficking." *Doe (K.B.) v. G6 Hosp., LLC,* 2024 WL 4701891, at *3 (N.D. Ga. Nov.

5, 2024) (collecting cases); *see also A.D. v. Best W. Int'l, Inc.*, 2023 WL 2955712, at

*7 (M.D. Fla. Apr. 14, 2023) ("[T]he TVPRA does not impose an affirmative duty to police and prevent sex trafficking.").

Moreover, it is undisputed that Chappell's probation officers could not determine that he was trafficking C.B., despite coming to his hotel room twice. *See* Doc. 120-8 (Chappell parole notes) at 13-14 (showing face to face field visits on June 22, 2010); Doc. 123 (C.B. Dep.) at 69; Br. at 17-18. If Chappell's trained probation officers could not observe that Chappell was engaging in sex trafficking, there is no reason to believe that Naseeb should have detected it. That is all the more true where unlike Chappell's probation officers, Naseeb had no right to inspect Chappell's room at will. *See* Doc. 120-16 (Tallis Dep.) at 9 (103:17-22).

As Mr. Tallis acknowledged, even when a hotel does nothing wrong, sex trafficking can still occur. *See id.* at 10-12 (145:10-147:5). And while C.B.'s experience was undoubtedly tragic, there is no evidence that Naseeb knew or should have known that Chappell was engaged in sex trafficking as required to impose beneficiary liability under the TVPRA.

## Conclusion

For the foregoing reasons, the Court should affirm the district court's Order granting summary judgment to Defendant Naseeb.

Respectfully submitted this March 31, 2025.

*/s/ Laurie Webb Daniel*
Laurie Webb Daniel
Jonathan Bradley Spital
WEBB DANIEL FRIEDLANDER LLP
75 14th Street NE
Suite 2450
Atlanta, GA 30309
(404) 433-6430
laurie.daniel@webbdaniel.law
jonathan.spital@webbdaniel.law

Kori Wagner
Tracy Ann Gilmore
SWIFT, CURRIE,
MCGHEE & HIERS, LLP
1420 Peachtree Street NE
Suite 800
Atlanta, GA 30309
(404) 874-8800
kori.wagner@swiftcurrie.com
tracy.gilmore@swiftcurrie.com

*Attorneys for Appellee-Defendant*

**CERTIFICATE OF COMPLIANCE**

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 10,753 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and 11th Cir. Rule 32-4.

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6), because it has been prepared in a proportionally spaced typeface using Times New Roman 14-point font.

This March 31, 2025.

/s/ *Laurie Webb Daniel*
Laurie Webb Daniel
75 14th Street NE
Suite 2450
Atlanta, GA 30309
T: (404) 433-6430
laurie.daniel@webbdaniel.law

*Counsel for Appellee-Defendant*

**CERTIFICATE OF SERVICE**

I hereby certify that on March 31, 2025, I electronically filed the foregoing

with the Clerk of the Court for the United States Court of Appeals for the Eleventh

Circuit by using the CM/ECF system, which system thereby electronically served

the same on the following counsel of record:

Matthew B. Stoddard
Belle-Anne B. Cooper
THE STODDARD FIRM
1534 N Decatur Road
Atlanta, GA 30307
matt@legalhelpha.com
ba@legalhelpga.com

Naveen Ramachandrappa
Amber D. Greenaway
BONDURANT MIXSON & ELMORE LLP
1201 W Peachtree St NW Ste 3900
Atlanta, GA 30309
ramachandrappa@bmelaw.com
greenaway@bmelaw.com

/s/ *Laurie Webb Daniel*
Laurie Webb Daniel