Case No. 24-13294-CC

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

---

C.B.,
Appellant-Plaintiff,

v.

NASEEB INVESTMENTS, INC.,
Appellee-Defendant.

---

Appeal from the United States District Court
for the Northern District of Georgia

### **Appellant-Plaintiff C.B.'s Reply Brief**

Matthew B. Stoddard
Belle-Anne Cooper
THE STODDARD FIRM
1534 N. Decatur Road NE
Atlanta, GA 30307
Tel: (470) 467-2200
*matt@legalhelpga.com*
*ba@legalhelpga.com*

Naveen Ramachandrappa
Amber D. Greenaway
BONDURANT, MIXSON & ELMORE, LLP
1201 W Peachtree St NW, Ste 3900
Atlanta, GA 30309
Tel: (404) 881-4100
*ramachandrappa@bmelaw.com*
*greenaway@bmelaw.com*

*Attorneys for Appellant-Plaintiff C.B.*

Case No. 24-13294-CC
C.B. v. Naseeb Investments

## **Amended Certificate of Interested Persons**
## **& Corporate Disclosure Statement**

On October 21, 2024, Appellant-Plaintiff C.B. filed her stand-alone Certificate of Interested Persons & Corporate Disclosure Statement. On January 3, 2025, C.B. filed the same Certificate of Interested Persons & Corporate Disclosure Statement as part of her Principal Brief. And, on March 31, 2025, Appellee-Defendant Naseeb Investments, Inc. filed a Certificate of Interested Persons & Corporate Disclosure Statement as part of its Principal Brief.

After those certificates were filed, on April 7, 2025, counsel for Amicus Curiae International Franchise Association filed notices of appearance and a motion for leave to file an amicus brief in this appeal. Thus, pursuant to Eleventh Circuit Rule 26.1-4, C.B. submits this Amended Certificate of Interested Persons & Corporate Disclosure Statement, which adds four names based on the International Franchise Association's notices of appearance and motion for leave: **Andrew J. Clopton**, **Julie E. Fine**, **International Franchise Association**, and **Jones Day**.

For the sake of completeness and accuracy, C.B. also provides this updated complete list (*i.e.*, providing all names from C.B.'s original and amended certificates) of all trial judges, attorneys, persons, associations of persons, firms, partnerships, or corporations (including subsidiaries, conglomerates, affiliates, parent cor-

porations, any publicly held corporation that owns 10% or more of the party's stock, and other identifiable legal entities related to a party) that have an interest in the outcome of this particular case or appeal:

- Amin, Nalini (Joint Owner of Appellee-Defendant)

- Amin, Vic (Joint Owner of Appellee-Defendant)

- Atkins, Sabrina Lynn (Counsel for Appellee-Defendant)

- Baker, Donelson, Bearman, Caldwell & Berkowitz, P.C. (Counsel for Movant Choice Hotels International Inc.)

- Beranek, Lori M. (Counsel for Movants U.S. Attorney's Office and Federal Bureau of Investigation)

- Bondurant, Mixson & Elmore LLP (Counsel for Appellant-Plaintiff)

- Cartiga Consumer Funding, LLC (Funding for Appellant-Plaintiff)

- C.B. (Appellant-Plaintiff)

- Choice Hotels International, Inc. (Movant in District Court)

- Clopton, J. Andrew (Counsel for Amicus Curiae International Franchise Association)

- Colette, Hervey Joseph (Counsel for Movant View Point Health)

- Cooper, Belle-Anne (Counsel for Appellant-Plaintiff)

- Federal Bureau of Investigation (Movant in District Court)

- Fine, Julia E. (Counsel for Amicus Curiae International Franchise Association)

- Freeman Mathis & Gary, LLP (Counsel for Movant View Point Health)

- Gilmore, Tracy Anne (Counsel for Appellee-Defendant)

- Greenaway, Amber (Counsel for Appellant-Plaintiff)

- Harris, Roger E. (Counsel for Appellee-Defendant)

- International Franchise Association (Amicus Curiae)

- Jones Day (Counsel for Amicus Curiae International Franchise Association)

- Lee, Christopher Sue (Counsel for Movant View Point Health)

- Naseeb Investments, Inc. d/b/a The Hilltop Inn a/k/a Econolodge (Appellee-Defendant)

- Patel, Atul (Joint Owner of Appellee-Defendant)

- Patel, George (Joint Owner of Appellee-Defendant)

- Ramachandrappa, Naveen (Counsel for Appellant-Plaintiff)

- Stoddard, Matthew (Counsel for Appellant-Plaintiff)

- Swift, Currie, McGhee & Hiers, LLP (Counsel for Appellee-Defendant)

- The Stoddard Firm (Counsel for Appellant-Plaintiff)

- Totenberg, Hon., Amy (District Court Judge, N.D. Ga.)

- Tropper, Joshua (Counsel for Movant Choice Hotels International Inc.)

- Turner, Sara Marie (Counsel for Movant Choice Hotels International Inc.)

- United States Attorney's Office (Movant in District Court)

- View Point Health (Movant in District Court)

- Wagner, Kori (Counsel for Appellee-Defendant)

- WLG Atlanta, LLC (Counsel for Appellant-Plaintiff)

- Zabresky, Janelle (Counsel for Appellant-Plaintiff)[1]

Counsel for Appellant-Plaintiff C.B. further certifies that Choice Hotels International, Inc. (CHH) is a publicly traded company that potentially has an interest in the outcome of this case or appeal.

---

[1] Janelle Zabresky represented Appellant-Plaintiff C.B. while Ms. Zabresky was an associate at The Stoddard Firm. Ms. Zabresky, however, no longer actively represents Appellant-Plaintiff C.B., as she now works at a different law firm, WLG Atlanta. We list her as counsel only out of an abundance of caution.

## Table of Contents

Summary of Argument ...........................................................................................1

Argument......................................................................................................2

    1.    C.B. satisfied the second element—Naseeb's participation in a
        venture with C.B.'s trafficker, Chappell. ..............................................2

        A.    Naseeb's repeated room rentals to Chappell show
                participation. ..............................................................................2

        B.    Nothing more than room rentals is required to show
                Naseeb's participation in a venture with Chappell. ...................5

                i.    *Red Roof* doesn't require more than room rentals. ...........6

                ii.    The phrase "common undertaking or enterprise"
                        doesn't require more than room rentals...........................9

                iii.    C.B.'s arguments don't produce absurd results...............9

                iv.    Naseeb doesn't explain what "more" is required
                        and instead seeks to conflate other elements.................11

        C.    Even if more were required, Naseeb supported
                Chappell's trafficking in other ways.........................................12

    2.    C.B. satisfied the fourth element—Naseeb's knowledge that the
        venture engaged in an act violating the TVPRA................................15

        A.    Naseeb should've known Chappell was engaged in
                trafficking.................................................................................15

        B.    Awareness that Chappell was specifically trafficking
                C.B. isn't required to show Naseeb's knowledge.....................19

        C.    Even if it were required, Naseeb also should've known
                that Chappell was specifically trafficking C.B. ........................22

Conclusion ...................................................................................................25

# Table of Citations

**Eleventh Circuit Cases**

*Beasley v. O'Reilly Auto Parts,*

    69 F.4th 744 (11th Cir. 2023)........................................................................20

\*   *Doe #1 v. Red Roof Inns, Inc.,*

    21 F.4th 714 (11th Cir. 2021)............................ 2, 3, 4, 6, 7, 8, 10, 15, 20, 21

*Fresh Results, LLC v. ASF Holland, B.V.,*

    921 F.3d 1043 (11th Cir. 2019)....................................................................21

*K. H. v. Riti, Inc.,*

    2024 WL 505063 (11th Cir. Feb. 9, 2024)......................................6, 7, 8, 11

**Other Federal Circuit Cases**

*Doe 1 v. Apple, Inc.,*

    96 F.4th 403 (D.C. Cir. 2024)................................................................10, 11

\*   *G.G. v. Salesforce.com, Inc.,*

    76 F.4th 544, 559 (7th Cir. 2023).........................................3, 8, 9, 10, 15, 19

*Ricchio v. McLean,*

    853 F.3d 553 (1st Cir. 2017)....................................................................3, 11

*United States v. Adamson,*

    665 F.2d 649 (5th Cir. 1982).........................................................................20

**Federal District Court Cases**

*B.D.G. v. Choice Hotels Int'l, Inc.*,

    2023 WL 5935646 (S.D. Ohio Sept. 12, 2023)........................................18, 19

*Doe v. Rickey Patel, LLC*,

    2020 WL 6121939 (S.D. Fla. Sept. 30, 2020).................................................4

*Doe (K.R.D.) v. Wyndham Hotels & Resorts, Inc.*,

    2025 WL 1166519 (D.N.J. Apr. 21, 2025)......................................................4

*Doe (L.M.) v. 42 Hotel Raleigh, LLC*,

    2024 WL 4204906 (E.D.N.C. Sept. 16, 2024) ...............................................7

*G.W. v. Northbrook Indus., Inc.*,

    739 F. Supp. 3d 1243 (N.D. Ga. 2024)..........................................................10

*K.A. v. 26th St. Hosp., LLP*,

    2024 WL 2112480 (D.N.D. Apr. 15, 2024) ...............................................4, 11

*M.A. v. Wyndham Hotels & Resorts, Inc.*,

    425 F. Supp. 3d 959 (S.D. Ohio 2019)..................................................3, 5, 11

*S.C. v. Wyndham Hotels & Resorts, Inc.*,

    728 F. Supp. 3d 771 (N.D. Ohio 2024) .......................................................8, 9

*S.Y. v. Marriott Int'l, Inc.*,

    2021 WL 2003103 (M.D. Fla. May 19, 2021) ...............................................4

*S.Y. v. Naples Hotel Co.,*

    476 F. Supp. 3d 1251 (M.D. Fla. 2020) ...................................................11, 12

**Georgia Cases**

*Millan v. Residence Inn By Marriott, Inc.,*

    487 S.E.2d 431 (Ga. Ct. App. 1997) .............................................................23

**Federal Statutes**

18 U.S.C. § 1589 ........................................................................................21

18 U.S.C. § 1591 ....................................................................................19, 21

18 U.S.C. § 1595 ............................................................................1, 4, 19, 21

# Summary of Argument

The district court erred in holding that Appellant-Plaintiff C.B. didn't present evidence from which a jury could find that she has satisfied the participation element and the knowledge element of her civil-beneficiary claims under the Trafficking Victims Protection Reauthorization Act (TVPRA), *see* 18 U.S.C. § 1595 (a), against Appellee-Defendant Naseeb Investments, Inc., a hotel operator.

*First*, C.B. satisfied the second element—Naseeb's participation in a venture with C.B.'s trafficker, Timothy Chappell. Naseeb's repeated room rentals satisfy the participation requirement, and nothing more than room rentals is required to show Naseeb's participation in a venture with Chappell.

Even if more were required, Naseeb supported Chappell's trafficking in other ways—by assigning all sex offenders, including Chappell, and prostitutes to the same area of its hotel; by directing its housekeepers to enter the rooms of sex offenders and prostitutes only once a week; and by not reporting prostitution to the police but only within Naseeb. These practices assisted Chappell by helping him, and those buying commercial sex with C.B., to avoid detection.

*Second*, C.B. satisfied the fourth element—Naseeb's knowledge that the venture engaged in an act violating the TVPRA. Naseeb should've known that Chappell was engaged in trafficking because Naseeb knew that Chappell was a sex offender on probation, knew that he rented a second room on a nightly basis and

told housekeeping not to clean that second room, and knew that trafficking was rampant at the Hilltop Inn. Nothing more was required to show Naseeb should've known that its venture with Chappell engaged in *an act* violating the TVPRA.

Moreover, even if specific knowledge were required, Naseeb also should've known that Chappell was specifically trafficking C.B. In addition to the fact that Naseeb should've known that Chappell was engaged in trafficking generally at the Hilltop Inn, one of Naseeb's housekeepers saw C.B. outside of Chappell's second room with a John, another John had such loud sex with C.B. in that second room that it could be heard in other rooms, and C.B.'s presence with Chappell on Naseeb's premises was so suspicious that another guest called that second room to see if C.B. was okay. From that evidence, a jury could find that Naseeb should've known that Chappell was specifically trafficking C.B.

## Argument

**1. C.B. satisfied the second element—Naseeb's participation in a venture with C.B.'s trafficker, Chappell.**

### A. Naseeb's repeated room rentals to Chappell show participation.

In *Red Roof*, this Court held that "the phrase 'participation in a venture'" simply means that the beneficiary "took part in a common undertaking or enterprise involving risk and potential profit." *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 725 (11th Cir. 2021). This Court also explained that "renting a room to the abuser" is one of the "kinds of allegations" that "would establish a hotel operator's

participation in a venture with a sex trafficker." *Id.* at 726.

Other courts agree. For example, in *Ricchio*, the First Circuit held that, "in receiving money as rent for the quarters where [the trafficker] was mistreating [the plaintiff], [the motel owners] were associating with [the trafficker]." *Ricchio v. McLean*, 853 F.3d 553, 555 (1st Cir. 2017); *see Red Roof*, 21 F.4th at 725-26 ("[O]ur reasoning is consistent with the disposition [in *Ricchio*].").

Similarly, in *Salesforce.com*, the Seventh Circuit explained that "providing hotel rooms" is an example of "direct involvement in sex trafficking" that "would satisfy Section 1595's 'participation' element." *G.G. v. Salesforce.com, Inc.*, 76 F.4th 544, 559 (7th Cir. 2023). Indeed, the Seventh Circuit found that this type of "direct involvement goes beyond what the statutory text requires." *Id.*

As another example, in *Wyndham*, an Ohio federal district court held that a plaintiff alleged "sufficient facts to show [the hotel] 'participated in a venture' under § 1595 by alleging that [it] rented rooms to people it knew or should have known [were] engaged in sex trafficking." *M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959, 971 (S.D. Ohio 2019). Under those facts, the room rentals "facilitated the sex trafficking venture." *Id.*

*Ricchio*, *Salesforce.com*, and *Wyndham* are just three examples; many other courts hold that "it is sufficient for [the plaintiff] to allege that [the hotel] participated in a venture by renting rooms to individuals that [it] knew or should have

known were involved a sex-trafficking venture." *Doe v. Rickey Patel, LLC*, No. 0:20-60683-WPD-CIV, 2020 WL 6121939, at *5 (S.D. Fla. Sept. 30, 2020); *see also S.Y. v. Marriott Int'l, Inc.*, No. 2:20-CV-627-JES-MRM, 2021 WL 2003103, at *4 (M.D. Fla. May 19, 2021); *K.A. v. 26th St. Hosp., LLP*, No. 1:23-CV-092, 2024 WL 2112480, at *7 (D.N.D. Apr. 15, 2024); *Doe (K.R.D.) v. Wyndham Hotels & Resorts, Inc.*, No. CV 24-8174 (SDW) (JBC), 2025 WL 1166519, at *3 (D.N.J. Apr. 21, 2025) (all same or similar holdings).

Here, C.B. satisfied *Red Roof*'s plain-meaning interpretation of "participation in a venture." 18 U.S.C. § 1595 (a). C.B. presented evidence that, in exchange for weekly payment of $205, Naseeb rented Chappell a room for himself and then renewed that rental at least five more times (*i.e.*, a total of six weeks). *See, e.g.*, *See* R-120-6 (Hotel Receipts) at 2; R-120-8 (Probation Notes) at 15-16; R-144 (Vic Amin Dep.) at 82-83. In exchange for daily payment of $44.99, Naseeb rented Chappell a second room—where he sold sex with C.B., a minor, to four men and where Chappell also raped C.B.—and renewed that rental at least one time (*i.e.*, a total of two days). *See* R-120-6 at 3.

C.B. also presented evidence that Naseeb's repeated room rentals to Chappell involved potential risk and profit. The risk to Naseeb included that Chappell returned the rooms with substantial damage, just as other traffickers and prostitutes had done. *See, e.g.*, R-134 (Blackmon Dep.) at 22 ("I said, Vic, these girls ain't do-

ing nothing but tearing up these rooms, tricking and tearing up these rooms. ....

They tear up this room, they move to the next room."); *id.* at 24-25 (*e.g.*, "broken

lamps"). The risk to Chappell included that he'd get kicked out of the Hilltop Inn,

one of the few "compliant places" a "sexually dangerous predator" like Chappell

could live while on probation. R-120-8 at 31, 29; *see id.* at 23-26.

Meanwhile, the profit to Naseeb included the revenue for Chappell's room,

as well as the revenue for the second room Chappell rented for two nights and

where he sold sex with C.B. to four men. As Vic Amin told one of Naseeb's

housekeepers, "[w]e need the money," and "prostitution" is "what [is] bringing the

money." R-134 at 22, 46-47. "The only way you going to make some money, you

got to get these girls back up here working, them girls." *Id.* at 47; *see id.* at 58

("Had to bring the girls back to bring the money back."). And the profit to Chap-

pell included selling sex with C.B. to four men "to make money and to help pay for

the hotel room." R-123 (C.B. Dep.) at 53.

In sum, C.B. had "sufficient [evidence] to show [Naseeb] 'participated in a

venture' ... by [showing] that [Naseeb] rented rooms to people it knew or should

have known [were] engaged in sex trafficking." *Wyndham*, 425 F. Supp. 3d at 971.

### B. Nothing more than room rentals is required to show Naseeb's participation in a venture with Chappell.

In response to the straightforward principle that a hotel sufficiently partici-

pates in a venture by renting rooms to an individual the hotel knew or should've

known was engaged in trafficking, Naseeb makes a series of arguments that aren't supported by case law, statutory text, or sound reasoning.

### i. *Red Roof* doesn't require more than room rentals.

Naseeb argues that, "[i]n *Red Roof*," this Court held that "[m]erely renting a hotel room to a trafficker is insufficient to show 'participation in a venture' as a matter of law." Appellee's Br. at 14 (emphasis omitted).

But the claims on appeal in *Red Roof* were against the franchisors—not the hotel operators. The franchisors didn't choose to rent the rooms to the traffickers; the hotel operators made that decision. The franchisors only received a percentage of rental revenue from the hotel operators. That's why this Court held that "[t]hese allegations may suggest that the franchisors financially benefited from renting hotel rooms to the Does' sex traffickers." 21 F.4th at 726-27. "But they do nothing to show that the franchisors participated in a common undertaking ...." *Id.* at 727.

After all, this Court's statement in *Red Roof* that "renting a room to the abuser" is one of the "kinds of allegations" that "would establish a hotel operator's participation" makes little-to-no sense if the Court's holding as to franchisors applied equally to hotel operators. *Id.* at 726.

True, *Riti* did hold that *Red Roof* applies equally to hotel operators when it comes to room rentals and participation. *See K. H. v. Riti, Inc.*, No. 23-11682, 2024 WL 505063, at *3 (11th Cir. Feb. 9, 2024). But, as "an unpublished, unargued

Eleventh Circuit opinion," *Riti* isn't binding. *Doe (L.M.) v. 42 Hotel Raleigh, LLC*, No. 5:23-CV-235, 2024 WL 4204906, at *4 (E.D.N.C. Sept. 16, 2024).

*Riti* also isn't persuasive because it misreads *Red Roof*. *Riti* said that any "distinction" between a franchisor and a hotel operator "does little work" and "is immaterial" because "the franchisors in *Red Roof* 'owned, managed, supervised, operated, oversaw, controlled the operation of, and/or were inextricably connected to the renting of rooms.'" 2024 WL 505063, at *3.

Yet, in *Red Roof*, this Court *expressly* rejected—as conclusory—the allegation that the franchisors in *Red Roof* controlled the operation of their hotels:

> The Does allege that the franchisors "owned and/or managed and/or operated and/or oversaw and/or controlled the operation" of their hotels and that they "had supervisory control over" the hotels. **Those allegations are mere recitations of the requirements for franchisor liability, and the Does do not allege any facts to support them**.

21 F.4th at 729 (emphasis added).

Thus, this Court's holding in *Red Roof* didn't and couldn't address a defendant—like Naseeb here—that controlled room rentals and chose to rent a room to a person it knew or should've known was engaged in trafficking. Instead, the "only allegations" of "participation" this Court considered in *Red Roof* were that "the franchisors sent inspectors to the hotels who would have seen signs of sex trafficking and that they received reviews mentioning sex work occurring at the hotels." *Id.* at 727. That's why this Court held that "observing something is not the same as

participating in it." *Id.* The *only* well-pled allegations against the franchisors in *Red Roof* involved observation—not control of hotel operations.

There's one last point to make about *Red Roof* and *Riti* on whether a hotel's room rentals satisfy the participation element. In both *Red Roof* and *Riti*, the plaintiffs alleged *only* a sex-trafficking venture. *See Red Roof*, 21 F.4th at 727; *Riti*, 2024 WL 505063, at *3. By contrast, C.B. didn't limit her allegations to participation in a sex-trafficking venture. *See* R-164 (MSJ Order) at 36 n.28.

As such, even if C.B. somehow couldn't establish Naseeb's participation in "a sex trafficking venture," R-13 (Am. Compl.) at 14 (¶ 65), C.B. still could establish Naseeb's "participat[ion] in a venture with Chappell to rent Chappell hotel rooms and those rooms were used to traffic C.B." *id.* at 22 (¶ 95).

Contrary to what Naseeb contends, "the alleged venture can be a 'commercial venture []' like running or expanding a business." *Salesforce.com*, 76 F.4th at 554. "While a 'venture' can certainly run the gamut from an isolated act of sex trafficking to an international sex-trafficking enterprise, it can also be a business whose primary focus is not on sex trafficking." *Id.* "The text of Section 1595 does not say 'sex-trafficking venture,' but only 'venture.'" *Id.* at 553-54.

Indeed, cases cited by Naseeb confirm this point. As one of those cases explains, "the venture must have actually committed **a sex trafficking act**"—not that the express or primary purpose of the venture must be sex trafficking. *S.C. v.*

*Wyndham Hotels & Resorts, Inc.*, 728 F. Supp. 3d 771, 778 n. 41 (N.D. Ohio 2024) (emphasis added) (favorably citing *Salesforce.com*).

### ii. The phrase "common undertaking or enterprise" doesn't require more than room rentals.

Naseeb argues that C.B.'s theory of liability would "eliminate the word 'common' from the phrase 'common undertaking or enterprise.'" Appellees Br. at 16. According to Naseeb, "it was *Naseeb* alone who bore the risk that rooms may be damaged, and *Naseeb* alone who stood to profit from the room rentals." *Id.*

However, a jury can easily find that it wasn't just Naseeb that had potential risk and profit; Chappell also faced risk and reward from the venture. If the rooms that Chappell rented were damaged, Naseeb could stop renting to him and sue for those damages. And because the Hilltop Inn was one of the few "compliant places" that a "sexually dangerous predator" like he could live, that was a *major* risk to Chappell. R-120-8 at 31, 29; *see id.* at 23-26. Meanwhile, Chappell stood to profit from the rentals because he was using the rooms to sell sex with C.B. to multiple men "to make money and to help pay for the hotel room." R-123 at 53.

### iii. C.B.'s arguments don't produce absurd results.

Naseeb argues that "C.B.'s theory of liability would lead to the absurd result that 'the participation requirement would automatically be satisfied any time the defendant is a hotel operator.'" Appellee's Br. at 17.

But why is that absurd? To the contrary, it's only *logical* that, as a general

rule, if a hotel rents a room to someone it knew or should've known was engaged in trafficking, it has participated in a venture with the trafficker. "[W]ithout a venue or crime scene, a sex trafficking venture ceases to exist." R-13 at 14 (¶ 65); *see also Salesforce.com*, 76 F.4th at 554 (applying the principle that "remedial statutes should be liberally construed" to the TVPRA).

That doesn't mean "'the venture need not involve the trafficker.'" Appellee's Br. at 17 (quoting *G.W. v. Northbrook Indus., Inc.*, 739 F. Supp. 3d 1243, 1249 (N.D. Ga. 2024)). For one thing, renting rooms *to the trafficker*, as the case is here, certainly involves the trafficker. For another, the word "common" in the phrase "common undertaking or enterprise" would also require the trafficker's involvement. *Red Roof*, 21 F.4th at 726. And the third element of a beneficiary claim, which requires "the undertaking or enterprise violated the TVPRA as to the plaintiff," similarly means that the venture must involve the trafficker. The trafficker must perpetrate the violation; the hotel is merely the beneficiary. *Id.*

Nor does it conflict with the principle that "something more than engaging in an ordinary buyer-seller transaction is required to establish 'participation.'" *Doe 1 v. Apple, Inc.*, 96 F.4th 403, 415 (D.C. Cir. 2024). Unlike an ordinary transaction, such as a trafficker buying toilet paper from Amazon, a hotel *controls* the premises on which a trafficker operates, and the hotel and the trafficker have an *ongoing* relationship that lasts the duration of the trafficker's stay—not just a transaction.

That's why, in *Apple*, the D.C. Circuit distinguished cases like *Ricchio*. As the D.C. Circuit explained, the plaintiffs in *Ricchio* alleged that "[t]he motel operators" "controlled the premises on which the scheme took place," while the plaintiffs in *Apple* couldn't "allege the Tech Companies directly controlled the mines where the plaintiffs' injuries occurred." *Id.* at 415, 414. The defendants in *Apple* didn't even have "a contractual right to inspect, let alone evidence of control." *Id.* at 416.

### iv. Naseeb doesn't explain what "more" is required and instead seeks to conflate other elements.

Naseeb repeatedly argues that C.B. must show that it did something "more than rent hotel rooms" to satisfy participation. Appellee's Br. at 13; *see id.* at 16 (arguing "rooms rented to Chappell, without more, is insufficient"). Yet, Naseeb doesn't explain what "more" means—at least not in a fair and workable manner.

For example, Naseeb says that "'the allegations in *Ricchio* were far stronger than just an operator renting rooms to a trafficker.'" *Id.* at 25 (quoting *Riti*, 2024 WL 505063, at *3). However, even where the "allegations do not rise to the level of obviousness present in *Ricchio*," the plaintiff can still satisfy the elements of a claim against a hotel operator. *Wyndham*, 425 F. Supp. 3d at 966. "*Ricchio* presents the heinous end of the spectrum with more vulgar facts"—not a requirement. *26th St. Hosp.*, 2024 WL 2112480, at *6.

Similarly, Naseeb says that, while it "had no prior dealings with Chappell, the defendant hotels in *Wyndham* and [*S.Y. v. Naples Hotel Co.*, 476 F. Supp. 3d

1251, 1257 (M.D. Fla. 2020),] were alleged to have been engaged in **continuous** business relationships with the traffickers and to have **actually** observed (and ignored) the victims." Appellee's Br. at 20 (emphasis added).

But Naseeb and Chappell *did* have a continuous business relationship. The relationship started six weeks before Chappell trafficked C.B. when he began renting his first room on a weekly basis and continued when he rented a second room—where he raped C.B. and sold sex with C.B. to four men—on a daily basis for two nights. *See, e.g.*, R-120-6 at 2-3; R-120-8 at 12-23.

And whether Naseeb actually observed or *should've* known of Chappell's trafficking goes to the fourth element (knowledge)—not the second element (participation). To determine whether C.B. has satisfied participation, the Court should assume that knowledge is met. Otherwise, the two elements are conflated, and participation serves no purpose. It's especially important to separate the elements, when it appears Naseeb is trying to backdoor an *actual* knowledge requirement.

### C. Even if more were required, Naseeb supported Chappell's trafficking in other ways.

A jury can find that Naseeb supported Chappell's trafficking in at least three ways other than providing the room where C.B. was trafficked.

*First*, Naseeb supported Chappell's trafficking by assigning all sex offenders, including Chappell, and prostitutes to the same area. *See* R-131 (Vaughn Dep.) at 41-42; R-133 (Johnson Dep.) at 32, 35-36; R-134 (Blackmon Dep.) at 44-45, 51,

57. A jury can find that this supported Chappell's trafficking by reducing the likelihood of detection by ordinary guests who'd be more likely to report suspicious activity. Indeed, the district court recognized that Naseeb had "room assignment practices that **enabled** prostitution." R-164 at 39 (emphasis added).

Naseeb says that its "room assignment practices were in no way intended to facilitate sex trafficking" because sex offenders and prostitutes were grouped "to make 'monitoring' them easier." Appellee's Br. at 28 (citing R-131 at 40-41).

But monitor to what end? Naseeb wants an inference that it was monitoring them to prevent trafficking. A jury, though, can draw a different inference—Naseeb was monitoring them to prevent *detection*. After all, Johnny Johnson, the front desk clerk who came up with the idea, testified that he *didn't* "call the police" when he saw "a known drug dealer selling ... to one of the prostitutes up there." R-133 at 78. Instead, Johnson "would tell Vic [Amin]," and no one else. *Id.* And that's consistent with Vic Amin's message that "[w]e need the money," and "prostitution" is "what [is] bringing the money." V-134 at 22, 46-47.

*Second*, Naseeb supported Chappell's trafficking by directing its housekeepers to clean the rooms of sex offenders and prostitutes only once a week, and Chappell told Naseeb's housekeeping not to clean his second room, which he used to rape C.B. and sell sex with her. *See* R-134 at 57; R-123 (C.B. Dep.) at 72. A jury can find that this supported Chappell's trafficking by reducing the likelihood of de-

tection by housekeepers. Thus, Naseeb also had "housekeeping ... practices that **<u>enabled</u>** prostitution." R-164 at 39 (emphasis added).

Naseeb says that "the only evidence" of "Naseeb's housekeeping" comes from "Joan Blackmon, who stopped working" in "2009." Appellee's Br. at 28.

However, it's not just Blackmon's testimony. C.B. testified that, on June 21 and June 22, 2010,[2] when she was trafficked, housekeeping was instructed not to clean Chappell's second room, and no housekeeper ever did. R-123 at 72. Moreover, Blackmon testified as to *Vic Amin's* practices, *see* R-134 at 29-30, and because he "oversaw the operations" of the hotel during 2010, *see* R-144 at 22, a jury can find that Vic Amin's practices continued even after Blackmon stopped working.

Naseeb also asserts that it's "undisputed that [it] had no right to enter [Chappell's] room without cause." Appellee's Br. at 28 (citing Tallis Dep. at 103).

Yet, Alan Tallis, C.B.'s expert, said only that it "would be a violation of the guest's right to privacy" to "go and randomly knock on the doors of its guests to inquire if there is any illicit behavior going on." R-117 at 103. That's much different from a hotel owner's right to enter a room for housekeeping. Regardless, an expert can't testify about legal rights, and Naseeb provides no law that it lacked the right to enter its own hotel rooms to do housekeeping or investigate trafficking.

---

[2] On pages 14-15 of C.B.'s Principal Brief, we inadvertently said that Chappell rented a second room on "June 21, 2020," when we meant to say June 21, 20*10*. Appellant's Br. at 14-15.

*Third*, Naseeb supported Chappell's trafficking by not reporting prostitution or other suspicious activities. In fact, when one of Naseeb's housekeepers "made eye contact with [C.B.]," while C.B. was standing at the door with a John, the housekeeper "didn't say anything." R-123 at 72-73. A jury can find the housekeeper's willful blindness is consistent with Vic Amin's message that "[w]e need the money," and "prostitution" is "what [is] bringing the money." V-134 at 22, 46-47.

## 2. C.B. satisfied the fourth element—Naseeb's knowledge that the venture engaged in an act violating the TVPRA.

### A. Naseeb should've known Chappell was engaged in trafficking.

In *Red Roof*, this Court said that the knowledge element is satisfied if the defendant has "either actual or constructive knowledge that the venture ... violated the TVPRA." 24 F.4th at 725. "Constructive knowledge" is "that knowledge which 'one using reasonable care or diligence should have.'" *Id.* "This is a negligence standard ...." *Salesforce.com*, 76 F.4th at 555 n.9.

Here, a jury can find that, if Naseeb had used reasonable care, it would've learned that Chappell was engaged in trafficking. Among other things, Naseeb knew that Chappell was a sex offender on probation, *see, e.g.*, R-120 at 15; R-133 at 28-33; that he rented a second room on a nightly basis and told housekeeping not to clean that room, *see, e.g.*, R-123 at 72; R-120-6 at 3; and that trafficking[3] was

---

[3] A jury can easily reject Naseeb's attempt to distinguish between "prostitution" and "sex trafficking." Appellee's Br. at 29. For one thing, as the district court

rampant at the Hilltop Inn, *see, e.g.*, R-120-17 (Tallis Report) at 11-12.

Those were all red flags that should've alerted Naseeb to investigate Chappell. Indeed, as Tallis opined, it was "**The Bright Red Flag**" for Naseeb to allow "**Rental of an Adjoining Room to a Sex Offender**." R-120-17 at 18. "You don't rent an adjoining room to a known sex offender without making appropriate inquiry for the reasons a second room was needed," and "all staff should be alerted to watch for potentially criminal activity." *Id.*

And if Naseeb's staff had been watching for suspicious activity—rather than being directed to "get these girls back up here working"—it would've learned of Chappell's trafficking. R-134 at 46-47. A jury could properly find that Naseeb would've noticed four different Johns and Chappell going in and out of a room with C.B., a fifteen-year-old girl, in a 24-hour period; sex loud enough that it could be heard from outside; and suspicion enough that someone called C.B.'s room to see if she was okay. *See, e.g.*, R-120-17 at 14-15, 18-19.

Naseeb says that there's no "connection between allowing sex offenders on

---

recognized, "each former employee had personally witnessed or had been aware of one or more instances in which a **minor** was being sold for commercial sex." R-164 at 6 (emphasis added); *see, e.g.*, R-133 at 19-23, 75-78 (describing incidents with minors). Because the TVPRA treats prostitution of minors as illegal trafficking, Naseeb's distinction fails for that reason alone. Moreover, Naseeb's staff testified as to incidents involving a "pimp," "men that were selling the prostitutes for sex at the property," "multiple pimps," and "violence" "happening every night." R-131 at 24; R-133 at 14-16, 67-69. Naseeb's purported distinction between prostitution and trafficking fails for that reason as well.

the property and sex trafficking." Appellee's Br. at 27 (citing Tallis Dep. at 76-77). True, Tallis didn't offer an opinion that "the **mere** presence of sex offenders on a hotel property is going to lead to sex trafficking." R-117 at 77 (emphasis added).

But a jury can find that this case involves more than *mere* presence of a sex offender on a hotel property. As Tallis testified, "when they did rent him the second room, that should have raised a red flag," and "somebody should have been on the lookout." R-117 at 113. Moreover, "[p]rostitutes, drug dealers, drug users, housing known sex offenders, 'gentlemens' clubs' in close proximity to the Hotel," *etc.*, further show that there's more than just mere presence of a sex offender at the Hilltop Inn. R-120-17 at 18; *see also* R-117 at 115-16.

Regardless of Tallis's testimony, Vic Amin himself admitted that "a sex offender renting multiple rooms" is "**unusual**" and his "staff made a **mistake**" when it "rented a second room." R-144 at 153, 88-89 (emphasis added). And Johnson testified that the probation officer for the sex offenders would ask him "have you seen them with any kids," "suspicious activity," "anything like that." R-133 at 31. A jury can find that, if the probation officer was asking those questions, then Naseeb reasonably should've also been on the lookout for that activity as well.

Naseeb says that "Tallis's opinion suffers from hindsight bias" because "sex trafficking prevention education and awareness was in its infancy in 2010," and "there were no formal training programs ... at the time." Appellees Br. at 40-41.

A jury can easily reject that claim too. As Tallis has opined, "the hotel industry was aware, for **at least a decade** before C.B.'s trafficking, that human trafficking posed a significant problem," and "**at the time of C.B.'s trafficking**, there were sufficient resources and information in the public domain to train hotel staff to identify the signs of sex trafficking." R-120-17 at 8, 10-11 (emphasis added). Of course, no one needs *formal* training programs know that it's "unusual" and a "mistake" to rent a known sex offender a second room on a nightly basis. R-144 at 153, 88-89. Vic Amin admitted that without any formal training.

Naseeb asserts that, regardless of the evidence, because "'the TVPRA does not impose an affirmative duty to prevent sex trafficking,'" it "was under no obligation to 'watch[] for suspicious activity' [from Chappell]." Appellee's Br. at 41.

But Naseeb incorrectly conflates two different concepts. To be sure, if a defendant has no actual or constructive knowledge the venture is engaged in sex trafficking, it has no affirmative duty to prevent sex trafficking. Yet, if the defendant does have such actual or constructive knowledge, then the defendant may be liable for continuing to participate in the venture.

That does *not* "create a new theory of liability on a business failing to affirmatively prevent sex trafficking." *B.D.G. v. Choice Hotels Int'l, Inc.*, No. 2:22-CV-3202, 2023 WL 5935646, at *4 (S.D. Ohio Sept. 12, 2023). Rather, "[t]he TVPRA assigns liability to those who financially benefit from participation in ven-

tures that they knew, **or should have known**, involved sex trafficking." *Id.* (emphasis added). In other words, "[C.B.] does not seek to create a new theory of liability under the TVPRA, but instead uses [Naseeb's] alleged omissions to act, despite [actual or constructive] knowledge of sex trafficking in their hotels," which is precisely the "civil remedy provided ... by Congress." *Id.*

### B. Awareness that Chappell was specifically trafficking C.B. isn't required to show Naseeb's knowledge.

By the TVPRA's plain language, once a plaintiff provides evidence of "a venture which [the defendant] knew or should have known has engaged in **an act** in violation of this chapter," the plaintiff has satisfied the knowledge element of a civil-beneficiary claim. 18 U.S.C. § 1595 (a) (emphasis added).

Based on that plain language, "the majority of courts that have addressed Section 1595's constructive-knowledge requirement [have held] that the statutory text does not require allegations and ultimately proof that the defendant knew or should have known of the specific victim who has brought the civil action." *Salesforce.com*, 76 F.4th at 558. "To state a claim under Section 1595, a plaintiff needs to allege plausibly that the defendant had constructive knowledge that a venture *generally* has violated Section 1591. Knowledge of the specific victim, let alone knowledge of her identity is not required." *Id.* (cite omitted).

Applying that plain language here, C.B. has satisfied the knowledge element with evidence that Naseeb should've known that Chappell was engaged in *any*

criminal violation of the TVPRA—regardless of whether Naseeb also should've known that Chappell was specifically trafficking C.B. (to be clear, that evidence also exists here, as we'll explain in the next subsection).

Naseeb argues that this Court's legal description of all four elements in *Red Roof* is binding precedent, and there's no basis to "parse out certain elements of this unitary test as 'dicta.'" Appellee's Br. at 35.

But, in *Red Roof*, this Court decided *only* the participation element. "Specifically, the Does have not plausibly alleged that these three hotel franchisors participated in a venture that violated the TVPRA." 21 F.4th at 726. This Court never reached the knowledge element, and nothing about this Court's holding on the participation element depended on its formulation of the knowledge element. What *Red Roof* says about the knowledge element is a description of a legal rule this Court didn't apply and wasn't necessary to apply to the facts. And "[s]tatements in an opinion that are not fitted to the facts, ... or that are not necessary to the decision of an appeal given the facts and circumstances of the case, are dicta." *Beasley v. O'Reilly Auto Parts*, 69 F.4th 744, 757 (11th Cir. 2023).

Naseeb also argues that "an alternative holding" isn't dicta. *United States v. Adamson*, 665 F.2d 649, 656 (5th Cir. 1982); *see* Appellee's Br. at 35-36.

That's only true if the Court actually decides the alternative or additional holding based on the facts. In other words, if *Red Roof* had held that the plaintiffs

hadn't satisfied the participation element *and* held that the plaintiffs hadn't satisfied the knowledge element, then *Red Roof*'s statements about the knowledge element might be binding. *Red Roof* didn't do that though. It never made an alternative holding on whether the plaintiffs had satisfied the knowledge requirement. *See, e.g.*, *Fresh Results, LLC v. ASF Holland, B.V.*, 921 F.3d 1043, 1050 (11th Cir. 2019) (rejecting the "equipoise standard" as dicta, where it had previously been stated as part of the legal rule but never actually applied).

Naseeb further argues that, even if dicta, *Red Roof*'s legal description of the knowledge element is persuasive based on the language of Sections 1589 and 1591—the criminal sections relevant here. *See* Appellee's Br. at 11-13.

Yet, Section 1595 solely defines civil-beneficiary claims, and nothing in its plain language requires that the beneficiary have the *same* knowledge that Sections 1589 and 1591 might require. Quite the opposite, Section 1595 requires only "a venture which [the defendant] knew or should have known has engaged in **an act** in violation of this chapter." 18 U.S.C. § 1595 (a) (emphasis added). That means, so long as the beneficiary knows that the venture has engaged in *any* TVPRA violation—not just a violation as to the plaintiff—the knowledge element is satisfied. To be sure, a plaintiff must still prove that the venture has committed a violation as to the plaintiff—they just don't have to prove the beneficiary's *knowledge* at that level of specificity. The beneficiary's knowledge of any violation suffices.

**C.** **Even if it were required, Naseeb also should've known that Chappell was specifically trafficking C.B.**

Finally, Naseeb also should've known that Chappell was specifically trafficking C.B. In addition to the fact that Naseeb should've known that Chappell was engaged in trafficking generally, *supra* at 15-19; one of Naseeb's housekeepers saw C.B. outside of Chappell's second room with a John, *see* R-123 at 72-73; another John had such loud sex with C.B. that it could be heard in other rooms, *see id.* at 57-60; and C.B.'s presence with Chappell was so suspicious that another guest called to see if C.B. was okay, *see id.* at 69. From that evidence, a jury could find that Naseeb should've known that Chappell was specifically trafficking C.B.

For example, while Naseeb's housekeeper may have only made "eye contact" with C.B. for "a few seconds," R-123 at 72-73, it's for a jury to decide whether—in light of everything else Naseeb's housekeepers knew and were told—that should've given Naseeb notice that C.B. was being trafficked.

C.B. was a fifteen-year-old black girl who had been brought and supervised by a forty-eight-year-old white man. Those circumstances were suspicious enough that "[s]omeone had called [C.B.'s room] ... and asked was [she] okay." R-123 at 69. This caller also asked if C.B. was "with a white man"—*i.e.*, they asked the obvious question: Why was C.B., a fifteen-year-old black girl, with Chappell, a forty-eight-year-old white man at the Hilltop Inn? A jury can find that Naseeb's housekeeper should've asked the same question and investigated further.

A jury could further find that the only reason that Naseeb's housekeeper didn't say anything and literally turned her eyes away is because Vic Amin told Naseeb employees that "[w]e need the money" and "[t]he only way you going to make some money, you got to get these girls back up here working." R-134 at 22, 47. Had Naseeb exercised ordinary care, its housekeeper likely would've further investigated, called the police, and taken other steps to find out that Chappell, who Naseeb knew was a sex offender, was trafficking C.B.

Naseeb responds that, "[u]nder Georgia law, [it] is only bound by the 'knowledge of an officer or agent,'" and, thus, its housekeeper's "knowledge would not be imputable to Naseeb." Appellee's Br. at 32.

But that's not Georgia law. For example, in *Millan v. Residence Inn By Marriott, Inc.*, 487 S.E.2d 431 (Ga. Ct. App. 1997), "[t]he general manager testified that the role of employees in security matters is to be the 'eyes and ears' of the hotel and to inform management of any inappropriate behavior by hotel guests." *Id.* at 433. Based on that testimony, the Court of Appeals held that "[a]ctual notice to the agent constitutes actual, not merely constructive, notice to the principal." *Id.* Indeed, a jury was allowed to impute the knowledge of the employees to the hotel, even though "the employees" "should have reported [certain] behavior to management," but they didn't actually do so because they "had not been adequately trained to report such behavior." *Id.*

The same holding applies here. As Vic Amin expressly agreed, "all of the workers, the front desk workers, the maintenance workers, the housekeeping workers," "all of them" are "responsible for keeping the property safe." R-144 at 45-46. And "all of the workers [are] supposed to act as **the eyes and the ears** of the company for safety purposes." *Id.* at 46 (emphasis added). Thus, because reporting safety issues was part of the job duties of *all* Naseeb employees, including housekeepers, the housekeeper's knowledge and any negligence is imputed to Naseeb.[4]

Regardless, the jury isn't limited to the *actual* awareness of Naseeb's housekeeper. The jury can find that, if Naseeb had exercised ordinary care, "somebody should have been on the lookout," at a minimum, once Chappell asked for a second room on a nightly basis and while instructing Naseeb's housekeepers not to clean the room. R-117 at 113. And if Naseeb had properly responded to that "**Bright Red Flag**," R-120-17 at 18, it wouldn't have needed to rely on a few seconds of its housekeeper's observation (though that's enough) of C.B. Had Naseeb exercised ordinary care, Naseeb would've more fully and properly monitored Chappell—or so a jury is entitled to find. Questions about who should've monitored Chappell, where they would've been located, whether they would've heard noises outside of

---

[4] As for Naseeb's arguments about whether C.B. actually saw one of Naseeb's housekeepers, that's yet another issue for a jury to decide. As C.B. expressly testified, "**I saw a housekeeper.**" R-123 at 72 (emphasis added). "[S]he may have been like Indian," but "[s]he's an older, foreign lady standing there with a housekeeping cart." *Id.* at 73. If Naseeb wants to put up evidence that no one matching that description works for Naseeb, it can present that case to the jury.

the room, *etc.*, are all questions of ordinary care for a jury to decide.

## <u>Conclusion</u>

The Court should reverse the district court's summary judgment in favor of Naseeb. Signature and certificate pages follow.

Appellant-Plaintiff C.B. submits this reply on May 21, 2025.

/s/ **Naveen Ramachandrappa**

Matthew B. Stoddard
Ga. Bar No. 558215
Belle-Anne B. Cooper
Ga. Bar No. 561983
THE STODDARD FIRM
1534 N Decatur Road
Atlanta, GA 30307
Tel: 470-467-2200
Fax: 470-467-1300
*matt@legalhelpga.com*
*ba@legalhelpga.com*

Naveen Ramachandrappa
Ga. Bar No. 422036
Amber D. Greenaway
Ga. Bar No. 401191
BONDURANT, MIXSON &
ELMORE, LLP
1201 W Peachtree St NW
Ste 3900
Atlanta, GA 30309
Tel: 404-881-4100
Fax: 404-881-4111
*ramachandrappa@bmelaw.com*
*greenaway@bmelaw.com*

*Attorneys for Appellant-Plaintiff C.B.*

## Certificate of Compliance

I certify that this brief complies with the type-volume limitation of Rule 32 (a)(7)(B) of the Federal Rules of Appellate Procedure because this brief contains a total of 6,193/6,500 words, excluding the parts of the brief exempted by Rule 32 (f) and Eleventh Circuit Rule 32-4.

I also certify that this brief complies with the typeface requirements of Rule 32 (a)(5) and the typestyle requirements of Rule 32 (a)(6) of the Federal Rules of Appellate Procedure because this brief has been prepared in a proportionally spaced typeface using Microsoft Word with size 14 Times New Roman font.

I've made this certification on May 21, 2025.

**/s/ Naveen Ramachandrappa**

## Certificate of Service

I certify that, on May 21, 2025, I filed **Appellant-Plaintiff C.B.'s Reply Brief** using the ECF system, which will generate notice and serve this document on the following counsel:

*Attorneys for Appellant-Defendant Naseeb Investments, Inc.*

Kori Wagner
Tracy Anne Gilmore
SWIFT, CURRIE, MCGHEE & HIERS, LLP
1420 Peachtree St NE, Ste 800
Atlanta, GA 30309
Tel: 404-888-6191
*kori.wagner@swiftcurrie.com*
*tracy.gilmore@swiftcurrie.com*

Laurie Webb Daniel
Jonathan Spital
WEBB DANIEL FRIEDLANDER LLP
75 14th St NE, Ste 2450
Atlanta, GA 30309
Tel: 404-795-5088
*laurie.daniel@webbdaniel.law*
*jonathan.spital@webbdaniel.law*

*Attorneys for Amicus Curiae International Franchise Association*

Julia E. Fine
JONES DAY
51 Louisiana Ave NW
Washington, DC 20001
Tel: 202-879-3635
*jfine@jonesday.com*

Andrew J. Clopton
JONES DAY
150 W Jefferson, Ste 2100

Detroit, MI 48226
Tel: 313-230-7902
*aclopton@jonesday.com*

**/s/ Naveen Ramachandrappa**