No. 24-13294

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

C.B.,

*Plaintiff-Appellant,*

v.

NASEEB INVESTMENTS, INC.,

*Defendant-Appellee.*

On Appeal from the United States District Court for the
Northern District of Georgia
No. 1:20-cv-4213

## BRIEF OF *AMICUS CURIAE* INTERNATIONAL FRANCHISE ASSOCIATION IN SUPPORT OF APPELLEE AND AFFIRMANCE

Julia E. Fine
JONES DAY
51 Louisiana Ave. NW
Washington, DC 20001
Telephone: 202-879-3635
jfine@jonesday.com

Andrew J. Clopton
JONES DAY
150 W. Jefferson, Suite 2100
Detroit, MI 48226-4438
Telephone: 313-230-7902
aclopton@jonesday.com

*Counsel for* Amicus Curiae *International Franchise Association*

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Fed. R. App. P. 26.1 and 11th Cir. R. 26.1-1, 26.1-2, 26.1-3, International Franchise Association states that it is a non-profit corporation. It has no parent corporation and no publicly held corporation holds a 10% or greater ownership interest in it. The following is a list of the attorneys, persons, partnerships, and corporations that are known to have an actual or potential interest in the outcome of this appeal. International Franchise Association hereby certifies that Appellant's Certificate of Interested Parties and Appellee's Certificates of Interested Parties did not include the following interested persons, but otherwise are complete.

- Clopton, Andrew J.

- Fine, Julia E.

- International Franchise Association

# TABLE OF CONTENTS

Page

CERTIFICATE OF INTERESTED PERSONS AND
CORPORATE DISCLOSURE STATEMENT ...................................... C-1

TABLE OF AUTHORITIES ..................................................................... ii

IDENTITY AND INTEREST OF *AMICUS CURIAE* ............................ 1

STATEMENT OF ISSUE ......................................................................... 2

SUMMARY OF ARGUMENT ................................................................. 3

ARGUMENT ............................................................................................ 5

I.    *RED ROOF INNS* CORRECTLY INTERPRETED "PARTICIPATION IN A
      VENTURE." ..................................................................................... 5

      A.    *Red Roof Inns* Correctly Held that Hotels Do Not Participate
            in Sex-Trafficking Ventures Merely by Renting Rooms to
            Traffickers. ............................................................................. 6

      B.    Hotels Do Not Participate in *Any* Venture
            With Traffickers Merely by Renting Rooms to Them............. 9

II.   THE DEFENDANT MUST HAVE ACTUAL OR CONSTRUCTIVE
      KNOWLEDGE OF THE SPECIFIC TVPRA VIOLATION OF WHICH
      THE PLAINTIFF WAS A VICTIM. ......................................................... 17

III.  THE DEFENDANT MUST "KNOWINGLY BENEFIT[]" ON ACCOUNT OF
      ITS PARTICIPATION IN A VENTURE THAT VIOLATED THE TVPRA ...... 22

IV.   LOWER COURTS' MISREADING OF THE TVPRA'S CIVIL CAUSE OF
      ACTION IS WREAKING HAVOC ON THE HOSPITALITY INDUSTRY......... 25

CONCLUSION ....................................................................................... 27

CERTIFICATE OF COMPLIANCE....................................................... 29

CERTIFICATE OF SERVICE................................................................ 30

## TABLE OF AUTHORITIES

**Cases**          **Page**

*A.B. v. Marriott International, Inc.*,
455 F. Supp. 3d 171 (E.D. Pa. 2020) .....................................25

*A.B. v. Wyndham Hotels & Resorts, Inc.*,
532 F. Supp 3d 1018 (D. Or. 2021).........................................7

*A.D. v. Holistic Health Healing Inc.*,
2023 WL 2242507 (M.D. Fla. Feb. 27, 2023) .......................15

*C.B. v. Naseeb Investments, Inc.*,
748 F. Supp. 3d 1338 (N.D. Ga. 2024) ............................. 10, 22, 24–25

*C.C. v. H.K. Group of Co., Inc.*,
2022 WL 467813 (N.D. Ga. Feb. 9, 2022) ...........................15

*Doe #1 v. Red Roof Inns, Inc.*,
21 F.4th 714 (11th Cir. 2021)...............1, 3–8, 10–11, 16–17, 21–22, 26

*Doe 1 v. Apple Inc.*,
96 F.4th 403 (D.C. Cir. 2024) ...............................7, 9, 11–12

*Doe v. Hotels*,
2024 WL 2955728 (M.D. Fla. June 12, 2024) .....................15

*Encino Motorcars, LLC v. Navarro*,
584 U.S. 79 (2018) .................................................................6

*G.G. v. Salesforce.com, Inc.*,
76 F.4th 544 (7th Cir. 2023)................................. 12–13, 18–19, 21, 27

*G.W. v. Northbrook Industries, Inc.*,
2022 WL 1644923 (N.D. Ga. May 24, 2022) .......................22

*J.C. v. Choice Hotels International, Inc.*,
2020 WL 6318707 (N.D. Cal. Oct. 28, 2020) .......................25

*J.G. v. Northbrook Industries, Inc.*,
  619 F. Supp. 3d 1228 (N.D. Ga. 2022) .................................................. 15

*K.E.C. v. G6 Hospitality, LLC*,
  750 F. Supp. 3d 719 (E.D. Tex. 2024) .................................................. 26

*K.H. v. Riti, Inc.*,
  2024 WL 505063 (11th Cir. Feb. 9, 2024) ...................... 6, 8–11, 17, 26

*L.H. v. Marriott International, Inc.*,
  604 F. Supp. 3d 1346 (S.D. Fla. 2022) .................................................. 7

*M.A. v. Wyndham Hotels & Resorts*,
  425 F. Supp. 3d 959 (S.D. Ohio 2019) ..................................... 15–16, 25

*Ray v. Spirit Airlines, Inc.*,
  836 F.3d 1340 (11th Cir. 2016) ........................................................... 12

*Ricchio v. McLean*,
  853 F.3d 553 (1st Cir. 2017 ......................................................... 8–9, 25

*S.J. v. Choice Hotels International, Inc.*,
  473 F. Supp. 3d 147 (E.D.N.Y. 2020) .................................................. 21

*S.J.C. v. ESA P Portfolio LLC*,
  2024 WL 4808137 (N.D. Ga. Nov. 15, 2024). ....................................... 15

*S.Y. v. Best W. Internationall, Inc.*,
  2021 WL 2315073 (M.D. Fla. June 7, 2021) ........................................ 25

**Statutes**

18 U.S.C. § 1591 ....................................................................... 3–4, 18–19

18 U.S.C. § 1595 ............................................... 3–4, 13, 18–20, 23, 25, 27

**Other Authorities**

Oxford English Dictionary (2d ed. 1989) ...............................................23

# IDENTITY AND INTEREST OF *AMICUS CURIAE*[1]

*Amicus curiae* International Franchise Association ("IFA") is the world's largest membership organization for franchisors, franchisees, and franchise suppliers. IFA seeks to protect and promote franchising by educating lawmakers, the judiciary, and the public, and defending the future of the franchising community.

IFA has a significant interest in this case, which involves the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 ("TVPRA"). Hundreds of TVPRA cases—including one resulting in this Court's landmark decision in *Doe #1 v. Red Roof Inns*, 21 F.4th 714 (11th Cir. 2021)—have arisen in the hospitality-industry context. In these cases, plaintiffs have sued hotel franchisors, franchisees, and other companies, seeking to hold them liable for crimes that actual traffickers allegedly perpetrated behind closed doors in hotel rooms. Given IFA's interest in a proper interpretation of the TVPRA, IFA has participated as an *amicus* in cases like *Red Roof Inns*.

---

[1] Pursuant to Federal Rule of Appellate Procedure 29(a)(4)(E), IFA states that no party's counsel authored this brief in whole or in part; and no party or party's counsel, or any other person (other than IFA, its members, and its counsel), contributed money intended to fund the preparation or submission of this brief.

In this case, which also involves the hospitality industry, Appellant seeks to evade, or outright challenges, various aspects of this Court's decision in *Red Roof Inns*. Appellant claims that a hotel can "participate in a venture" with sex traffickers by merely renting them rooms. C.B. Br. 26. Further, she argues that a hotel need not have constructive knowledge of the particular plaintiff's trafficking. These positions are foreclosed by *Red Roof Inns*.

Make no mistake: IFA and its members vigorously oppose sex trafficking in all of its forms. But Appellant's positions flout the statutory text and would significantly expand liability for hotel franchisors and franchisees alike. IFA thus has a profound interest in ensuring that this Court reaffirms *Red Roof Inns* and continues to adhere to the ordinary meaning of the TVPRA's text.

## STATEMENT OF ISSUE

Under what circumstances may a person be civilly liable under the TVPRA for "knowingly benefit[ing] . . . financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter"?

**SUMMARY OF ARGUMENT**

The TVPRA allows a trafficking victim to bring a civil action against "whoever knowingly benefits . . . financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter." 18 U.S.C. § 1595(a). The underlying criminal allegation in this case is sex trafficking in violation of § 1591(a).

In *Doe #1 v. Red Roof Inns*, this Court addressed the requirements for a participant (also known as "beneficiary") claim. 21 F.4th 714, 719 (11th Cir. 2021). After engaging in careful textual analysis, the Court held that a defendant may be liable as a participant if (1) it "t[ook] part in a common undertaking or enterprise involving risk and potential profit"; (2) "that undertaking or enterprise violated the TVPRA as to the plaintiff"; (3) it "had constructive or actual knowledge that the undertaking or enterprise violated the TVPRA as to the plaintiff"; and (4) it "knowingly benefited" from its participation in that undertaking or enterprise. *Id.* at 726.

The Court focused primarily on the participation-in-a-venture element, holding that a hotel does not participate in a *sex-trafficking*

*venture* simply by renting rooms to those that it should have known were engaged in trafficking. *Id.* at 726–27. Now, Appellant transparently attempts to circumvent this binding precedent, arguing that a hotel's room rentals to suspected traffickers qualify as a *generic* "venture." This is wrong as a textual matter: a hotel does not engage in *any* common undertaking involving risk and potential profit with customers merely by engaging in the lawful act of renting them rooms. These transactions do not suffice to establish a shared enterprise between the parties.

Appellant next attacks *Red Roof Inns* by rejecting its plaintiff-specific knowledge requirement. This challenge is ill-founded, as the relevant statutes both contain venture- and victim-specific language. 18 U.S.C. §§ 1591(a), 1595(a). Plus, the "act in violation of this chapter" of which the defendant must be aware must be the same as the "violation of this chapter" of which the plaintiff is a victim. *Id.* § 1595(a).

This appeal also provides this Court with the opportunity to expound upon the statute's "knowingly benefit[]" element. The district court, like most lower courts, held that room rental revenue qualifies as a "knowing[] benefit[]." This ignores that a defendant's knowing benefit must be *on account of* its participation in a venture.

Before *Red Roof Inns*, the upshot under some lower-court caselaw in this circuit was that a hotel's (or franchisor's or affiliate's) liability effectively turned on whether the hotel should have known that a criminal trafficked a victim in one of its rooms. That understanding reads critical terms such as venture and participation out of the TVPRA and would transform it into a federal premises-liability statute. *Red Roof Inns* correctly rejected this erroneous interpretation. This Court should therefore rebuff Appellant's efforts to gut *Red Roof Inns*.

## ARGUMENT

### I. *RED ROOF INNS* CORRECTLY INTERPRETED "PARTICIPATION IN A VENTURE."

In *Red Roof Inns*, after defining "participation in a venture," this Court held that hotel companies do not participate in sex-trafficking ventures merely by renting rooms to traffickers. 21 F.4th at 726–27. Appellant seeks to evade this ruling by arguing that hotels can participate in *non-sex-trafficking* (*i.e.*, commercial) ventures through their "room rentals to [traffickers]." C.B. Br. 24, 26. But an Eleventh Circuit panel has already rejected an attempt to divine a "business" venture premised on room rentals to sex traffickers. *K.H. v. Riti, Inc.*, 2024 WL 505063, at *2–3 & n.5 (11th Cir. Feb. 9, 2024) (citing *Red Roof*

*Inns*, 21 F.4th at 726–27); *id.*, 2023 WL 8433940, at *20 (appellant's reply brief). With good reason: a hotel does not take part in *any* common undertaking with traffickers merely by renting them rooms. Room rentals are mere commercial transactions that, by themselves, do not signify that the parties shared *any* common purpose. This Court should reaffirm *Red Roof Inns*' analysis of this element.

### A.  *Red Roof Inns* Correctly Held that Hotels Do Not Participate in Sex-Trafficking Ventures Merely by Renting Rooms to Traffickers.

When Congress does not provide a definition for a statutory phrase, courts must "give the [phrase] its ordinary meaning." *Encino Motorcars, LLC v. Navarro*, 584 U.S. 79, 85 (2018). In *Red Roof Inns*, this Court did just that, interpreting "participation in a venture" "according to its plain meaning." 21 F.4th at 724. Consulting several dictionaries, the Court explained that "[t]he ordinary meaning of 'venture' is an undertaking or enterprise involving risk and potential profit." *Id.* And "[t]he ordinary meaning of participate or participation is to take part in or share with others in common or in an association." *Id.* at 725. "Participation in a venture," therefore, means to take "part in a common undertaking or enterprise involving risk and potential profit." *Id.* The D.C. Circuit,

construing the same phrase, arrived at a materially identical definition. *Doe 1 v. Apple Inc.*, 96 F.4th 403, 415 (D.C. Cir. 2024) ("[P]articipation in a venture" means "taking part or sharing in an enterprise or undertaking that involves danger, uncertainty, or risk, and potential gain.").

Applying this definition, this Court rejected the plaintiffs' theory that hotel franchisors participated in "sex trafficking ventures" by renting rooms to individuals whom they should have known were engaged in trafficking. *Red Roof Inns*, 21 F.4th at 726–27. Neither their "financial[] benefit[] from renting hotel rooms" nor their alleged "observ[ation]" of sex trafficking demonstrated that the franchisors "took part in the common undertaking of *sex trafficking*." *Id.*; *see also id.* at 727 ("[O]bserving [sex trafficking] is not the same as participating in it.").[2] In *K.H.*, a panel of this Court likewise concluded that hotel franchisees who directly rented rooms to sex traffickers did not thereby

---

[2] Indeed, any other outcome would be in tension with the settled understanding that "the TVPRA does not impose an affirmative duty to police and prevent sex trafficking." *L.H. v. Marriott Int'l, Inc.*, 604 F. Supp. 3d 1346, 1361 (S.D. Fla. 2022) (quoting *A.B. v. Wyndham Hotels & Resorts, Inc.*, 532 F. Supp 3d 1018, 1027 (D. Or. 2021)) (collecting cases).

participate in sex-trafficking ventures with them. 2024 WL 505063, at *3–4.

The deficiency of these types of allegations is clear when contrasted with those in *Ricchio v. McLean*, 853 F.3d 553 (1st Cir. 2017), which this Court pointed to as the kind that would "establish a hotel operator's participation in a venture with a sex trafficker." *Red Roof Inns*, 21 F.4th at 725–26; *see also K.H.*, 2024 WL 505063, at *3–4. As the *K.H.* panel explained—and contrary to Appellant's contention—those allegations "were far stronger than just an operator renting rooms to a trafficker." 2024 WL 505063, at *3; *cf.* C.B. Br. 27–28. In *Ricchio*, the plaintiff's trafficker "had prior commercial dealings with the [motel operators], which the parties wished to reinstate for profit," as evidenced by their "exchanging high-fives in the motel's parking lot while speaking about 'getting this thing going again.'" 853 F.3d at 555. **The "gainful business that [they] spoke of had been and would be" using a "sex slave" to "supply[] sexual gratification."** *Id.* **(emphasis added).** The operators would then "visit[] rented quarters to demand further payment," all while "nonchalantly ignor[ing] [the plaintiff's] plea for help in escaping" and watching the trafficker "grab [the plaintiff], kick her,

and force her back toward the rented quarters." *Id.* Under these circumstances, it was "reasonably inferable that the motel operator and trafficker were working together 'to force [plaintiff] to serve their business objective.'" *K.H.*, 2024 WL 505063, at *3 (quoting *Ricchio*, 853 F.3d at 555). After all, they "acknowledged the illegal purpose of the relationship" and "shared in the benefits and the risk." *Apple*, 96 F.4th at 415 (discussing *Ricchio*).

Room rentals on their own, by contrast, do not provide a basis to infer that the hotel and the trafficker shared any purpose, let alone sex trafficking. Thus, as this Court recognized, they cannot establish a common undertaking of sex trafficking.

## B. Hotels Do Not Participate in *Any* Venture With Traffickers Merely by Renting Rooms to Them.

**1.** Appellant claims that a hotel's room rentals to traffickers "satisfy the participation element." C.B. Br. 24. But her attempts to end-run *Red Roof Inns* by simply removing the "sex-trafficking venture" label are unsuccessful. When a hotel rents a room to a guest, that is a commercial transaction, not a common undertaking involving risk and potential profit.

To start, Appellant attempts to distinguish *Red Roof Inns* on the basis that the *Red Roof Inns* defendants were hotel franchisors, while the hotel in this case is a direct operator. *Id.* at 27. But that attempt fails. The *Red Roof Inns* defendants allegedly "owned, managed, supervised, operated, oversaw, controlled the operation of, and/or were inextricably connected to the renting of rooms" at their respective hotels. 21 F.4th at 726. As the *K.H.* panel recognized, "[t]he difference between physically renting the rooms (based on the facts of this case) and 'controll[ing] the operation of' renting the rooms (based on the facts of *Red Roof*) is immaterial." 2024 WL 505063, at *3. Room rentals, direct or indirect, do not suffice to prove a common undertaking.

Appellant primarily argues that, unlike in *Red Roof Inns*, she does not advance a *sex-trafficking* venture theory. C.B. Br. 26, 29. Rather, the "rental of hotel rooms, by itself, is a venture." *Id.* at 26. The room rentals involve risk, she says, because her trafficker could have damaged the rooms. *Id.* at 24. And they involve profit because of "the rent money" and "the potential for prostitution," *id.*—although there is no evidence that her trafficker shared any of his profits with the hotel. *See C.B. v. Naseeb Invest., Inc.*, 748 F. Supp. 3d 1338, 1346–50 (N.D. Ga. 2024).

But in *K.H.*, the appellant also attempted to evade *Red Roof Inns* by casting the hotel's repeated room rentals to traffickers as something other than a "sex-trafficking venture"—*i.e.*, a "business relationship" or a "continuous business relationship." *E.g.*, *K.H.*, 2023 WL 8433940, at *20 (appellant's reply brief). The panel rejected that attempt, finding that she too had alleged a sex-trafficking venture yet failed to establish one. *Id.*, 2024 WL 505063, at *2–3 & n.5 (citing *Red Roof Inns*, 21 F.4th at 726–27). In short, *Red Roof Inns* forecloses Appellant's theory.

Even apart from *Red Roof Inns*, Appellant fails to show how the room rentals establish a *common undertaking* between the hotel and the trafficker. Nor could she. Room rentals are simply "arms-length" commercial "transaction[s]": the hotel rents rooms in exchange for the guest's payment. *See Apple*, 96 F.4th at 415. The D.C. Circuit rejected a similar venture theory, holding that technology companies did not participate in a venture with their cobalt suppliers. *Id.* The parties were "on opposite sides of an arms-length transaction"—the suppliers "sell cobalt" while the companies "buy cobalt." *Id.* The companies did not "own [an] interest in their suppliers" or "share in [their] profits and risks." *Id.* The transaction, standing alone, did not provide "a factual basis to infer

a common purpose," meaning that the plaintiffs failed to establish a "shared enterprise" between the parties. *Id.* at 415–16. So although the cobalt suppliers did allegedly engage in forced labor, the technology companies did not participate in a venture with these suppliers under § 1595(a) merely by purchasing cobalt from them. *Id.*; *see also Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1352–54 (11th Cir. 2016) (holding that the plaintiffs failed to plausibly allege the existence of a RICO "enterprise" because "Spirit's alleged misuse of a software platform does not suggest that the maker of the platform knew anything of, let alone shared, Spirit's allegedly fraudulent purpose").

So too here. A hotel's room rentals do not give rise to an inference of *any* shared purpose between the hotel and its guest—whether or not a trafficker. The hotel accepts the payment for the room, at the normal rate, just as it would for any other guest, and provides the same services as it would to any guest. *See G.G. v. Salesforce.com, Inc.*, 76 F.4th 544, 562 (7th Cir. 2023) ("'[P]articipation' requires more than providing off-the-shelf . . . products or services[.]"). "[S]omething more than engaging in [this] ordinary buyer-seller transaction is required to establish 'participation.'" *Apple*, 96 F.4th at 415; *see also id.* at 416 ("[P]urchasing

a commodity, without more, is not 'participation in a venture' with the seller.").

To be sure, the Seventh Circuit has held that a venture can involve a *commercial* purpose with another entity, like "running or expanding a business," and the defendant can take actions to fulfill that venture's shared purpose. *G.G.*, 76 F.4th at 554. In *G.G.*, the plaintiff alleged that Salesforce delivered personalized tools to "facilitate[] the growth" of Backpage, a business that she said trafficked her and many others. *Id.* at 549, 560. For instance, Salesforce supplied Backpage with "targeted solutions addressed to the needs of [its] business," assessed its "operational needs," and provided "active, ongoing support" "tailored" to those needs. *Id.* at 560. The Seventh Circuit thus held that Salesforce, though it did not directly participate in Backpage's sex trafficking, took part in a "*commercial* venture[] with Backpage to grow its business." *Id.* at 562 (emphasis added). And that venture "engaged in an act in violation of [the TVPRA]," § 1595(a), because Backpage's business "engaged in uncounted acts in violation of Section 1591," *G.G.*, 76 F.4th at 564; *see also id.* at 559 ("[T]he venture [] must violate Section 1591[.])".

But this case looks nothing like *G.G.*  Appellant does not show that the hotel provided any personalized support or targeted solutions to grow her trafficker's business (whether a sex-trafficking business or any other).  That is, there is no evidence that the hotel took part in a common enterprise involving risk and potential profit with the trafficker.  And in the hospitality context, it is difficult to imagine how a hotel entity could ever participate in a venture with an individual trafficker, outside of an extreme fact pattern like the one at issue in *Ricchio*.

Indeed, the implications of adopting Appellants' transactions-equal-ventures theory are staggering.  If hotels participate in ventures with traffickers simply by renting them rooms, the same goes for other companies who sell goods or services to them.  What about gas stations that sell gas to traffickers to enable their travels?  Or grocery stores that sell food to them that in turn is provided to their victims?  Or utility companies that sell electricity that power their trafficking houses?  All of these companies and more would face potential liability under § 1595(a) if they even "should have known" that their counterparties were engaged in trafficking.

**2.** In the aftermath of *Red Roof Inns*, most district courts in the Eleventh Circuit, including the one below, have followed that decision and thus gotten it right. *See, e.g.*, *C.C. v. H.K. Grp. of Co., Inc.*, 2022 WL 467813, at *4 (N.D. Ga. Feb. 9, 2022); *A.D. v. Holistic Health Healing Inc.*, 2023 WL 2242507, at *3–4 (M.D. Fla. Feb. 27, 2023); *S.J.C. v. ESA P Portfolio LLC*, 2024 WL 4808137, at *5 (N.D. Ga. Nov. 15, 2024). Yet a few have erroneously held that hotels can participate in a venture with traffickers simply through room rentals. Though they accept that "participation in a venture" requires a common undertaking involving risk and potential profit, they hold that a plaintiff can satisfy this standard by "show[ing] a 'continuous business relationship' between a defendant hotel and a sex trafficker where the defendant[] rented rooms to people it knew or should have known were engaged in sex trafficking." *J.G. v. Northbrook Indus., Inc.*, 619 F. Supp. 3d 1228, 1235 (N.D. Ga. 2022); *see, e.g.*, *Doe v. Hotels*, 2024 WL 2955728, at *7 (M.D. Fla. June 12, 2024).

This "continuous business relationship" language traces back to an early hotel TVPRA case, *M.A. v. Wyndham Hotels & Resorts*, 425 F. Supp. 3d 959 (S.D. Ohio 2019). There, in assessing whether the hotels

15

themselves could be liable under § 1595(a), the court never considered the ordinary meaning of "participation in a venture."  Instead, the court deemed it sufficient for a plaintiff to allege "a continuous business relationship between the trafficker and the hotels such that it would appear that the trafficker and the hotels have established a pattern of conduct or could be said to have a tacit agreement."  *Id.* at 970.  And the court concluded that the hotels "participated in a venture" simply by "repeatedly rent[ing] rooms" to the trafficker.  *Id.* at 970–71.

The *M.A.* court's fundamental error is that, by failing to identify and follow the ordinary meaning of "participation in a venture," the court never asked whether the hotels and the trafficker took part in a *common* undertaking or enterprise.  Had the court done so, the result arguably would have been different because the plaintiff in *M.A.* alleged the hotels' participation in a *sex-trafficking* venture, *id.* at 971—yet there was no serious claim that the hotels themselves "took part in the common undertaking of sex trafficking with . . . sex traffickers," *Red Roof Inns*, 21 F.4th at 726.  But even if the plaintiff had not labeled the alleged venture a sex-trafficking venture, the result should still have been different had the court asked the right question.  As explained above, a room rental—

16

an ordinary transaction between a hotel and its guest—does not establish that the parties took part in *any* common undertaking or shared *any* common purpose.

Accordingly, the *K.H.* panel correctly repudiated the "continuous business relationship" standard, explaining that "this test is not set out in the statute or described in our caselaw." *K.H.*, 2024 WL 505063, at *2 n.5.[3] This Court should likewise firmly reject this improper, atextual gloss on *Red Roof Inns*' interpretation of "participation in a venture."

## II. THE DEFENDANT MUST HAVE ACTUAL OR CONSTRUCTIVE KNOWLEDGE OF THE SPECIFIC TVPRA VIOLATION OF WHICH THE PLAINTIFF WAS A VICTIM.

In *Red Roof Inns*, this Court held that "the defendant must have either actual or constructive knowledge that the venture—in which it voluntarily participated and from which it knowingly benefited— violated the TVPRA *as to the plaintiff*." 21 F.4th at 725 (emphasis added). Although *Red Roof Inns* is binding on this point and others, Appellant nevertheless challenges this plaintiff-specific knowledge requirement. Citing the Seventh Circuit's decision in *G.G.*, Appellant

---

[3] Although this Court did not cite *M.A.* in either *Red Roof Inns* or *K.H.*, the briefs in both cases discussed the *M.A.* standard at length. *See, e.g.*, IFA Br. 16–21, *Red Roof Inns*, No. 20-11764, ECF No. 58.

argues instead that the defendant need only have "constructive knowledge that a venture *generally* has violated Section 1591." C.B. Br. 35 (quoting *G.G.*, 76 F.4th at 558). But *Red Roof Inns*' plaintiff-specific knowledge requirement is compelled by the text. And in any event, even the *G.G.* majority would agree that plaintiff-specific knowledge is required in this particular case. *See* 76 F.4th at 557.

**1.** Citing *G.G.*, Appellant argues that the TVPRA has no plaintiff-specific knowledge requirement at all. That is incorrect. Section 1595(a) requires that a defendant "knew or should have known [that a venture] has engaged in an act in violation of [§ 1591(a)]." 18 U.S.C. § 1595(a). Section 1591, in turn, criminalizes the trafficking of "a person." *Id.* § 1591(a). In *G.G.*, the Seventh Circuit held that there was no plaintiff-specific knowledge requirement in a case involving a sex-trafficking website with thousands of victims. 76 F.4th at 558. In doing so, the majority focused on the words "*an act* in violation of [§ 1591(a)]," noting that "an act" need not be "the act" that harmed the plaintiff and, in any event, the defendant need not know of the plaintiff's identity. *Id.* at 556–57.

But as the dissent in *G.G.* explained, § 1591's "use of the terms 'a person' and 'the person' is victim-specific, meaning an individual is not guilty of the crime unless the government can prove that his actions were tied to a specific victim." *Id.* at 568–69 (Kirsch, J., dissenting). And "because § 1595 requires constructive knowledge of a § 1591 violation and a § 1591 violation requires knowledge of a specific victim, damages suits [under § 1595(a)] are available only when a plaintiff plausibly alleges that the defendant should have known that the venture engaged in her particular sex trafficking." *Id.* This straightforward reasoning is bolstered by other contextual clues in § 1595.

*First*, § 1595(a) principally gives a civil cause of action to "a victim of a violation of this chapter . . . against *the* perpetrator." (Emphasis added). The logical interpretation of "*the* perpetrator" is that it refers to the perpetrator of *the* "violation of this chapter" of which the plaintiff was a victim. And again, that would require the plaintiff to establish, in a suit against the perpetrator, that "his actions were tied to a specific victim"—*i.e.*, the plaintiff. *G.G.*, 76 F.4th at 568–69 (Kirsch, J., dissenting).

This matters because Congress added "participant" (*i.e.*, non-perpetrator) liability *in a parenthetical* following the grant of a cause of action against the perpetrator of the violation. *See* 18 U.S.C. § 1595(a) ("An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits . . . from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter)[.]"). The natural inference is that the "violation" referenced *inside* the parenthetical is the same specific violation referenced *outside* the parenthetical—*i.e.*, the violation the perpetrator committed and of which the plaintiff was a victim. Accordingly, the constructive-knowledge requirement turns on knowledge of that specific violation.

*Second*, § 1595's remaining subsections reinforce this focus. Section 1595(b)(1) requires any civil action to be stayed "during the pendency of any criminal action arising out of *the same occurrence in which the claimant is the victim*." (Emphasis added.) Similarly, § 1595(c)(2) establishes a statute of limitations based on the plaintiff's age at "the time of *the alleged offense*." (Emphasis added.) In each instance, § 1595 focuses on the specific TVPRA crime committed against the plaintiff. The

upshot is that the § 1595(a) parenthetical at issue here is bookended by provisions that focus on a specific plaintiff's alleged trafficking. It thus necessarily follows that § 1595(a)'s parenthetical likewise turns on constructive knowledge *of the specific TVPRA violation that involved the plaintiff's trafficking.*

*Red Roof Inns* thus got it right—knowledge must be "as to the plaintiff." 21 F.4th at 725. That requirement defeats the claim here.

**2.** In any event, the claim in this case fails even under the *G.G.* framework. The Seventh Circuit agrees that the defendant must "have constructive knowledge of a non-generalized and non-sporadic—a 'particular'—venture." *G.G.*, 76 F.4th at 557 (quoting *S.J. v. Choice Hotels Int'l, Inc.*, 473 F. Supp. 3d 147, 154 (E.D.N.Y. 2020)). And when that venture "involve[s] the trafficking of only one victim," "knowledge of the specific victim goes hand-in-glove with knowledge of the 'venture.'" *Id.* at 557. In *G.G.*, the venture in question engaged in large-scale, internet-based trafficking; in that case, the court held that the defendant need not necessarily have knowledge of one victim among the thousands. *Id.* But hotel sex-trafficking cases typically involve one victim, not thousands. In that situation, the hotel must have constructive

knowledge that its supposed venture with the victim's trafficker engaged in a TVPRA violation—which necessarily requires knowing about the victim of that venture. *See Red Roof Inns*, 21 F.4th at 725.

So too here. There is no evidence that Appellant's trafficker ran a large-scale trafficking operation at the hotel in question. *See C.B.*, 748 F. Supp. 3d at 1346–50. Even under the Seventh Circuit's rule, then, Appellant must show that the hotel should have known of *her* trafficking, which the district court held she could not do. *Id.* at 1362.

## III.   THE DEFENDANT MUST "KNOWINGLY BENEFIT[]" ON ACCOUNT OF ITS PARTICIPATION IN A VENTURE THAT VIOLATED THE TVPRA.

*Red Roof Inns* explains that, to satisfy the "knowingly benefits" element, a plaintiff must establish that "the defendant knew it was receiving some value from participating in the alleged venture." 21 F.4th at 724. The district court, following the lead of most lower courts, held that "the revenue from the room rental constitutes a financial benefit sufficient to meet the 'knowingly benefited' standard." *C.B.*, 748 F. Supp. 3d at 1352 (quoting *G.W. v. Northbrook Indus., Inc.*, 2022 WL 1644923, at *2 (N.D. Ga. May 24, 2022) (collecting cases)).

But these courts fail to appreciate that this element does not appear in the statute in the abstract. Instead, the provision requires the

defendant to "knowingly benefit[] . . . *from participation in a venture* which that person knew or should have known has engaged in an act in violation of this chapter." 18 U.S.C. § 1595(a) (emphasis added). The defendant's "knowing benefit" is explicitly tied to its participation in a venture. Indeed, the word "from" connotes a causal relationship. *See From* (def. 14), Oxford English Dictionary (2d ed. 1989) ("[d]enoting ground, reason, cause, or motive: [b]ecause of, on account of, owing to, as a result of, through"). If the rule were otherwise, it would read out the words "from participation in a venture" from the statute. The statute would instead have to say that the defendant "knew or should have known about an act in violation of this chapter, and knowingly benefited therefrom."

Thus, a defendant must knowingly benefit *on account of* its participation in an alleged venture. A hotel's room rental revenue generally results not from a common undertaking with the plaintiff's trafficker, but rather from at most an arms-length commercial transaction. Such is the case here.

This Court may affirm the district court's judgment without needing to reach this element. If the Court nevertheless wishes to give

full treatment to the statute, IFA urges the Court to correct the lower courts' misconception of this element.

*　　*　　*

The district court, in granting summary judgment, expressed concern that this Court's "construction of the statute is far more limiting than its language requires." *C.B.*, 748 F. Supp. 3d at 1363. Specifically, the court worried that "nothing less than some form of evidence of a defendant's actual knowledge of a plaintiff's presence on the property, plus some overt act to establish the defendant's 'participation'—such as employees serving as lookouts—would be sufficient to survive summary judgment." *Id.* at 1362–63. Respectfully, the district court's concerns are misplaced.

*First*, the plain meaning of "participation" *does* require the defendant to take some "act[ion]" to further the purpose of the shared undertaking. *See id.* at 1362. "Participation" demands more than arms-length commercial transactions like room rentals. This Court must follow the text that Congress has written, just as it did in *Red Roof Inns*.

*Second*, as to knowledge, it is hard to imagine how a hotel should have known that a plaintiff was being *trafficked* on its property without

"actual[ly] know[ing]" of the plaintiff's "presence." *See id.* And the statute does not impose a duty on hotels to police or prevent trafficking.

More fundamentally, § 1595(a) is not about hotels. It is a statute that prohibits anyone from knowingly benefitting from participation in a venture that violates the TVPRA with actual or constructive knowledge of that violation. It thus *should* be the truly rare case that actually makes out a claim against a hotel. *Cf. Ricchio*, 853 F.3d at 555.

## IV. LOWER COURTS' MISREADING OF THE TVPRA'S CIVIL CAUSE OF ACTION IS WREAKING HAVOC ON THE HOSPITALITY INDUSTRY.

Plaintiffs in this case and others continue to urge a standard that effectively imposes strict liability on the hospitality industry. Before *Red Roof Inns*, lower courts (in this circuit and others) that followed *M.A.*'s flawed framework held that merely renting rooms to people that hotels should have known were engaged in sex trafficking suffices to demonstrate that the hotels participated in a venture under the TVPRA. *See, e.g., S.Y. v. Best W. Int'l, Inc.*, 2021 WL 2315073, at *4–5 (M.D. Fla. June 7, 2021); *J.C. v. Choice Hotels Int'l, Inc.*, 2020 WL 6318707, at *7 (N.D. Cal. Oct. 28, 2020); *A.B. v. Marriott Int'l, Inc.*, 455 F. Supp. 3d 171, 192 (E.D. Pa. 2020) (all citing *M.A.*). This standard posed (and, in other circuits, continues to pose) a severe threat to hotel franchisors and

franchisees alike. Indeed, the *M.A.* court has denied every single motion to dismiss a § 1595(a) participant claim across at least 45 hotel cases. Another court in the Eastern District of Texas that follows the same standard has done the same across at least 30 hotel cases as well. *See, e.g.*, *K.E.C. v. G6 Hosp., LLC*, 750 F. Supp. 3d 719, 738 (E.D. Tex. 2024).

This Court correctly rejected the *M.A.* standard in *Red Roof Inns* and *K.H. K.H.*, 2024 WL 505063, at *2–3 & n.5 (citing *Red Roof Inns*, 21 F.4th at 726–27). And it should not embrace it now. In all of the hospitality-industry cases, a hotel receives a rental fee (which *M.A.* and its progeny deem to qualify as a knowing benefit) when it allegedly rents a room to a criminal who is trafficking a victim (which these cases say qualifies as participation in a venture). All that matters, therefore, is whether the hotel should have known that the criminal was trafficking the victim. This reads fundamental language out of § 1595(a), imposes a non-existent duty on hotels to police and prevent sex trafficking, and thus significantly expands the scope of liability.

This problem is made even worse without a plaintiff-specific knowledge requirement. As the dissent in *G.G.* explained, under this approach, § 1595(a) liability would extend to "nearly every company and

individual" who happens to engage in a business transaction with a criminal trafficker, 76 F.4th at 568 (Kirsch, J., dissenting), based only on the claim that they "had constructive knowledge that a venture *generally* has violated Section 1591" as to any person, at any time, *id.* at 558.

If that were the case, hotel franchisees and franchisors could be held liable for *every* criminal act of traffickers who happen to rent hotel rooms. Not just that, but franchisees and franchisors (who do not run day-to-day operations) also theoretically could be liable without knowledge (constructive or actual) about the TVPRA violation involving the plaintiff's alleged trafficking. That is untenable. The alleged violation that permits a plaintiff to sue under § 1595(a) as "a victim of a violation of this chapter" *must be* the same violation of which the defendant must have been constructively aware.

In essence, Appellant seeks what amounts to a strict-liability regime for TVPRA hospitality defendants. This Court correctly disavowed that interpretation in *Red Roof Inns*, and should continue to do so here.

## CONCLUSION

For the foregoing reasons, IFA urges this Court to affirm.

Respectfully submitted,

*/s/ Andrew J. Clopton*

Julia E. Fine                                         Andrew J. Clopton
JONES DAY                                          JONES DAY
51 Louisiana Ave. NW                         150 W. Jefferson, Suite 2100
Washington, DC 20001                       Detroit, MI 48226-4438
Telephone: 202-879-3635                   Telephone: 313-230-7902
jfine@jonesday.com                             aclopton@jonesday.com

*Counsel for* Amicus Curiae *International Franchise Association*

**CERTIFICATE OF COMPLIANCE**

I hereby certify that this brief complies with (1) the type-volume limitation of Federal Rule of Appellate Procedure 29(a)(5) because, as calculated by Microsoft Word 2024, it contains 5,549 words, excluding the items exempted by Federal Rule of Appellate Procedure 32(f); and (2) the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6), because it has been prepared in a proportionally spaced typeface using Microsoft Word 2024 in a 14-point Century Schoolbook font.

Dated: April 7, 2025

*/s/ Andrew J. Clopton*
Andrew J. Clopton

*Counsel for Amicus Curiae*

## CERTIFICATE OF SERVICE

I hereby certify that on April 7, 2025, I electronically filed the foregoing with the Clerk of Court for the United States Court of Appeals for the Eleventh Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Dated: April 7, 2025
*/s/ Andrew J. Clopton*
Andrew J. Clopton

*Counsel for Amicus Curiae*