No. 24-13294

# United States Court of Appeals
# for the Eleventh Circuit

**C.B.**,

*Plaintiff–Appellant,*

v.

**NASEEB INVESTMENTS, INC.**,

*Defendant–Appellee.*

*On Appeal from the United States District Court
for the Northern District of Georgia
No. 1-20-cv-4213*

## MOTION FOR LEAVE TO FILE BRIEF OF AMICI CURIAE A.G. AND G.W. IN SUPPORT OF C.B.

David H. Bouchard          Patrick J. McDonough
Oto U. Ekpo                Jonathan S. Tonge
FINCH MCCRANIE LLP         Rory A. Weeks
229 Peachtree St. NE,      ANDERSEN, TATE & CARR, P.C.
Suite 2500                 1960 Satellite Blvd., Suite 4000
Atlanta, GA 30303          Duluth, GA 30097
(404) 658-9070             (770) 822-0900

July 28, 2025              *Counsel for Amici Curiae*

No. 24-13294
*C.B. v. Naseeb Investments, Inc.*

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

These people and entities have an interest in this case's outcome:

- A.G. – Appellant in *A.G. v. Northbrook Industries, Inc.* (Appeal No. 25-10816)

- Amin, Nalini – Joint Owner of Naseeb Investments, Inc.

- Amin, Vic – Joint Owner of Naseeb Investments, Inc.

- Andersen, Tate & Carr, P.C. – Law firm representing A.G. & G.W.

- Atkins, Sabrina Lynn – Counsel for Naseeb Investments, Inc.

- Baker, Donelson, Bearman, Caldwell & Berkowitz, P.C. – Counsel for Movant Choice Hotels International Inc.

- Beranek, Lori M. – Counsel for Movants U.S. Attorney's Office and Federal Bureau of Investigation

- Bondurant, Mixson & Elmore LLP – Counsel for C.B.

- Bouchard, David – Counsel for A.G. & G.W.

- Boulee, J.P. – United States District Court Judge

- C.B. – Appellant

- Cartiga Consumer Funding, LLC – Funding for C.B.

- Choice Hotels International, Inc. – Movant in District Court

- Colette, Hervey Joseph – Counsel for Movant View Point Health

- Clopton, Andrew – Counsel for International Franchise Association

- Cooper, Belle-Anne – Counsel for C.B.

No. 24-13294

*C.B. v. Naseeb Investments, Inc.*

- Ekpo, Oto – Counsel for A.G. & G.W.

- Federal Bureau of Investigation – Movant in District Court

- Finch McCranie, LLP – Law firm representing A.G. & G.W.

- Fine, Julie – Counsel for International Franchise Association

- Fireman's Fund – Insurer for Northbrook Industries, Inc.

- Freeman Mathis & Gary, LLP – Counsel for Movant View Point Health

- G.W. – Appellant in *G.W. v. Northbrook Industries, Inc.* (Appeal No. 25-10829)

- Galloway, Sara – Counsel for Northbrook Industries, Inc.

- Gilmore, Tracy Anne – Counsel for Naseeb Investments, Inc.

- Greenaway, Amber – Counsel for C.B.

- Harris, Roger E. – Counsel for Naseeb Investments, Inc.

- International Franchise Association

- Jones Day – Law firm for International Franchise Association

- Knisely, Gabriel – Counsel for A.G. & G.W.

- Lee, Christopher Sue – Counsel for Movant View Point Health

- Lewis Brisbois Bisgaard Smith, LLP – Law firm representing Northbrook Industries, Inc.

- McDonough, Patrick – Counsel for A.G. & G.W.

- Mobley, Cameron – Counsel for Northbrook Industries, Inc.

No. 24-13294
*C.B. v. Naseeb Investments, Inc.*

- Naseeb Investments, Inc. d/b/a The Hilltop Inn a/k/a EconoLodge – Appellee

- Northbrook Industries, Inc. – Appellee in A.G. v. Northbrook Industries, Inc. and G.W. v. Northbrook Industries, Inc.

- Patel, Atul – Joint Owner of Naseeb Investments, Inc.

- Patel, George – Joint Owner of Naseeb Investments, Inc.

- Ramachandrappa, Naveen – Counsel for C.B.

- Stoddard, Matthew – Counsel for C.B.

- Swift, Currie, McGhee & Hiers, LLP – Counsel for Naseeb Investments, Inc.

- The Stoddard Firm – Counsel for C.B.

- Tonge, Jonathan – Counsel for A.G. & G.W.

- Totenberg, Amy – United States District Court Judge

- Tropper, Joshua – Counsel for Movant Choice Hotels International Inc.

- Turner, Sara Marie – Counsel for Movant Choice Hotels International Inc.

- United States Attorney's Office – Movant in District Court

- View Point Health – Movant in District Court

- Wagner, Kori – Counsel for Naseeb Investments, Inc.

- Ward, Alice – Counsel for Northbrook Industries, Inc.

- Weeks, Rory – Counsel for A.G. & G.W.

- WLG Atlanta, LLC – Counsel for C.B.

No. 24-13294
*C.B. v. Naseeb Investments, Inc.*

- Zabresky, Janelle – Counsel for C.B.

Choice Hotels International, Inc. (CCH) is a publicly traded company that may have an interest in the outcome of this case or appeal.

## MOTION FOR LEAVE TO FILE BRIEF OF AMICI CURIAE A.G. AND G.W. IN SUPPORT OF C.B.

Proposed amici curiae, A.G. and G.W., are sex-trafficking survivors. They sued a hotel at which they were sold for sex as children under the civil-liability provision of the Trafficking Victims Protection Reauthorization Act (TVPRA), 18 U.S.C. § 1595(a).

A.G. and G.W., like several other survivors (including C.B.) seeking to hold those who benefited from their sex trafficking civilly responsible, have appeals before this Court about the meaning of the TVPRA's civil-beneficiary provision.[1] The statute's correct interpretation is thus of paramount importance—not only to A.G. and G.W. but also to far too many other survivors in this Circuit, regardless of whether their cases are on appeal, before a district court, or yet to be filed. The stakes are sky-high.

Statutory interpretation is a fundamental judicial function. *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 384–85 (2024). When called on to decide a statute's meaning, the "solemn duty" of Article III

---

[1] *A.G. v. Northbrook Indus., Inc.*, No. 25-10816 (11th Cir. docketed Mar. 8, 2025); *G.W. v. Northbrook Indus., Inc.*, No. 25-10829 (11th Cir. docketed Mar. 8, 2025); *see also C.B.* (No. 24-13294); *Jane Doe v. G6 Hospitality, LLC* (No. 25-11345); *Hare Krishna Savannah Hotel, LLC v. Jane Doe* (No. 25-90009).

courts in our constitutional system is "to interpret the act of Congress, in order to ascertain the rights of the parties." *Id.* at 385 (citation modified). In doing so, the role of Article III courts "is to get it right, not to choose which side's argument is better and adopt it lock, stock, and barrel." *United States v. Undetermined Quantities of All Articles of Finished & In-Process Foods*, 936 F.3d 1341, 1350 (11th Cir. 2019). Or said a little differently but no less clearly: "When an issue or claim is properly before the court, the court is not limited to the particular legal theories advanced by the parties, but rather retains the independent power to identify and apply the proper construction of governing law." *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 99 (1991).[2]

Here, there is a live case or controversy before the Court. The outcome of this appeal (like many others) depends on *both* the correct interpretation of the TVPRA's civil-beneficiary provision *and* the proper application of that interpretation to TVPRA civil actions in which the

---

[2] *See also McCarthan v. Dir. of Goodwill Indus.-Suncoast, Inc.*, 851 F.3d 1076, 1099 (11th Cir. 2017) (Despite the parties' agreement about the applicable law, the Court has "a responsibility to interpret the law correctly." And where a live case or controversy exists, the Court "must interpret the statute that governs this appeal and apply it to the parties.").

defendant is not alleged to be in a venture with the victim's traffickers. Indeed, the district court here went so far as to say that "[t]he Circuit's more comprehensive revisiting of the statute would be helpful to the district courts handling these difficult issues." Doc. 164 at 3 n.4. Quite so.

Proposed amici curiae's purpose in seeking leave to file a brief is to put before the Court what, in their estimation, is the correct interpretation of the TVPRA civil-beneficiary provision. That's why the argument in their proposed brief, attached as Exhibit A, primarily focuses on the statute's meaning. *See* Ex. A at 5–24.[3] After that statutory-interpretation argument based on first principles, proposed amici curiae argue two more points. *First*, the TVPRA civil-beneficiary provision's meaning remains

---

[3] In the end, A.G. and G.W. conclude that the correct interpretation of § 1595(a)'s civil-beneficiary provision requires a "victim" of a chapter 77 violation to plead and later prove that the defendant

    (1)    voluntarily and intentionally received some value,

    (2)    from taking part in a common undertaking or enterprise involving risk and potential profit;

    (3)    that undertaking or enterprise did an act that violated chapter 77, including the TVPRA; and

    (4)    the defendant had actual or constructive knowledge that the undertaking or enterprise did an act that violated chapter 77, including the TVPRA.

largely an open question despite the Court's decision in *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714 (11th Cir. 2021). That's because except for the interpretation of element two ("participation in a venture"), *Red Roof*'s interpretations of elements one, three, and four are dicta. But that's good news because those interpretations are wrong and should not be followed. Ex. A at 24–26. *Second*, proposed amici curiae argue that *Red Roof*'s interpretation of "participation in a venture"—"t[aking] part in a common undertaking or enterprise involving risk and potential profit," 21 F.4th at 725—means what it says. And to satisfy this element, a sex-trafficking victim (or any victim of a violation of chapter 77 in title 18) need not adduce evidence that the defendant was involved in a venture with the victim's traffickers. Ex. A at 27–29.

To be clear, proposed amici curiae don't seek leave to file a brief to simply say they agree with C.B.—though they do. They seek leave to put squarely before the Court a fulsome and in some ways novel argument for the correct interpretation of the TVPRA's civil-beneficiary provision. In short, proposed amici curiae intend their brief to do what friends should do for one another: clear the path to understanding.

At the same time, proposed amici curiae admit that their request

for leave is untimely. And under the Federal Rule of Appellate Procedure 29(a)(6) and this Circuit's Rule 29-3, this means that their request faces (perhaps more than) an uphill battle. *See Kinsale Ins. Co. v. Pride of St. Lucie Lodge 1189, Inc.*, 135 F.4th 961, 976 n.4 (11th Cir. 2025) (denying untimely motion for leave to file amicus curiae brief that didn't acknowledge its tardiness given Rule 29(a)(6)'s mandatory language on filing deadline where no attempt to show "good cause" to extend deadline was shown).

But there is a pathway. This Court can extend proposed amici curiae's time to file a brief "for good cause." Fed. R. App. P. 26(b). What constitutes "good cause" is left to the Court's sound discretion. And the exercise of that discretion is especially appropriate where no prejudice will result. *Hutchinson v. Pfeil*, 211 F.3d 515, 517 n.1 (10th Cir. 2000). That is the case here.

Section 1595(a)'s civil-beneficiary provision means what it means— and always has. *Cf. United States v. Lee*, 29 F.4th 665, 674 (11th Cir. 2022) ("[A] judicial construction of a statute is an authoritative statement of what the statute meant before as well as after the decision of the case giving rise to that construction." (citation modified)). And the Court has

to ascertain the statute's correct meaning regardless of whether any party, amicus curiae, or anyone else presents it. To fulfill its "solemn duty" of statutory interpretation, the Court is well within its discretion to hear from anyone (and everyone) who can provide meaningful insight. Proposed amici curiae believe that they do precisely in their brief.

Perhaps unsurprisingly, C.B. doesn't oppose the filing of proposed amici curiae's brief, but Naseeb Investments, Inc. does oppose it.

But if proposed amici curiae are allowed to file their brief, Naseeb Investments will suffer no serious prejudice. This is so for at least two reasons. *First*, the Court has yet to decide if this case will be set for oral argument (it should be!), so there's time for the Court to grant Naseeb Investments a chance to respond to proposed amici curiae's arguments.

*Second*, proposed amici curiae raise questions not answered in the parties' briefs or the district court's summary-judgment order: what role does proximate cause play and how is it satisfied in TVPRA civil actions? *See* Ex. A at 22–24 (arguing that the Court needs to answer these questions given the presumption that "proximate cause," a venerated principle of general tort law, applies when Congress creates a tort action). In proposed amici curiae's view, any interpretation of the TVPRA's civil-

beneficiary provision that doesn't answer these questions is incomplete. For this reason, proposed amici curiae believe that the Court should order supplemental briefing on this issue. Should the Court agree, then there will be more than enough time for Naseeb Investments to respond to proposed amici curiae's arguments.

## CONCLUSION

A.G. and G.W. urge this Court to exercise its broad discretion and find "good cause" to permit them to file the attached amici curiae brief.

Respectfully submitted on July 28, 2025.

_/s/ Rory A. Weeks_

| | |
|---|---|
| David H. Bouchard | Patrick J. McDonough |
| Oto U. Ekpo | Jonathan S. Tonge |
| FINCH MCCRANIE LLP | Rory A. Weeks |
| 229 Peachtree St. NE, Suite 2500 | ANDERSEN, TATE & CARR, P.C. |
| Atlanta, GA 30303 | 1960 Satellite Blvd., Suite 4000 |
| (404) 658-9070 | Duluth, GA 30097 |
| | (770) 822-0900 |

# CERTIFICATE OF COMPLIANCE

This brief complies with the world limit of Federal Rule of Appellate Procedure 27(d)(2)(A) because this document contains 1,397 words.

This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6).

*/s/ Rory A. Weeks*

Rory A. Weeks

# EXHIBIT A

No. 24-13294

# United States Court of Appeals for the Eleventh Circuit

**C.B.**,

*Plaintiff–Appellant*,

v.

**NASEEB INVESTMENTS, INC.**,

*Defendant–Appellee.*

*On Appeal from the United States District Court
for the Northern District of Georgia
No. 1-20-cv-4213*

## BRIEF OF AMICI CURIAE IN SUPPORT OF C.B.

David H. Bouchard
Oto U. Ekpo
FINCH MCCRANIE LLP
229 Peachtree St. NE,
Suite 2500
Atlanta, GA 30303
(404) 658-9070

Patrick J. McDonough
Jonathan S. Tonge
Rory A. Weeks
ANDERSEN, TATE & CARR, P.C.
1960 Satellite Blvd., Suite 4000
Duluth, GA 30097
(770) 822-0900

July __, 2025                    *Counsel for Amici Curiae*

No. 24-13294
*C.B. v. Naseeb Investments, Inc.*

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

These people and entities have an interest in this case's outcome:

- A.G. – Appellant in *A.G. v. Northbrook Industries, Inc.* (Appeal No. 25-10816)

- Amin, Nalini – Joint Owner of Naseeb Investments, Inc.

- Amin, Vic – Joint Owner of Naseeb Investments, Inc.

- Andersen, Tate & Carr, P.C. – Law firm representing A.G. & G.W.

- Atkins, Sabrina Lynn – Counsel for Naseeb Investments, Inc.

- Baker, Donelson, Bearman, Caldwell & Berkowitz, P.C. – Counsel for Movant Choice Hotels International Inc.

- Beranek, Lori M. – Counsel for Movants U.S. Attorney's Office and Federal Bureau of Investigation

- Bondurant, Mixson & Elmore LLP – Counsel for C.B.

- Bouchard, David – Counsel for A.G. & G.W.

- Boulee, J.P. – United States District Court Judge

- C.B. – Appellant

- Cartiga Consumer Funding, LLC – Funding for C.B.

- Choice Hotels International, Inc. – Movant in District Court

- Colette, Hervey Joseph – Counsel for Movant View Point Health

- Clopton, Andrew – Counsel for International Franchise Association

- Cooper, Belle-Anne – Counsel for C.B.

No. 24-13294
*C.B. v. Naseeb Investments, Inc.*

- Ekpo, Oto – Counsel for A.G. & G.W.

- Federal Bureau of Investigation – Movant in District Court

- Finch McCranie, LLP – Law firm representing A.G. & G.W.

- Fine, Julie – Counsel for International Franchise Association

- Fireman's Fund – Insurer for Northbrook Industries, Inc.

- Freeman Mathis & Gary, LLP – Counsel for Movant View Point Health

- G.W. – Appellant in *G.W. v. Northbrook Industries, Inc.* (Appeal No. 25-10829)

- Galloway, Sara – Counsel for Northbrook Industries, Inc.

- Gilmore, Tracy Anne – Counsel for Naseeb Investments, Inc.

- Greenaway, Amber – Counsel for C.B.

- Harris, Roger E. – Counsel for Naseeb Investments, Inc.

- International Franchise Association

- Jones Day – Law firm for International Franchise Association

- Knisely, Gabriel – Counsel for A.G. & G.W.

- Lee, Christopher Sue – Counsel for Movant View Point Health

- Lewis Brisbois Bisgaard Smith, LLP – Law firm representing Northbrook Industries, Inc.

- McDonough, Patrick – Counsel for A.G. & G.W.

- Mobley, Cameron – Counsel for Northbrook Industries, Inc.

No. 24-13294
*C.B. v. Naseeb Investments, Inc.*

- Naseeb Investments, Inc. d/b/a The Hilltop Inn a/k/a EconoLodge – Appellee

- Northbrook Industries, Inc. – Appellee in A.G. v. Northbrook Industries, Inc. and G.W. v. Northbrook Industries, Inc.

- Patel, Atul – Joint Owner of Naseeb Investments, Inc.

- Patel, George – Joint Owner of Naseeb Investments, Inc.

- Ramachandrappa, Naveen – Counsel for C.B.

- Stoddard, Matthew – Counsel for C.B.

- Swift, Currie, McGhee & Hiers, LLP – Counsel for Naseeb Investments, Inc.

- The Stoddard Firm – Counsel for C.B.

- Tonge, Jonathan – Counsel for A.G. & G.W.

- Totenberg, Amy – United States District Court Judge

- Tropper, Joshua – Counsel for Movant Choice Hotels International Inc.

- Turner, Sara Marie – Counsel for Movant Choice Hotels International Inc.

- United States Attorney's Office – Movant in District Court

- View Point Health – Movant in District Court

- Wagner, Kori – Counsel for Naseeb Investments, Inc.

- Ward, Alice – Counsel for Northbrook Industries, Inc.

- Weeks, Rory – Counsel for A.G. & G.W.

- WLG Atlanta, LLC – Counsel for C.B.

No. 24-13294
*C.B. v. Naseeb Investments, Inc.*

- Zabresky, Janelle – Counsel for C.B.

Choice Hotels International, Inc. (CCH) is a publicly traded company that may have an interest in the outcome of this case or appeal.

# TABLE OF CONTENTS

TABLE OF CITATIONS..........................................................................ii

IDENTITY AND INTEREST OF AMICI CURIAE.............................. 1

STATEMENT OF THE ISSUES ......................................................... 3

SUMMARY OF THE ARGUMENT ..................................................... 3

ARGUMENT ...................................................................................... 5

I.    The meaning of the TVPRA civil-beneficiary provision. .................5

    A. The 2008 Amendment.................................................................6

    B. Correctly interpreting § 1595(a)'s four elements. .......................9

        1. The meaning of "knowingly benefits." ..................................11

        2. The meaning of "participation in a venture." .......................13

        3. The meaning of the venture "engaged in an act in violation of this chapter." .....................................................13

        4. The meaning of the venture "knew or should have known."................................................................................18

        5. To prevail on a civil-beneficiary claim, a victim must do more than meet the statutory elements. .............................21

II.   *Red Roof* is more dicta than holding—no matter what it says. ....24

III.  To prove "participation in a venture," *Red Roof* requires only evidence that the defendant took part in a common undertaking or enterprise involving risk and potential profit......27

CONCLUSION ................................................................................. 29

# TABLE OF CITATIONS

## CASES

*Doe #1 v. Red Roof Inns, Inc.*,
   21 F.4th 714 (11th Cir. 2021) ...................................................... passim

*Ga. Ass'n of Latino Elected Officials, Inc. v. Gwinnett Cnty. Bd. of*
   *Registration & Elections*,
   36 F.4th 1100 (11th Cir. 2022) ............................................... 24, 25, 26

*Heyman v. Cooper*,
   31 F.4th 1315 (11th Cir. 2022) ........................................................ 10

*K.H. v. Riti, Inc.*, No. 23-11682,
   2024 WL 505063 (11th Cir. Feb. 9, 2024) ...................................... 27, 28

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
   572 U.S. 118 (2014)........................................................................ 22

*Morissette v. United States*,
   342 U.S. 246 (1952)................................................................... 12, 15

*Pretka v. Kolter City Plaza II, Inc.*,
   608 F.3d 744 (11th Cir. 2010)................................................. 24, 25, 26

*Republic of Sudan v. Harrison*,
   587 U.S. 1 (2019)............................................................................ 9

*Rubin v. United States*,
   414 F.2d 473 (5th Cir. 1969)............................................................ 12

*Silva-Hernandez v. U.S. Bureau of Citizenship & Immigr. Servs.*,
   701 F.3d 356 (11th Cir. 2012)........................................................... 17

*Staub v. Proctor Hosp.*,
   562 U.S. 411 (2011)................................................................... 19, 22

*Taniguchi v. Kan Pac. Saipan, Ltd.*,
   566 U.S. 560 (2012)........................................................................ 11

*United States v. Brown,*
    125 F.4th 1043 (11th Cir. 2025) ........................................................20

*United States v. Diecidue,*
    603 F.2d 535 (5th Cir. 1979) ..............................................................12

*United States v. Dominguez,*
    997 F.3d 1121 (11th Cir. 2021) ..........................................................10

*United States v. Mozie,*
    752 F.3d 1271 (11th Cir. 2014) ..........................................................20

*United States v. Woodruff,*
    296 F.3d 1041 (11th Cir. 2002) ..........................................................12

*Van Buren v. United States,*
    593 U.S. 374 (2021) ............................................................................20

*Watts v. BellSouth Telecomms., Inc.,*
    316 F.3d 1203 (11th Cir. 2003) ..........................................................24

*Williams v. Taylor,*
    529 U.S. 362 (2000) ............................................................................16

*Wis. Cent. Ltd. v. United States,*
    585 U.S. 274 (2018) ............................................................................10

**STATUTES**

18 U.S.C. § 1589 ........................................................................................7

18 U.S.C. § 1590 ........................................................................................7

18 U.S.C. § 1593A ....................................................................................11

18 U.S.C. § 1594 ..........................................................................8, 18, 20

18 U.S.C. § 1595 ...............................................................................passim

28 U.S.C. § 1658 ........................................................................................8

## RULES

Fed. R. App. P. 29 .................................................................................. 1

## LEGISLATION

Allow States and Victims to Fight Online Sex Trafficking Act of
2017, Pub. L. 115-164, 132 Stat. 1253 (Apr. 11, 2018) ..................... 13

Trafficking Victims Protection Reauthorization Act of 2003,
Pub. L. No. 108-193, 117 Stat. 2875 ...................................................... 6

Victims of Trafficking and Violence Protection Act of 2000,
Pub. L. 106-386, 114 Stat. 1464 ........................................................... 6

William Wilberforce Trafficking Victims Protection
Reauthorization Act of 2008, Pub. L. No. 110-457, 122 Stat.
5044 ................................................................................................. 7, 8

## OTHER AUTHORITIES

4 William Blackstone, Commentaries on the Laws of England ............. 15

American Heritage Dictionary (5th ed. 2018) ........................................ 15

Black's Law Dictionary (12th ed. 2024) ................................................. 15

Eleventh Circuit Pattern Criminal Jury Instruction B9.1A (2024) ....... 12

Jack Metzler, *Cleaning Up Quotations*,
18 J. App. Prac. & Process 143 (2017) .................................................. 10

Merriam–Webster's Collegiate Dictionary (11th ed. 2020) ................... 15

Restatement (Second) of Torts § 12 (1965) ............................................ 19

Restatement of Agency § 9 (1958) .......................................................... 19

The Bluebook: A Uniform System of Citation
(Columbia L. Rev. Ass'n et al. eds., 22d ed. 2025) ............................. 10

## IDENTITY AND INTEREST OF AMICI CURIAE[1]

Amici curiae, A.G. and G.W., are sex-trafficking survivors. They sued a hotel at which they were sold for sex as children under the civil-liability provision of the Trafficking Victims Protection Reauthorization Act (TVPRA), 18 U.S.C. § 1595(a).

A.G. and G.W. have a significant interest in this case because they have consolidated appeals before this Court about the meaning of "participation in a venture," the second element of a TVPRA civil-beneficiary claim.[2] Like C.B., A.G. and G.W. alleged that the hotel "participat[ed] in a venture" by operating the hotel that rented rooms to their traffickers.[3] As in this case, the district court in A.G.'s and G.W.'s cases absolved the hotel operator of all liability on summary judgment, finding they did not

---

[1] Pursuant to Federal Rule of Appellate Procedure 29(a)(4)(E), no party's counsel authored this brief in whole or in part; and no party, party's counsel, or anyone else contributed money intended to fund the brief's preparation or submission.

[2] *A.G. v. Northbrook Indus., Inc.*, No. 25-10816 (11th Cir. docketed Mar. 8, 2025); *G.W. v. Northbrook Indus., Inc.*, No. 25-10829 (11th Cir. docketed Mar. 8, 2025).

[3] Compl. at 2–3, *A.G. v. Northbrook Indus., Inc.*, No. 1:20-cv-5231 (N.D. Ga. filed Dec. 28, 2020); Compl. at 2–3, *G.W. v. Northbrook Indus., Inc.*, No. 1:20-cv-5232 (N.D. Ga. filed Dec. 28, 2020).

adduce sufficient evidence to create a jury question about the "participation in a venture" element. According to that district court, they had to "demonstrate that [the hotel operator] acted pursuant to the common goal of the trafficking venture" by providing evidence that the hotel "took steps *with* [their] traffickers to facilitate the traffickers' illicit activities." Doc. 151 at 13 (A.G.); Doc. 148 at 14 (G.W.). Similarly, here, the district court required evidence that the hotel "support[ed] or facilitate[ed] Chappell's specific [trafficking] activities." Doc. 164 at 40. Neither district court correctly stated the law.

Of course, no district court wants to be wrong. As the district court in *A.G.* and *G.W.* noted, "[t]he elements of a § 1595(a) beneficiary claim have been the source of much debate among the courts." Doc. 151 at 6 (A.G.), Doc. 148 at 7 (G.W.). Here, the district court said, "[t]he Circuit's more comprehensive revisiting of the statute would be helpful to the district courts handling these difficult issues." Doc. 164 at 3 n.4. The opportunity exists as at least five TVPRA civil-beneficiary appeals are before the Court.[4] Both litigants and lower courts will benefit from the Court's

---

[4] *A.G.* (No. 25-10816); *G.W.* (No. 25-10829); *C.B.* (No. 24-13294); *Jane Doe v. G6 Hospitality, LLC* (No. 25-11345); *Hare Krishna Savannah Hotel,*

correct interpretation of § 1595(a)'s civil-beneficiary provision.

## STATEMENT OF THE ISSUES

1.  What does the TVPRA civil-beneficiary provision mean?

2.  Are *Red Roof*'s statements on the meaning of elements one, three, and four of a civil-beneficiary claim—that were unnecessary to the result and contradict § 1595(a)'s text—binding interpretations?

3.  Must plaintiffs pursuing civil-beneficiary claims under § 1595(a) adduce evidence that the defendant did *more* than "t[ake] part in a common undertaking or enterprise involving risk and potential profit" to prove "participation in a venture"—despite this Court's contrary holding in *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 726 (11th Cir. 2021)?

## SUMMARY OF THE ARGUMENT

*One.* The correct interpretation of the TVPRA's civil-beneficiary provision—"whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter"—

---

*LLC v. Jane Doe* (No. 25-90009).

comes from the text's ordinary meaning as buttressed by the canons of construction. Despite purporting to find the text's ordinary meaning, *Red Roof* fell short. Properly understood, the civil-beneficiary provision requires victims of chapter 77 violations to prove four things: the defendant (1) voluntarily and intentionally benefited, (2) from taking part in a common undertaking or enterprise involving risk and potential profit; (3) that undertaking or enterprise did an act that violated chapter 77, including the TVPRA; and (4) the defendant had actual or constructive knowledge that the undertaking or enterprise did an act that violated chapter 77, including the TVPRA.

*Two.* While much of *Red Roof*'s interpretation of the TVPRA's civil-beneficiary provision is wrong, the good news is that it's also dicta. That means the Court isn't bound by it and, more importantly, can fix it here.

*Three.* Despite what some cases have said, *Red Roof* doesn't require plaintiffs bringing civil-beneficiary claims against hotel operators to prove that the hotel operator did more than rent rooms to the victim's traffickers to establish "participation in a venture." The error in these cases arises from misunderstanding the difference between the *rule* and the *application* of that rule to the facts in *Red Roof*. This Court must *at*

*least* clear up this rampant confusion. Otherwise, the distinction between civil-perpetrator and civil-beneficiary claims will be erased.

## ARGUMENT

The core of this appeal concerns the correct interpretation of the TVPRA civil-beneficiary provision in 18 U.S.C. § 1595(a).

This is both an easy and hard question. It's easy because the rules for interpreting federal statutes that create civil causes of action sounding in tort are well known. It's hard because few, if any, courts (as far as counsel can tell) have applied these rules to § 1595(a) correctly. That's an extraordinary claim. But being extraordinary doesn't make it wrong. It just means that it needs strong proof.

Amici curiae provide strong (albeit indirect) proof. Eschewing the myriad cases discussing the civil-beneficiary provision, amici curiae focus on § 1595(a)'s text, the relevant interpretative rules, and this Court's caselaw. Amici curiae, in short, focus on first principles. By doing so, they arrive at the correct interpretation of the civil-beneficiary provision—an interpretation that they encourage the Court to embrace.

## I.    The meaning of the TVPRA civil-beneficiary provision.

Congress enacted the Victims of Trafficking and Violence

Protection Act of 2000 "to combat trafficking in persons, a contemporary manifestation of slavery whose victims are predominantly women and children, to ensure just and effective punishment of traffickers, and to protect their victims." Pub. L. 106-386, § 102(a), 114 Stat. 1464, 1466. Twenty-five years later, there is still much work to be done to eliminate the scourge of sex trafficking, forced labor, and other "contemporary manifestation[s] of slavery."

That 2000 Act did not create a civil cause of action. Congress remedied that in 2003, creating a civil cause of action for victims of sex trafficking, forced labor, and human trafficking. Trafficking Victims Protection Reauthorization Act of 2003, Pub. L. No. 108-193, sec. 4(a), § 1595, 117 Stat. 2875, 2878 (codified at 18 U.S.C. § 1595(a)). Since then, sex-trafficking victims such as amici curiae and C.B. have had the right to sue their "perpetrators" in federal court to "recover damages and reasonable attorneys fees." *Id.*

## A. The 2008 Amendment.

On December 23, 2008, Congress amended § 1595(a) to give sex-trafficking victims (and victims of other chapter 77 violations) the right to sue civilly certain beneficiaries who are not perpetrators. William

6

Wilberforce Trafficking Victims Protection Reauthorization Act of 2008, Pub. L. No. 110-457, § 221(2), 122 Stat. 5044, 5067. Compared to the 2003 version, the amended statute says (red strikethrough text removed; blue underlined text added):

> An individual who is a victim of a violation of ~~section 1589, 1590, 1591 of~~ this chapter may bring a civil action against the perpetrator <u>(or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter)</u> in an appropriate district court of the United States and may recover damages and reasonable attorneys fees.

While perhaps not obvious, Congress's amendment massively expanded TVPRA civil liability largely because of three major changes.

*First,* Congress substantially enlarged the category of perpetrators. After the 2008 amendment, perpetrators include all violators of chapter 77 of title 18 (§§ 1581–1596)—instead of only §§ 1589, 1590 & 1591. At the same time, Congress expanded TVPRA criminal liability by, for example, adding:

- "maintains" as an illegal act under 18 U.S.C. § 1591(a)(1);

- "reckless disregard" as a *mens rea* and "threats of force" as an illegal act under § 1591(a);

7

- a provision allowing a "reasonable opportunity to observe" to obviate the government's need to prove that a criminal defendant knew the victim was a minor, § 1591(c);

- definitions to make more conduct unlawful, § 1591(e); and

- the crime of conspiracy to violate § 1591, 18 U.S.C. § 1594(c).[5]

*Second*, Congress created a new civil-liability category: beneficiaries who are not perpetrators. That is, "whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter." § 1595(a). While the categories of "perpetrator" and "beneficiary" could overlap, they are *generally* distinct.

*Third*, Congress lengthened the statute of limitations for TVPRA civil claims to ten years from the default of four years. *Compare* § 1595(c)*, with* 28 U.S.C. § 1658(a).

Altogether, the 2008 amendments empower victims of sex trafficking (and other chapter 77 violations) to recover civilly and hold responsible *both* perpetrators *and* beneficiaries who are not perpetrators.

---

[5] 2008 TVPRA, §§ 222(b)(5)(A)(i)–(ii), 222(b)(5)(D), 222(b)(5)(E), 222(c), 122 Stat. 5069–5070. Since 2008, Congress has amended the TVPRA's criminal statutes several times to *expand* liability. Each change also increases perpetrator claims under § 1595(a).

### B.    Correctly interpreting § 1595(a)'s four elements.

The TVPRA civil-beneficiary provision's meaning follows from applying the well-worn rules of statutory interpretation. In *Red Roof*, this Court purported to do that. *See* 21 F.4th at 723.

Ultimately, *Red Roof* said that to prevail on a TVPRA civil-beneficiary claim, the plaintiff must plead and later prove four elements:

> the defendant (1) knowingly benefited (2) from taking part in a common undertaking or enterprise involving risk and potential profit, (3) that the undertaking or enterprise violated the TVPRA as to the plaintiff, and (4) that the defendant had constructive or actual knowledge that the undertaking or enterprise violated the TVPRA as to the plaintiff.

*Id.* at 719; *id.* at 726 (same). While purporting to capture the TVPRA civil-beneficiary provision's meaning, the Court fell short.[6]

Statutory interpretation begins with the text. *Republic of Sudan v. Harrison*, 587 U.S. 1, 8 (2019). The Court's usual "job is to interpret the words consistent with their ordinary meaning at the time Congress enacted the statute." *Wis. Cent. Ltd. v. United States*, 585 U.S. 274, 277

---

[6] While the TVPRA civil-beneficiary provision could be broken into elements other ways, this brief follows *Red Roof*'s numbering.

(2018) (citation modified).[7] Dictionaries and other materials from around the time of enactment are useful resources to understand ordinary meaning. *United States v. Dominguez*, 997 F.3d 1121, 1124 (11th Cir. 2021). Other "useful tools" often deployed to decipher ordinary meaning are the "canons of construction." *Heyman v. Cooper*, 31 F.4th 1315, 1319 (11th Cir. 2022). "But the canons are not rules of interpretation in any strict sense. Instead, they serve only as presumptions about what an intelligently produced text conveys. So [the Court] shouldn't treat the canons like rigid rules, lest [it] be led astray." *Id.* (citation modified).

For simplicity, amici curiae discuss the civil-beneficiary provision's

---

[7] Eight years after "(cleaned up)" started making the rounds, *see* Jack Metzler, *Cleaning Up Quotations*, 18 J. App. Prac. & Process 143 (2017), the *Bluebook* has seen fit to include a *new*, albeit not original, parenthetical: "(citation modified)," The Bluebook: A Uniform System of Citation B5.3, at 9 (Columbia L. Rev. Ass'n et al. eds., 22d ed. 2025). Under B5.3, a quotation that includes another quotation "*may*, for clarity, be stripped of internal quotation marks, brackets, ellipses, internal citations, and footnote reference numbers"; plus, "the original sources of quotations within the quotation need not be cited parenthetically; and capitalization may be changed without brackets." *Id.* (emphasis added). In exchange for all that, the author need only use the "(citation modified)" parenthetical.

This brief uses this new *Bluebook*-approved parenthetical. But since the rule is permissive, some internal marks (often quotation marks) have been left to improve clarity. All modifications by counsel are marked with brackets or ellipses.

meaning using *Red Roof*'s four elements as a starting point.

### 1.    The meaning of "knowingly benefits."

*Red Roof*'s first element—"knowingly benefits"—comes from the text. *Red Roof* says that "knowingly benefits" means that "the defendant knew it was receiving some value from participating in the alleged venture." 21 F.4th at 724. To arrive at this interpretation, the Court used the dictionary meaning of "knowledge" and the statutory description of "benefits." *Id.* That's not quite right. For this element, using dictionaries to define "knowingly" is a misstep.

As *Red Roof* notes, the usual presumption is that when Congress uses the same word or phrase in different parts of the same Act it intends those words or phrases to have the same meaning. 21 F.4th at 724; *see also Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560, 571 (2012).

In 2008, the phrase "knowingly benefits" appeared (and still does) in several TVPRA criminal statutes. 18 U.S.C. §§ 1589(b), 1591(b) & 1593A. Unlike "participation in a venture," there are no special or text-based reasons that "knowingly benefits" in § 1595(a) means something other than what it means elsewhere in the TVPRA. *Cf. Red Roof*, 21 F.4th at 724 (explaining that consistent-usage presumption didn't apply to

"participation in a venture"). So the consistent-usage presumption should apply to "knowingly benefits."

Applying that presumption to "benefits" is easy. Each statute describes "benefits" the same way: "financially or by receiving anything of value." That, then, is what "benefits" means—as *Red Roof* says. *See id.*

Doing so for "knowingly" is harder. In the criminal statutes, "knowingly" is a *mens rea* requirement. That's important because when Congress uses well-known legal terms, the presumption is that Congress intends the historical ideas attached to those terms. *See Morissette v. United States*, 342 U.S. 246, 263 (1952). In this Circuit, "knowingly" as a criminal *mens rea* has always meant "that the act was performed voluntarily and intentionally, and not because of a mistake or accident." *United States v. Woodruff*, 296 F.3d 1041, 1047 (11th Cir. 2002) (quoting *United States v. Diecidue*, 603 F.2d 535, 548 (5th Cir. 1979)); *accord* Eleventh Circuit Pattern Criminal Jury Instruction B9.1A (2024).[8] That then should be the meaning of "knowingly" in § 1595(a).

Correctly interpreted, the first element—"knowingly benefits"—

---

[8] Similar jury instructions go back to at least 1969. *E.g.*, *Rubin v. United States*, 414 F.2d 473, 475 & n.8 (5th Cir. 1969).

requires the victim to show that the defendant voluntarily and intentionally received some value from participating in a venture.

### 2.    The meaning of "participation in a venture."

*Red Roof*'s second element—"taking part in a common undertaking or enterprise involving risk and potential profit"—comes from the ordinary meaning of "participation in a venture" in the text. 21 F.4th at 725. *Red Roof* arrived at this phrase's ordinary meaning by using dictionaries and rejecting the defense's attempt to smuggle the definition of "participation in a venture" from the *criminal* sex-trafficking statute, § 1591(e)(4), into the civil-liability statute.[9] That's correct.

### 3.    The meaning of the venture "engaged in an act in violation of this chapter."

*Red Roof*'s third element—"the venture in which the defendant

---

[9] In 2008, Congress did not define "participation in a venture" in either the criminal sex-trafficking statute or the civil-liability statute. Congress had however always defined "venture" in the *criminal* sex-trafficking statute as "any group of two or more individuals associated in fact, whether or not a legal entity"—but that definition applied only "[i]n this section." § 1591(c)(3) (2000) (moved to § 1591(e)(5) in 2008). Congress did not add the definition of "participation in a venture" to the criminal sex-trafficking statute until 2018. Allow States and Victims to Fight Online Sex Trafficking Act of 2017, Pub. L. 115-164, § 5, 132 Stat. 1253, 1255 (Apr. 11, 2018) (codified at 18 U.S.C. § 1591(e)(4)).

participated and from which it knowingly benefited must have violated the TVPRA as to the plaintiff"—doesn't come from the text. *See* 21 F.4th at 725. Where it comes from is unclear. *Red Roof*'s entire discussion of element three occurs in one paragraph that neither quotes nor cites the *text* of § 1595(a). *See id.* In any event, *Red Roof*'s third element contains three interpretive errors.

*First*, *Red Roof* says that the venture "must have violated the TVPRA" or "committed . . . crimes." 21 F.4th at 725. Not true. Section 1595(a) requires only that the venture have "engaged in an act in violation of this chapter." So despite what *Red Roof* says, the venture need not have "violated" anything or have "committed . . . crimes" against anyone.

Section 1595(a) contains two similar but distinct phrases: "an act in violation of this chapter" and "a violation of this chapter." Congress's use of different phrases is presumed to be intentional. *See Duncan v. Walker*, 533 U.S. 167, 173 (2001).

Plus, Congress uses "violation of this chapter" to describe different things in § 1595(a). The first use describes the type of "victim" who can

bring a civil action.[10] The second use describes the type of "act" that (1) the venture must do, and (2) the defendant must have or should have known about.

The differences in these descriptions matter. For "a violation of this chapter" evokes a complete crime (*mens rea* plus *actus reus*) while "an act in violation of this chapter" evokes the act of a crime only (*actus reus*).[11] That distinction mirrors both the common law and modern American law. *See Morissette*, 342 U.S. at 251–52; 4 William Blackstone, Commentaries on the Laws of England *21.

By requiring the venture to have "violated" the law or "committed . . . crimes," *Red Roof*'s third element reads the words "an act in" out of

---

[10] This phrase also relates to the "perpetrator"; that is, someone who violates chapter 77. *See Perpetrator*, Black's Law Dictionary (12th ed. 2024) ("Someone who commits a crime or offense; one who does something illegal or immoral.").

[11] *Violation*, Black's Law Dictionary (12th ed. 2024) ("An infraction or breach of the law; a transgression."); *Violation*, Merriam–Webster's Collegiate Dictionary 1396 (11th ed. 2020) (principal copyright date 2011) ("the act of violating"); *Violating*, Merriam–Webster's Collegiate Dictionary 1396 ("break, disregard," for example, *violate* "the law"); *Violation*, American Heritage Dictionary 1934 (5th ed. 2018) (principal copyright date 2003) ("The act or an instance of violating or the condition of being violated: *a violation of the law; the violation of a country's neutrality*." (italics in original)).

§ 1595(a). This violates "a cardinal principle of statutory construction that [the Court] must give effect, if possible, to every clause and word of a statute." *Williams v. Taylor*, 529 U.S. 362, 404 (2000) (citation modified). It also fails to give the statute's words their ordinary meaning—the goal of statutory interpretation. Properly interpreted, element three requires only that the venture do an *act* that violates some provision of chapter 77 of title 18.

*Second*, *Red Roof*'s third element contains a technical (albeit understandable) interpretive error about scope. *Red Roof* confines civil-beneficiary claims to "violat[ions] of the TVPRA." But the TVPRA comprises only §§ 1589–1596 of chapter 77 of title 18 (omitting §§ 1581–1588). The statute's plain language reaches that whole chapter. § 1595(a).

*Third*, *Red Roof* appends the phrase "as to the plaintiff" to the end of element three. But neither that phrase nor any similar phrase is in § 1595(a). *Red Roof* offers no clue about why it added this phrase to element three (or element four). Nor does the statutory text suggest one.

By adding this phrase to element three (and element four), *Red Roof* did what it cannot do. Statutory interpretation begins, "and often should end as well, with the language of the statute itself. This is because

16

[courts] presume that Congress said what it meant and meant what it said." *Silva-Hernandez v. U.S. Bureau of Citizenship & Immigr. Servs.*, 701 F.3d 356, 361 (11th Cir. 2012) (citation modified). Ultimately, "courts have no authority to alter statutory language," nor can courts "add to the terms of the provision what Congress left out." *Id.* (citation modified). Yet *Red Roof* did so. Thus, its interpretation cannot be correct.

Properly understood, element three requires the victim to show only that the venture in which the defendant participated and from which it knowingly benefited did an act covered by chapter 77 of title 18, which includes the TVPRA.

For cases involving child sex trafficking, a venture can do many acts that satisfy this element. For example, anytime a venture "recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person . . . [who] has not attained the age of 18 years and will be caused to engage in a commercial sex act,"[12] meaning "any sex act, on account of which anything of value is given to or received by any person," the venture has "engaged in an act in violation

---

[12] This list of acts comes from the current version of § 1591(a)(1).

17

of" chapter 77. *See* § 1591(a)(1), (e); § 1595(a). And a venture that "attempts" or "conspires with another" to violate § 1591 does a violating act. *See* § 1594(a), (c). Thus, element three is satisfied anytime a sex-trafficking victim pleads and later has evidence from which a jury could reasonably find that the defendant did one of these (or other) violating acts.

### 4. The meaning of the venture "knew or should have known."

*Red Roof*'s fourth element—"that the defendant had constructive or actual knowledge that the undertaking or enterprise violated the TVPRA as to the plaintiff"—is partially based on the text's ordinary meaning. *See* 21 F.4th at 719, 726. As with the third element, *Red Roof*'s analysis of element four comprises one paragraph. *See id.* at 725. But unlike with element three, *Red Roof*'s analysis of element four derives from the relevant statutory text: "Section 1595(a) requires that the defendant "knew or should have known [that the venture] has engaged in an act in violation of this chapter." *Id.* (alteration in original). To define the terms "knew or should have known," *Red Roof* turns to the definitions of "knowledge" and "constructive knowledge" in *Black's Law Dictionary*. *Id.*

Amici curiae have no quarrel with *Red Roof*'s use of *Black's* to interpret "knew or should have known." Actual and constructive knowledge

are well-known concepts in general tort law and other areas of law. *See, e.g.*, Restatement (Second) of Torts § 12(2) & cmt. a (1965) (defining "should know" for purposes of Restatement (Second) of Torts and explaining it means what it means in Restatement of Agency § 9 (1958)). That historical pedigree matters because "when Congress creates a federal tort it adopts the background of general tort law." *Staub v. Proctor Hosp.*, 562 U.S. 411, 417 (2011); *see id.* at 418 ("[W]e consult general principles of law, agency law, which form the background against which federal tort laws are enacted.").

*Red Roof*'s fourth element incorporates element three's problems—requiring that the venture have "violated the TVPRA as to the plaintiff." This interpretation is thus wrong for the same reasons as element three. *See supra* pp. 13–18.

 *Red Roof's* statement that the venture must have "violated the TVPRA as to the plaintiff" is wrong for another reason: it obliterates the distinction between perpetrator and beneficiary claims in § 1595(a). That's because a person who "took part in a common undertaking or enterprise involving risk and potential profit" that "violated the TVPRA as to the plaintiff" has almost certainly committed either attempted sex

trafficking or conspiracy to commit sex trafficking. *See* 1594(a), (c).[13] Plus, depending on what was done and known, the person may have committed sex trafficking. *See* § 1591(a). Either way, that person has violated chapter 77. And a victim can sue that person under § 1595(a)'s 2008 amendment to the "perpetrator" provision.

In other words, *Red Roof*'s interpretation effectively turns a "beneficiary" claim into a "perpetrator" claim. That, in turn, robs the "beneficiary" provision Congress added of substantive effect. That's a problem because "[w]hen Congress amends legislation, courts must presume it intends the change to have real and substantial effect." *Van Buren v. United States*, 593 U.S. 374, 393 (2021). So this is another reason *Red Roof*'s interpretation cannot be correct.

---

[13] To be convicted of attempted sex trafficking under § 1594(a), "the government need prove only that the defendant acted with the specific intent to engage in the criminal conduct for which he is charged and that the defendant took a substantial step toward commission of the offense." *United States v. Brown*, 125 F.4th 1043, 1054 (11th Cir. 2025) (citation modified).

To be convicted conspiracy to commit sex trafficking under § 1594(c), "the government had to prove that (1) two or more persons agreed to violate § 1591, (2) [the defendant] knew of that conspiratorial goal, and (3) [the defendant] voluntarily assisted in accomplishing that goal." *United States v. Mozie*, 752 F.3d 1271, 1287 (11th Cir. 2014). The agreement's existence "may be inferred from the participants' conduct." *Id.*

\*        \*        \*

Correctly interpreted, § 1595(a)'s civil-beneficiary provision requires a "victim" of a chapter 77 violation to plead and later prove that the defendant

(1)    voluntarily and intentionally received some value,

(2)    from taking part in a common undertaking or enterprise involving risk and potential profit;

(3)    that undertaking or enterprise did an act that violated chapter 77, including the TVPRA; and

(4)    the defendant had actual or constructive knowledge that the undertaking or enterprise did an act that violated chapter 77, including the TVPRA.

Unlike *Red Roof*'s interpretation of elements one, three, and four, this interpretation is faithful to the statutory text and is the ordinary meaning of Congress's 2008 amendment: "whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter."

### 5.    To prevail on a civil-beneficiary claim, a victim must do more than meet the statutory elements.

Sections 1 to 4 derive the ordinary meaning of the civil-beneficiary provision's words and phrases—the four elements from *Red Roof*. And

while stopping now is tempting, amici curiae know that more "construction" work on the statute is required. What work? Causation.

*Red Roof* has no discussion of "causation"—proximate or otherwise. And § 1595(a), like many federal statutes that create causes of action sounding in tort (or akin to a tort action), says nothing about causation. But Congress's statutory silence on causation doesn't mean that victims of chapter 77 violations have no causation burden.

For "when Congress creates a federal tort it adopts the background of general tort law." *Staub*, 562 U.S. at 417. One longstanding general tort law principle is "proximate cause." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 132 (2014). Congress is presumed to be familiar with this venerable principle (and other venerable principles) of general tort law and not to have abrogated it *sub silentio. Id.*

Yet despite its familiarity and widespread application, "proximate cause" is not easy to define. But the basic inquiry is "whether the harm alleged has a sufficiently close connection to the conduct the statute prohibits." *Id.* at 133. While the precise nature of proximate cause can differ from statute to statute, it is "controlled by the nature of the statutory cause of action." *Id.*

This brief isn't the place to explore for the first time questions about the role of proximate cause and how it may be satisfied in a § 1595(a) action. But it is vitally important that the Court answer these questions at some point—perhaps here—so that the bench and bar will know what must be pleaded and proved to prevail on a civil-beneficiary claim under § 1595(a). Should the Court decide to take up these questions now and request supplemental briefing from the parties on them, amici curiae would ask for leave to also file a short supplemental brief.

*    *    *

To be clear, nothing in amici curiae's interpretation suggests that the TVPRA's civil-beneficiary provision imposes something like strict liability on hotel owners or businesses in other industries that do acts covered by chapter 77 of title 18. Rather, amici curiae's interpretation reveals that Congress chose to impose civil liability only when the defendant voluntarily and intentionally received financial benefit from participating in a venture that did violating acts with actual or constructive knowledge of the venture's violating acts. When these elements are coupled with the background requirement of proximate cause (whatever means for TVPRA civil actions), it becomes clear that Congress has made

23

defendants civilly liable only when their conduct has culpability similar to that of many traditional torts.

## II. *Red Roof* **is more dicta than holding—no matter what it says.**

*Red Roof* introduces its four elements with "we hold." 21 F.4th at 719, 726. But calling something a holding doesn't make it so. And in *Red Roof*, the only precedential interpretation is that of "participation in a venture." The rest are published dicta in a holding masquerade mask.

"Whatever their opinions say, judicial decisions cannot make law beyond the facts of the cases in which those decisions are announced." *Watts v. BellSouth Telecomms., Inc.*, 316 F.3d 1203, 1207 (11th Cir. 2003). "Statements in an opinion that are not fitted to the facts, or that extend further than the facts of that case, or that are not necessary to the decision of an appeal given the facts and circumstances of the case are dicta." *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 762 (11th Cir. 2010) (citation modified). "Dicta are defined as those portions of an opinion that are not necessary to deciding the case then before us." *Ga. Ass'n of Latino Elected Officials, Inc. v. Gwinnett Cnty. Bd. of Registration & Elections*, 36 F.4th 1100, 1119 (11th Cir. 2022). Neither the Eleventh Circuit nor any district court in the circuit must follow circuit dicta—even if

it's published. *Id.* at 1119–20; *Pretka*, 608 F.3d at 762.

In *Red Roof*, the plaintiffs asserted civil-beneficiary claims against the franchisors of hotels at which they were sex trafficked. The district court dismissed each plaintiff's complaint for failure to state a claim. 21 F.4th at 721. On appeal, "[t]he only question" was "whether the Does have plausibly alleged that the franchisors are liable." *Id.* at 723. *Red Roof* held that "they have not." *Id.* at 726. *Red Roof* reached this conclusion because the plaintiffs had not adequately alleged that the hotel franchisors took part in "sex trafficking ventures"—the venture that the plaintiffs pleaded. *See id.* ("We begin with the venture the Does say that the franchisors participated in. Throughout their complaints, the Does alleged that the franchisors participated in 'sex trafficking ventures.'"); *see also id.* at 727 ("Again, every time the complaints refer to ventures, they refer to 'sex trafficking ventures.'").

Because the *Red Roof* plaintiffs alleged "sex trafficking ventures," the relevant question was "whether the Does plausibly alleged that the franchisors took part in the common undertaking of sex trafficking with hotel employees, management, owners, and sex traffickers." *Id.* A review of the complaints' allegations revealed that they "provided no plausible

25

allegations that the franchisors took part in the common undertaking of sex trafficking." *Id.* at 727. The entire basis for affirmance was that the *Red Roof* plaintiffs failed to allege "participation in a venture" under § 1595(a). *See id.* at 726–27.

Sure, to reach that conclusion, *Red Roof* had to interpret "participation in a venture" (element two). But any statutory interpretation beyond that phrase was unnecessary to decide *Red Roof*.[14] Thus, *Red Roof*'s erroneous statements about elements one, three, and four of a civil-beneficiary claim are mere dicta, and this Court isn't panel-precedent bound to follow them. *See Ga. Ass'n of Latino Elected Officials*, 36 F.4th at 1119–20; *Pretka*, 608 F.3d at 762. Nor should it. Instead, this Court should adopt the correct interpretations above.

---

[14] To illustrate that *Red Roof*'s other interpretations were unnecessary to the outcome, amici curiae attach an edited version of *Red Roof* as Exhibit 1. The edited version redacts the unnecessary statements about elements one, three, and four while adding a smattering of hand edits to correct grammar or improve clarity. Exhibit 1 reveals that the holding and outcome of *Red Roof* remain perfectly clear—despite the removal of the unnecessary (and wrong) interpretations.

**III.  To prove "participation in a venture," *Red Roof* requires only evidence that the defendant took part in a common undertaking or enterprise involving risk and potential profit.**

Here, as in A.G.'s and G.W.'s cases, the district court required C.B. to have evidence that the hotel operator was directly involved with the trafficking of C.B. by supporting or facilitating it to prove "participation in a venture." *See* Doc. 164 at 40. The district court's errant analysis was driven in large part by this Court's unpublished decision in *K.H. v. Riti, Inc.*, No. 23-11682, 2024 WL 505063 (11th Cir. Feb. 9, 2024).

The district court's reliance on *Riti* has two principal problems. *First*, on the relevant facts, *Riti* (and *Red Roof* for that matter) is distinguishable from cases like this one (and A.G.'s and G.W.'s)—cases in which the defendant isn't allegedly involved in a sex-trafficking venture with the plaintiff's trafficker. *Cf. Riti*, 2024 WL 505063, at *3 ("K.H. alleges that Riti participated in a common sex trafficking undertaking with [K.H.'s trafficker]" for two reasons.); *Red Roof*, 21 F.4th at 726 ("Throughout their complaints, the Does alleged that the franchisors participated in 'sex trafficking ventures.'"). Like *Red Roof*, *Riti* is a stark reminder that plaintiffs can plead themselves out of court. But when plaintiffs like C.B. (and A.G. and G.W.) don't allege that the defendant was involved in

a sex-trafficking venture, *Riti* is of limited utility.

*Second*, insofar as district courts have read *Riti* (or *Red Roof*) as requiring sex-trafficking victims to prove that the defendant did "more" than rent rooms to the trafficker to satisfy the "participation in a venture" element, they have erred. And if *Riti* suggests that the defendant must have "participated in a common sex trafficking undertaking or enterprise" with the plaintiff's sex trafficker to trigger TVPRA civil-beneficiary liability, 2024 WL 505063, at *4, *Riti* is wrong.

*Red Roof*'s interpretation of "participation in a venture" couldn't be clearer: the defendant must "t[ake] part in a common undertaking or enterprise involving risk and potential profit." 21 F.4th at 725. That's all. The common undertaking or enterprise need not be a sex-trafficking venture. Judge Jordan emphasized this point in his concurrence. "[T]he participation element of a 'beneficiary' claim under § 1595(a) . . . requires only that a defendant take part in a common undertaking or enterprise involving risk and potential profit." *Id.* at 730 (Jordan, J., concurring).

Hard to imagine a more apt example of "t[aking] part in a common undertaking or enterprise involving risk and potential profit" than owning and operating a hotel. And if the plaintiff hasn't unnecessarily raised

the pleading or proof bar by claiming that the defendant is in a sex-trafficking venture with the plaintiff's traffickers, the plaintiff satisfies element two ("participation in a venture") by alleging and showing exactly that: the defendant owned and operated a hotel. Nothing more is required—for element two.

Even so, in A.G.'s and G.W.'s cases, the district court rejected *Red Roof*'s holding and concluded that the Eleventh Circuit didn't empower plaintiffs to "automatically" satisfy "the participation element" whenever "the defendant is a hotel operator or other commercial entity, irrespective of whether the entity had any involvement in the plaintiff's trafficking." Doc. 151 at 17 (A.G.); Doc. 148 at 17 (G.W.). The district court's concern seems to be the potential scope of liability. But whether the TVPRA's civil-beneficiary provision sweeps too broadly is a question for Congress, not the courts. Besides, most torts have elements that are "automatically" satisfied when the plaintiff sues the right defendant. In any event, "participation in a venture" is but one of many elements that must be shown to prevail on a civil-beneficiary claim. *See supra* p. 23–24 (dinkus).

## CONCLUSION

For these reasons, A.G. and G.W. urge this Court to adopt the

correct interpretation of the civil-beneficiary provision.

Respectfully submitted on July__, 2025.

*/s/ Rory A. Weeks*

David H. Bouchard                        Patrick J. McDonough
Oto U. Ekpo                              Jonathan S. Tonge
FINCH MCCRANIE LLP                       Rory A. Weeks
229 Peachtree St. NE, Suite 2500         ANDERSEN, TATE & CARR, P.C.
Atlanta, GA 30303                        1960 Satellite Blvd., Suite 4000
(404) 658-9070                           Duluth, GA 30097
                                         (770) 822-0900

## CERTIFICATE OF COMPLIANCE

This brief complies with the word limit of Federal Rule of Appellate Procedure 29(a)(5) because, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f), this document contains 6,057 words.

This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6).

*/s/ Rory A. Weeks*
Rory A. Weeks

# EXHIBIT 1

**714**    **21 FEDERAL REPORTER, 4th SERIES**

ders—not the presence of the virus itself." Aplt. Br. at 33. This argument assumes that the Virus Exclusion applied only when the virus was physically present at an insured's property. But the Exclusion's text "in no way suggests that the virus must be present at the insured property for the exclusion to apply." *Causeway Auto., LLC v. Zurich Am. Ins. Co.*, 2021 WL 486917, at *5 (D.N.J. Feb. 10, 2021). Under its plain language, the Virus Exclusion was not limited to instances where the virus was physically present at or on Goodwill's property.

#### ii. Efficient proximate cause doctrine

[21, 22] Even if the government COVID restrictions and the virus itself could be viewed as distinct causes of loss, the efficient proximate cause doctrine would still exclude Goodwill's claim. Under this doctrine, embraced by the Oklahoma Supreme Court in *Shirey v. Tri-State Ins. Co.*, 274 P.2d 386, 388-89 (Okla. 1954), the cause "of a loss for the purpose of fixing insurance liability when concurring causes of the damage appear . . . is the dominant or efficient one that sets the other causes in operation," *Duensing v. State Farm Fire & Cas. Co.*, 131 P.3d 127, 133 (Okla. Civ. App. 2005) (quotations omitted).

Here, the dominant cause of Goodwill's losses—the efficient proximate cause—was the outbreak and spread of COVID-19. Goodwill acknowledges as much in its petition for declaratory relief. *See* App., Vol. 1 at 44 (stating that "the impending threat of COVID-19 and/or the COVID pandemic" was the impetus for the shutdown orders). Even if Goodwill's claims were "for losses due to the pandemic-related Orders," Aplt. Br. at 33, the spread of the virus triggered the orders. Thus, the Virus Exclusion applied under the efficient proximate cause doctrine. *See Mudpie, Inc.*, 15 F.4th at 894 (concluding an identical virus

exclusion applied under the efficient proximate cause doctrine because COVID triggered the downstream forces that produced the plaintiff's claimed losses); *Mashallah, Inc. v. W. Bend Mut. Ins. Co.*, 20 F.4th 311, 320–22 (7th Cir. Dec. 9, 2021) (same).

### III. CONCLUSION

We affirm the district court's orders (1) granting Philadelphia's motion to dismiss and (2) denying Goodwill's motion to alter or amend the judgment. We deny Goodwill's motion to certify questions of law to the Oklahoma Supreme Court and grant amici's motion for leave to file an amicus curiae brief.



**Jane DOE #1, Plaintiff-Appellant,**

v.

**RED ROOF INNS, INC., et al., Defendants,**

**Choice Hotels International, Inc., Wyndham Hotels & Resorts Inc, Microtel Inns and Suites Franchising, Inc., Defendants-Appellees.**

**Jane Doe #2, Plaintiff-Appellant,**

v.

**Red Roof Inns, Inc., et al., Defendants,**

**Choice Hotels International, Inc., Wyndham Hotels & Resorts Inc, Microtel Inns and Suites Franchising, Inc., Varahi Hotel, LLC, Defendants-Appellees.**

**Jane Doe #3, Plaintiff-Appellant,**

**v.**

**Red Roof Inns, Inc., et al., Defendants,**

**Wyndham Hotels & Resorts Inc, Microtel Inns and Suites Franchising, Inc., Esa Management, LLC, Esa P Portfolio, LLC, Extended Stay America, Inc., Esa P Portfolio Operating Lessee, LLC, Defendants-Appellees.**

**Jane Doe #4, Plaintiff-Appellant,**

**v.**

**Red Roof Inns, Inc., et al., Defendants,**

**Choice Hotels International, Inc., Wyndham Hotels & Resorts Inc, Microtel Inns and Suites Franchising, Inc., Defendants-Appellees.**

**No. 20-11764, No. 20-11769, No. 20-11771, No. 20-11770**

United States Court of Appeals, Eleventh Circuit.

Filed: 12/22/2021

**Background:** Victims of sex trafficking brought multiple related actions against hotel franchisors, alleging violations of the Trafficking Victims Protection Reauthorization Act (TVPRA) and Georgia state law. The United States District Court for the Northern District of Georgia, William M. Ray II, J., 2020 WL 1872336, 2020 WL 1872337, 2020 WL 1872335, and 2020 WL 1872333, dismissed for failure to state a claim. Victims appealed.

**Holdings:** The Court of Appeals, Brasher, Circuit Judge, held that:

(1) dismissal of claims as to franchisors was final judgment;

(2) district court acted within its discretion in finding there was no just reason for delay, supporting certification for appeal;

(3) as a matter of first impression, the element of a "beneficiary" cause of action under TVPRA, requiring defendant to knowingly benefit "from participating in a venture," does not incorporate the definition of "participation in a venture" from TVPRA's criminal provision; rather, phrase requires that plaintiff allege that defendant took part in a common undertaking or enterprise involving risk and potential profit;

(4) victims failed to plausibly allege that franchisors participated in venture that violated TVPRA, as would be required to state "beneficiary" claim under TVPRA;

(5) victims failed to state claim under Georgia Racketeer Influenced and Corrupt Organizations (RICO) Act; and

(6) under Georgia law, allegations of complaint were insufficient to state claim against franchisors based on theory of ratification of alleged sex-trafficking acts of franchisees' employees.

Affirmed.

Jordan, Circuit Judge, filed concurring opinion.

**1. Federal Courts ⬯3376**

District court's dismissal of claims against hotel franchisors for failure to state claim was final judgment that could support certification for appeal as partial final judgment, in multiple related actions by victims of sex trafficking against hotel franchisors and other defendants, alleging violations of the Trafficking Victims Protection Reauthorization Act (TVPRA) and Georgia state law, where district court directed entry of final judgment as to franchisor defendants and dismissed those defendants from case entirely. 18 U.S.C.A.

§ 1595(a); 28 U.S.C.A. § 1291; Fed. R. Civ. P. 54(b).

**2. Federal Courts ⬅3376**

In determining whether partial final judgment may properly be certified for appeal, district court must determine (1) whether its final judgment is, in fact, both final and judgment, and (2) whether there is just reason for delay in certifying order as immediately appealable. Fed. R. Civ. P. 54(b).

**3. Federal Courts ⬅3359**

An order is "final," as could be an appealable partial final judgment, if it disposes entirely of separable claim or dismisses party entirely. Fed. R. Civ. P. 54(b).

> See publication Words and Phrases for other judicial constructions and definitions.

**4. Federal Courts ⬅3359**

An order is a "judgment," as could constitute an appealable partial final judgment, if it is decision upon cognizable claim for relief. Fed. R. Civ. P. 54(b).

> See publication Words and Phrases for other judicial constructions and definitions.

**5. Federal Courts ⬅3376**

When determining whether there is no just reason for delay in certifying a partial final judgment as immediately appealable, district court should consider judicial administrative interests, including historic federal policy against piecemeal appeals, and equities involved. Fed. R. Civ. P. 54(b).

**6. Federal Courts ⬅3608**

Court of Appeals reviews de novo the district court's analysis of whether an order constitutes a final judgment, under rule providing for certification of partial final judgment for appeal. Fed. R. Civ. P. 54(b).

**7. Federal Courts ⬅3608**

Court of Appeals reviews only for abuse of discretion a district court's determination of whether there is no just reason for delay, as would support certification of partial final judgment for appeal. Fed. R. Civ. P. 54(b).

**8. Federal Courts ⬅3376**

District court acted within its discretion in finding there was no just reason for delay, supporting certification for appeal of its final judgment dismissing sex-trafficking victims' claims as to hotel franchisors, in victims' multiple actions against hotel franchisors and other defendants, alleging violations of the Trafficking Victims Protection Reauthorization Act (TVPRA) and Georgia state law; actions closely paralleled one another, and dismissal order was same in each. 18 U.S.C.A. § 1595(a); Fed. R. Civ. P. 54(b).

**9. Federal Courts ⬅3578**

Court of Appeals reviews an order granting a motion to dismiss with prejudice de novo, applying the same standards the district court used.

**10. Federal Courts ⬅3665**

On review of grant of motion to dismiss with prejudice, Court of Appeals must accept all factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff.

**11. Federal Civil Procedure ⬅1772**

Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice to defeat a motion to dismiss.

**12. Federal Civil Procedure ⬅1772, 1835**

To survive a motion to dismiss, a plaintiff must allege sufficient facts that, accepted as true, state a claim to relief that is plausible on its face.

**13. Statutes** ☞1091

Court begins task of statutory interpretation with common and ordinary meaning of words used in statute.

**14. Human Trafficking and Slavery** ☞27

A plaintiff asserting a "beneficiary" claim for violation of the Trafficking Victims Protection Reauthorization Act (TVPRA) stemming from participation in a venture must allege that the defendant knew it was receiving some value from participating in the alleged venture. 18 U.S.C.A. § 1595(a).

**15. Human Trafficking and Slavery** ☞27

Element of a "beneficiary" cause of action under Trafficking Victims Protection Reauthorization Act (TVPRA), requiring defendant to knowingly benefit "from participating in a venture," does not incorporate the definition of "participation in a venture" from TVPRA's criminal provision; rather, phrase requires that plaintiff allege that defendant took part in a common undertaking or enterprise involving risk and potential profit. 18 U.S.C.A. §§ 1591, 1595(a).

**16. Statutes** ☞1375

Court usually presumes that Congress intends repeated phrases in the same statute to mean the same thing.

**17. Human Trafficking and Slavery** ☞27

To state civil claim under Trafficking Victims Protection Reauthorization Act (TVPRA) based on "beneficiary" theory, plaintiff must plead sufficient facts to plausibly allege that the venture in which the defendants participated committed one of the statutorily-enumerated crimes against plaintiff. 18 U.S.C.A. § 1595(a).

**18. Human Trafficking and Slavery** ☞27

To state a "beneficiary" claim under Trafficking Victims Protection Reauthorization Act (TVPRA), a plaintiff must plausibly allege that the defendant (1) knowingly benefited, (2) from taking part in a common undertaking or enterprise involving risk and potential profit, (3) that undertaking or enterprise violated the TVPRA as to the plaintiff, and (4) the defendant had constructive or actual knowledge that the undertaking or enterprise violated the TVPRA as to the plaintiff. 18 U.S.C.A. § 1595(a).

**19. Human Trafficking and Slavery** ☞27, 71

Victims of sex trafficking did not plausibly allege that hotel franchisors participated in a venture that violated the Trafficking Victims Protection Reauthorization Act (TVPRA), as would be required to state a "beneficiary" claim under TVPRA, in action in which victims asserted that franchisors benefited from sex-trafficking ventures through room fees, despite assertions that franchisors sent inspectors to the hotels who would have seen signs of sex trafficking and that franchisors received customer reviews mentioning sex work occurring at the hotels; nothing in complaint showed that franchisors participated in a common undertaking or enterprise with victims' sex traffickers or others who violated TVPRA. 18 U.S.C.A. § 1595(a).

**20. Racketeer Influenced and Corrupt Organizations** ☞115

Allegations by victims of sex trafficking were insufficient to state claim against hotel franchisors for violation of Georgia Racketeer Influenced and Corrupt Organizations (RICO) Act stemming from alleged trafficking scheme involving hotels, where complaint gave only a threadbare recital of

**718**    **21 FEDERAL REPORTER, 4th SERIES**

elements of alleged predicate acts, including false imprisonment. Ga. Code Ann. §§ 16-14-4(a), 16-14-4(c).

### 21. Contracts ⟘202(1)

Under Georgia law, a franchisor that maintains no control over the operation of the franchise and simply provides supplies and consultation services to franchisee employees does not owe a duty to patrons of the franchise; such a duty only arises if the franchisor retains a right to control the day-to-day operations of the franchise.

### 22. Principal and Agent ⟘163(1)

Under Georgia law, a principal-agent relationship arises when one party subsequently ratifies the acts of another in his behalf. Ga. Code Ann. § 10-6-1.

### 23. Principal and Agent ⟘166(1), 171(1)

Under Georgia law, a party ratifies the acts of another by accepting and retaining the benefits of the other party's alleged unauthorized act, but the principal must also have full knowledge of all the material facts for that acceptance and retention to constitute ratification.

### 24. Innkeepers ⟘10.23(2)

Under Georgia law, allegations of complaint by victims of sex trafficking were insufficient to state claim against hotel franchisors for negligence based on theory that franchisors ratified alleged sex-trafficking acts of franchisees' employees, even though complaint asserted that franchisors sent inspectors to the hotels while hotel employees either assisted or turned a blind eye to the trafficking allegedly occurring there, where complaint did not allege full knowledge by franchisors of all material facts regarding employees' alleged actions.

———————

Appeal from the United States District Court for the Northern District of Geor-

gia, D.C. Docket No. 1:19-cv-03840-WMR, D.C. Docket No. 1:19-cv-03841-WMR, D.C. Docket No. 1:19-cv-03843-WMR, D.C. Docket No. 1:19-cv-03845-WMR

John E. Floyd, Michael Rosen Baumrind, Tiana S. Mykkeltvedt, Amanda Kay Seals, Manoj S. Varghese, Bondurant Mixson & Elmore, LLP, Atlanta, GA, Patrick J. McDonough, Jonathan Stephens Tonge, Andersen Tate & Carr, PC, Duluth, GA, for Plaintiff-Appellant.

Sara Marie Turner, Janelle E. Alleyne, Joshua Tropper, Baker Donelson Berman Caldwell & Berkowitz, PC, Birmingham, AL, Ilana Hope Eisenstein, DLA Piper LLP (US), Philadelphia, PA, for Defendant - Appellee Choice Hotels International, Inc.

David S. Sager, DLA Piper LLP (US), SHORT HILLS, NJ, Ilana Hope Eisenstein, Ben Fabens-Lassen, Rachel Horton, DLA Piper LLP (US), Philadelphia, PA, Brendan Krasinski, Emily Ballard Marshall, DLA Piper LLP (US), Atlanta, GA, for Defendant - Appellee Wyndham Hotels & Resorts Inc., Microtel Inns and Suites Franchising, Inc.

Jacob Roth, Jones Day, Washington, DC, for Amicus Curiae International Franchise Association.

Cynthia D. Vreeland, Wilmer Cutler Pickering Hale & Dorr, LLP, Boston, MA, for Amici Curiae Divas Who Win Freedom Center, House of Cherith, Out of Darkness, Sunrise Ministries, the Table of Delk, the Wilbanks Child Endangerment and Sexual Exploitation (Cease) Clinic, Rescuing Hope, Street Grace.

Before JORDAN, BRASHER, and ANDERSON, Circuit Judges.

BRASHER, Circuit Judge

Four sex trafficking victims, proceeding as Jane Does, filed complaints against nu-

merous defendants within the hotel industry for violations of the Trafficking Victims Protection Reauthorization Act, specifically 18 U.S.C. § 1595(a), and Georgia state law. Under the TVPRA, a trafficking victim may sue a sex-trafficking perpetrator and "whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of [the Trafficking Victims Protection Act]." 18 U.S.C. § 1595(a). The Does alleged that they were trafficked in Atlanta-area hotels and sued the hotel operators, employees, owners, franchisees, and franchisors of those hotels.

The district court held that the Does failed to plausibly allege claims against three hotel franchisors: Choice Hotels International, Inc., Wyndham Hotels & Resorts, Inc., and Microtel Inn & Suites Franchising, Inc. It dismissed their amended complaints as to those franchisors. And the Does appealed.

To resolve this appeal, we must answer two questions. First, we must decide a question of first impression about the elements of a TVPRA beneficiary claim. We hold that Section 1595(a) should be applied according to its plain meaning: that is, to state a claim for beneficiary liability under the TVPRA, a plaintiff must plausibly allege that the defendant ██████ ████████ taking part in a common undertaking or enterprise involving risk and potential profit, ████████████ ██████████████ ██████████████ ██████████████ ████████████ Second, we must determine whether the Does have plausibly alleged facts that satisfy those elements against each of the franchisors. Here, we conclude that the Does have

failed to meet that burden as to the three franchisors at issue on appeal. We likewise conclude that, as to these three defendants, the Does did not state a plausible claim under Georgia state law. Accordingly, we affirm.

## I. BACKGROUND

### A. Factual Background

Four Jane Does filed nearly identical amended complaints against individuals and businesses involved in the hotel industry, including individual hotels, owners, management, and franchisors. The Does alleged that they were "victims of the conspicuous and open sex trafficking that occurred at Defendants' hotels." They pleaded facts about hotel sex trafficking generally and sex trafficking in the Atlanta area, specifically.

Among the defendants are the three franchisors relevant to this appeal: Choice Hotels International, Inc., Wyndham Hotels & Resorts, Inc., and Microtel Inn & Suites Franchising, Inc. Choice is a franchisor that licenses its brand to the Suburban Extended Stay in Chamblee, Georgia. Wyndham is the parent company of MISF and the franchisor that licenses its brand to the Microtel Inn & Suites in Atlanta, Georgia. MISF enters into franchise agreements with Microtel Inn & Suites franchisees on Wyndham's behalf. The Does alleged that these franchisors violated the TVPRA, 18 U.S.C. § 1595(a); the Georgia Racketeer Influenced and Corrupt Organizations Act, O.C.G.A. §§ 16-14-4(a), (c); and acted negligently.

The Does alleged that these two hotels—the Suburban Extended Stay in Chamblee and the Microtel Inn & Suites in Atlanta—"accommodate[d], facilitate[d], and participate[d] in the sex trafficking of women, men, and children in Atlanta"— including their own sex trafficking. The

Does alleged that they were "forced to engage in commercial sex acts at [these] hotels by various sex traffickers." And the money that their traffickers made from those ventures was "used to pay . . . for their hotel rooms and other services in furtherance of the sex trafficking ventures occurring at [these] hotels." Some of the hotels' employees worked with the traffickers by, for example, acting "as lookouts, notifying traffickers if police were present." Traffickers paid these employees in cash or drugs.

Does 1, 2, and 4 alleged that there was a "well-established sex trafficking venture" at the Suburban Extended Stay licensed by Choice Hotels in Chamblee, Georgia. That alleged venture was comprised of "traffickers, the hotel's employees, management, owners, and franchisor, as well as others involved in the sex trafficking of victims at that hotel." Many of the local hotel's employees assisted and facilitated the Does' trafficking and were paid by the traffickers to work as lookouts. While being trafficked at the Suburban Extended Stay, the Does "exhibited numerous well-known and visible signs of a sex trafficking victim." And the state of the hotel rooms used for the trafficking and the constant flow of men in and out of rooms suggested that sex trafficking was occurring at the hotel.

Three Does alleged that Choice "controlled the policies and standards applicable to and enforced (or not enforced) at the Suburban Extended Stay (Chamblee), as well as the training of its managers and employees." Choice also "sent inspectors to examine this hotel, at times anonymously, and the ongoing sex trafficking activity would have been apparent to those inspectors." Further, the Does alleged upon information and belief that Choice monitored online reviews of the hotel, which "reported widespread prostitution and crime oc-

curring at the hotel." The Does also alleged that customers complained to Choice about prostitution, commercial sex trafficking, and other criminal activity at the hotel. The police responded to prostitution calls at the hotel on numerous occasions, and nonprofit and religious groups regularly visited "to provide food and rescue information to the sex trafficking victims they encounter[ed] at the hotel."

As for Wyndham and MISF, all four Does alleged that there was also a "well-established sex trafficking venture at the Microtel" in Atlanta that was licensed by Wyndham and MISF. The Does allege that the local hotel's employees participated in, assisted, and facilitated the Does' trafficking at the Microtel by working as look-outs for traffickers and allowing them to use the lobby computer to advertise for sex with Does 1 and 2. And during the years that Doe 4 was trafficked at the Microtel, "a single sex trafficker completely controlled the third floor of the hotel." That trafficker also used the banquet room to take photographs of victims to use for online advertisements. Wyndham and MISF "controlled the policies and standards applicable to and enforced (or not enforced) at the Microtel (Atlanta), as well as the training of its managers and employees." "Wyndham and [MISF]—the hotel's franchisor[s]—sent inspectors to examine this hotel, at times anonymously, and the ongoing sex trafficking activity would have been apparent to those inspectors."

The Does alleged that the three franchisors profited from this activity. In exchange for allowing the Microtel to use its brand, Wyndham received "royalty and other fees based on a percentage of their gross room revenue." The other franchisors also earned a percentage of the revenue generated from the daily rental of hotel rooms, including the rental of rooms

used to "harbor, exploit, and sell" each of the Does. And the franchisors "intentionally turn[ed] a blind eye to safety and security issues at their hotels . . . even when [they] knew or should have known part of [their] profits were derived from sex trafficking ventures." They "should have known" about those sex trafficking ventures, according to the Does, because sex trafficking occurred openly at the hotels, and the franchisors routinely "investigate individual hotel locations and take remedial action" when revenue is down.

### B. Procedural Background

The Does asserted a "standalone" civil beneficiary TVPRA claim against the franchisors and alleged that they knowingly benefitted from participation in a sex trafficking venture that they "knew or should have known" violated the TVPRA. They also asserted Georgia RICO claims predicated on violations of Section 1591 and Georgia state law. Finally, they alleged negligence based on the franchisors' "supervisory control and authority over employees, contractors and others" at the hotels, their failure to keep the hotels safe, and their failure to "adequately and properly protect their invitees, including [the Does], in breach of their duty of care." Soon after filing the amended complaint, Doe 3 voluntarily dismissed all claims against Choice without prejudice.

Choice, Wyndham, and MISF moved to dismiss each of the Does' amended complaints against them for failure to state a claim. Choice alternatively moved to strike certain allegations from Does 1, 2, and 4's amended complaints as "impertinent and salacious." The district court granted the motions to dismiss as to all claims against Choice, Wyndham, and MISF without prejudice in nearly identical orders in each case. In those orders, the district court also granted Choice's motion to strike the

disputed language from Does 1, 2, and 4's amended complaints and *sua sponte* struck the same material from Doe 3's amended complaint.

The Does then moved for entry of judgment in favor of Choice (in all cases except for the third Doe's case), Wyndham, and MISF under Federal Rule of Civil Procedure 54(b) and for interlocutory review under 28 U.S.C. § 1292(b). They argued that the district court's order dismissing Wyndham, MISF, and Choice was a final judgment under Rule 54(b) and there was no just reason for delay because (1) the immediate resolution of an appeal would resolve issues in all four interrelated Doe actions, streamlining the litigation; (2) there would be a risk of duplicative discovery and trials without an immediate appeal, and an immediate appeal could serve to limit the scope of discovery; (3) the cases were still in the early stages of discovery, so duplicative discovery could best be avoided now; and (4) COVID-19's impact on the defendants' operations could diminish the Does' ability to recover later on. The Does also argued that the question presented by the dismissal order, how to interpret 18 U.S.C. § 1595(a)'s knowledge requirement, satisfied the Section 1292(b) factors for interlocutory review. No defendant opposed the motion.

The district court granted the franchisors' motions for Rule 54(b) certification and interlocutory review under Section 1292(b) and stayed discovery pending the anticipated appeals. The court later amended the entry of final judgment to dismiss Choice, Wyndham, and MISF with prejudice at the Does' request and after they waived the right to later add the defendants if unsuccessful on appeal.

Each Doe timely appealed the district court's amended Rule 54(b) judgment and, in the alternative, filed a petition for permission to appeal under Section 1292(b).

## II. JURISDICTION

**[1]**  We must first satisfy ourselves that we have jurisdiction over this appeal. *See Boyd v. Homes of Legend, Inc.*, 188 F.3d 1294, 1297 (11th Cir. 1999). The Does argue that we have jurisdiction under both 28 U.S.C. § 1291 and 28 U.S.C. § 1292. We conclude that jurisdiction is proper under 28 U.S.C. § 1291 because the district court properly directed entry of final judgment as to the franchisor defendants under Rule 54(b). We therefore do not reach the question of whether jurisdiction is proper under Section 1292(b).

**[2–7]**  "A district court must follow a two-step analysis in determining whether a partial final judgment may properly be certified under Rule 54(b)." *Lloyd Noland Found., Inc. v. Tenet Health Care Corp.*, 483 F.3d 773, 777 (11th Cir. 2007). The court must determine (1) whether "its final judgment is, in fact, both 'final' and a 'judgment' "; and (2) whether there is "just reason for delay" in certifying the order as immediately appealable. *Id.* An order is "final" if it "disposes entirely of a separable claim or dismisses a party entirely." *In re Se. Banking Corp.*, 69 F.3d 1539, 1547 (11th Cir. 1995). It is a "judgment" if "it is a decision upon a cognizable claim for relief." *Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 7, 100 S.Ct. 1460, 64 L.Ed.2d 1 (1980). When determining whether there is no just reason for delay, the district court should consider "judicial administrative interests—including the historic federal policy against piecemeal appeals—and the equities involved." *Lloyd Noland Found.*, 483 F.3d at 778 (cleaned up). This Court reviews the first step of the district court's analysis—whether the order constitutes a final judgment—*de novo. Id.* at 778 & n.5. We review whether there was no "just reason for delay" only for abuse of discretion. *Id.* at 778 n.5.

First, the district court's orders granting the motions to dismiss filed by Choice, Wyndham, and MISF were "final judgments" for purposes of Rule 54(b). Those orders dismissed Choice, Wyndham, and MISF from the cases entirely. *See In re Se. Banking Corp.*, 69 F.3d at 1547. The court initially dismissed the franchisors without prejudice and reserved the Does' rights to add them back later if newly discovered evidence warranted their inclusion. Even with this reservation of right, that order was still an "ultimate disposition" of the claims against those parties. *See Lloyd Noland Found.*, 483 F.3d at 777. The district court later amended its dismissal of the franchisors to be with prejudice after the Does stipulated that they would rest on their original allegations against the franchisors and waived their right to add them to the case later should their appeals fail. Accordingly, the district court did not err in concluding that its dismissals of the franchisors were "final judgments" for purposes of Rule 54(b).

**[8]**  Second, the district court did not abuse its discretion in determining that there was no just reason to delay this appeal. This Court has stated that "limitation of piecemeal appeals [is] an essential purpose served by postponing final disposition" of claims that a party wishes to appeal. *Ebrahimi v. City of Huntsville Bd. of Educ.*, 114 F.3d 162, 168 (11th Cir. 1997). We have also cautioned that "[a]bsent special circumstances . . . the district court's preference for pretrial appellate review of its dismissal decisions constitutes an improper basis for issuance of a partial final judgment" under Rule 54(b). *Id.* at 168.

The district court did not abuse its discretion in concluding that there was no just reason for delay due to the unique circumstances of these cases. The Does' cases closely parallel one another, and the district court's dismissal order is the same

in each. Addressing this consolidated appeal now significantly enhances the efficiency of the litigation. The relatedness of these four cases, their early stage in litigation, the number of defendants involved, and the substantial discovery to be had are the kind of "special circumstances" that warrant appellate review. *See Ebrahimi*, 114 F.3d at 168. Accordingly, the district court did not abuse its discretion in finding no just reason to delay the appeal. Consequently, this Court has jurisdiction over the appeal under 28 U.S.C. § 1291 and we need not reach the question of whether the district court properly certified its rulings as immediately appealable under Section 1292(b).

## III. STANDARD OF REVIEW

[9–12] This Court "review[s] an order granting a motion to dismiss with prejudice *de novo*, applying the same standards the district court used." *Young Apartments, Inc. v. Town of Jupiter*, 529 F.3d 1027, 1037 (11th Cir. 2008). As such, we must accept all factual allegations in the complaint as true and construe them "in the light most favorable to the plaintiff." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Instead, a plaintiff must allege sufficient facts that, "accepted as true, [ ] 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

## IV. DISCUSSION

### A. Defining a Beneficiary Claim

[13] At its core, this is a case about statutory interpretation. We begin that task, as always, with the common and ordinary meaning of the words used in a stat-ute. *See Consol. Bank, N.A. v. U.S. Dep't of Treasury*, 118 F.3d 1461, 1464 (11th Cir. 1997) ("In the absence of a statutory definition of a term, we look to the common usage of words for their meaning."); *see also CBS Inc. v. PrimeTime 24 Joint Venture*, 245 F.3d 1217, 1222 (11th Cir. 2001) (stating that, when the statutory text is unambiguous, this Court should begin and end its analysis with the text's plain meaning).

The Trafficking Victims Protection Reauthorization Act, 18 U.S.C. § 1591, prohibits the sex trafficking of children or adults by force, fraud, or coercion. In addition to that criminal prohibition, the Act provides sex-trafficking victims with a civil cause of action against "the perpetrator (or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter)." 18 U.S.C. § 1595(a). For purposes of this appeal, we assume that the Does are sex-trafficking victims under the TVPRA. The only question for this Court, therefore, is whether the Does have plausibly alleged that the franchisors are liable.





**724**          **21 FEDERAL REPORTER, 4th SERIES**



[15] Most of the parties' dispute concerns the second element—to knowingly benefit *from participating in a venture*. The franchisors argue, and the district court held, that we should incorporate the definition of "participation in a venture" from the criminal provisions in Section 1591. Section 1591(e)(4) defines "participation in a venture" as "knowingly assisting, supporting, or facilitating a violation of subsection (a)(1)," which criminalizes "commercial sex act[s]" of minors or obtained through threat or force. For the following reasons, we disagree with transposing the statutory definition from this criminal section to the civil cause of action.

[16] First, although we usually presume that Congress intends phrases in the same statute to mean the same thing, *see, e.g., Law v. Siegel,* 571 U.S. 415, 422, 134 S.Ct. 1188, 188 L.Ed.2d 146 (2014), the text of this statute overcomes that presumption. Section 1591 clearly states that its definition of "participation in a venture" applies only "[i]n this section." 18 U.S.C. § 1591(e). That is, by its plain terms, the definition applies only to the phrase as used in Section 1591 of the statute. That limited application makes sense; Section 1591 carries criminal penalties, whereas Section 1595 does not. Presumably because it imposes criminal liability, Section 1591(a) includes a scienter requirement that does not appear in Section 1595(a)—a

defendant must *know* "that means of force, threats of force, fraud, coercion . . . , or any combination of such means will be used to cause the person to engage in a commercial sex act." 18 U.S.C. § 1591(a).

Second, the civil provisions of Section 1595(a) make no sense with Section 1591's definition of "participation in a venture" read in. A plaintiff can sue a perpetrator of sex trafficking—*i.e.,* someone who has violated the criminal statute—without resort to the beneficiary cause of action. To state a beneficiary claim, however, a plaintiff must allege that the defendant "knowingly benefit[ted], financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter." *See* 18 U.S.C. § 1595(a). If we replace "participation in a venture" with Section 1591(e)(4)'s "knowingly assisting, supporting, or facilitating a violation of sub-section (a)(1)," we get a nonsense sentence: benefited "from [*knowingly* assisting, supporting, or facilitating a violation of subsection (a)(1)] which that person knew *or should have known* has engaged in an act in violation of this chapter." In other words, the franchisors' formulation requires a plaintiff to prove that the defendant knowingly facilitated a violation, making the "should have known" language superfluous.

Instead of incorporating Section 1591(e)(4)'s idiosyncratic definition of "participation in a venture," we interpret that phrase in Section 1595(a) according to its plain meaning. The ordinary meaning of "venture" is an undertaking or enterprise involving risk and potential profit. *See Venture,* Black's Law Dictionary (11th ed. 2019) ("[a]n undertaking that involves risk; esp., a speculative commercial enterprise"); *Venture,* Oxford English Dictionary 520 (2d ed. 1989) ("[a]n enterprise of a business nature in which there is consid-

erable risk of loss as well as chance of gain; a commercial speculation"). The ordinary meaning of participate or participation is to take part in or share with others in common or in an association. *See Participation*, Black's Law Dictionary (11th ed. 2019) ("[t]he act of taking part in something"); *Participate*, Oxford English Dictionary 268 (2d ed. 1989) ("[a] taking part, association, or sharing (with others) in some action or matter"). Accordingly, we conclude that the phrase "participation in a venture" requires that the Does allege that the franchisors took part in a common undertaking or enterprise involving risk and potential profit.





In defining these elements according to their plain meaning, we depart from some courts and agree with others.

But most district courts, like us, have rejected the idea that a court can transpose the definition of "participation in a venture" from the criminal section to the civil cause of action. *See, e.g., A.B. v. Marriott Int'l, Inc.*, 455 F.Supp.3d 171, 183 (E.D. Pa. 2020). As for our sister circuits, only the First Circuit has addressed a Section 1595(a) beneficiary claim. *See Ricchio v. McLean*, 853 F.3d 553, 556–58 (1st Cir. 2017). And we think our reasoning is consistent with the disposition there. In *Ricchio*, the plaintiff sued the owner and live-in operators of a hotel where she was held hostage and sexually abused. *Id.* at 556. The First Circuit held that the plaintiff had plausibly alleged that the operators' association with the plaintiff's sex trafficker was a "venture" because her abuser "had prior commercial dealings with the [operators], which the parties wished to reinstate for profit." *Id.* at 555. Consider-

**726**          **21 FEDERAL REPORTER, 4th SERIES**

ing these dealings, the plaintiff also plausibly alleged that, by renting a room to the abuser, the operators were "associating with him in an effort to force [the plaintiff] to serve their business objective." *Id.* We agree that these kinds of allegations would establish a hotel operator's participation in a venture with a sex trafficker.

[18]   In short, we hold that, to state a beneficiary claim under Section 1595(a), a plaintiff must plausibly allege that the defendant ~~taking~~ *[handwritten: took]* part in a common undertaking or enterprise involving risk and potential profit,

### B. The Does' Beneficiary Claims Against the Franchisors

[19]   Having defined the elements of a beneficiary claim, we now consider whether the Does have stated such a claim against these three hotel franchisors for the operation of these two hotels. We conclude that they have not. Specifically, the Does have not plausibly alleged that these three hotel franchisors participated in a venture that violated the TVPRA.

We begin with the venture the Does say that the franchisors participated in. Throughout their complaints, the Does alleged that the franchisors participated in "sex trafficking ventures." On the first page of the complaints, they referred to "sex trafficking ventures" that the "Defendants were essential to the success of." On the next page they alleged that "[e]ach of

Defendants' hotels hosted one or more hotel sex trafficking ventures." They stated that "several Defendants' agents and employees actively participated in sex trafficking ventures and were rewarded for doing so." They subtitled the allegations against each franchisor as "The Suburban Extended Stay (Chamblee) Sex Trafficking Venture" and "The Microtel (Atlanta) Sex Trafficking Venture." Over and over, they repeated this phrase: sex trafficking venture. In fact, every single reference to a "venture" in the complaints refers to a "sex trafficking venture." Then, the Does alleged that the franchisors profited from this "sex trafficking venture" through room fees and should have known that this venture victimized them in violation of the TVPRA.

So we must determine whether the Does plausibly alleged that the franchisors took part in the common undertaking of sex trafficking with hotel employees, management, owners, and sex traffickers. On this complaint, they did not. The Does alleged that Wyndham "licenses its hotel brands, including Microtel … to franchisees who pay Wyndham royalty and other fees based on a percentage of their gross room revenue." They alleged that Choice "received a percentage of the revenue generated by the operation of the Suburban Extended Stay (Chamblee), including a percentage of the revenue generated for the rate charged on the rooms in which" each Doe was trafficked. They also alleged that each of the franchisors "owned, managed, supervised, operated, oversaw, controlled the operation of, and/or were inextricably connected to the renting of rooms" at the hotels. These allegations may sug-

---

1.   The Does appeal the district court's decision to strike general allegations about sex trafficking from their amended complaints. For purposes of considering the dismissals on appeal, we consider all allegations in the amended

complaints, including those that the district court struck. Even considering those allegations, we conclude that the district court did not err in granting the motions to dismiss.

gest that the franchisors financially benefitted from renting hotel rooms to the Does' sex traffickers. But they do nothing to show that the franchisors participated in a common undertaking involving risk or profit that violated the TVPRA—*i.e.*, the alleged sex trafficking ventures.

The Does also alleged that the franchisors investigated the individual hotels, took remedial action when revenue was down, read online reviews mentioning prostitution and crime occurring generally at the hotels, and controlled the training of managers and employees who were allegedly involved in facilitating sex trafficking at the hotels. Again, these allegations are insufficient to state a claim. None of these allegations suggest that the franchisors participated in an alleged common undertaking or enterprise with the Does' sex traffickers or others at the hotel who violated the statute.

Perhaps recognizing their tenuous legal position, the Does allege something different on appeal: that the franchisors participated in commercial ventures to operate hotels and that those hotel ventures violated the statute. There are two problems with that new theory. First, it is incompatible with the allegations in the Does' complaints. Again, every time the complaints refer to ventures, they refer to "sex trafficking ventures." And those ventures were alleged to include the sex traffickers themselves as participants. On the other hand, there are no nonconclusory allegations in the complaint about the franchisors' business relationship with anyone else involved in operating these hotels. Second, the Does failed to present this theory to the district court when given the opportunity. This was no oversight. The district court granted the Does leave to amend their complaints, yet they still alleged "sex trafficking ventures." The district court then dismissed the franchisors

without prejudice, specifically so that the Does could later amend their complaints to add them back. The Does chose instead to request that dismissal be entered with prejudice. We will not consider this theory for the first time on appeal after the Does were given ample opportunity to present it in the district court. *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004).

In short, to participate in a venture under Section 1595(a), a defendant must take part in a common undertaking involving risk or profit. The Does chose to frame the ventures at issue as sex trafficking ventures in their amended complaints. Yet they have provided no plausible allegations that the franchisors took part in the common undertaking of sex trafficking. Their only allegations as to the franchisors' knowledge or participation in those sex trafficking ventures are that the franchisors sent inspectors to the hotels who would have seen signs of sex trafficking and that they received reviews mentioning sex work occurring at the hotels. But observing something is not the same as participating in it. Accordingly, the Does' Section 1595(a) beneficiary claims against the franchisors fail.

### C. State Law Claims

[20] We also affirm the district court's dismissal of the Does' Georgia RICO Act and negligence claims against the franchisors.

The Does argue that the district court erred by failing to accept their allegations when dismissing their RICO claims. And they argue that they plausibly alleged the predicate acts of prostitution and sexual servitude. Finally, they argue that the district court applied an incorrect standard in determining that they had failed to plausibly allege a criminal agreement. As part of that argument, the Does explain that to

establish an agreement for purposes of a RICO conspiracy, they need only allege "a mere tacit understanding between two or more people that they will pursue a particular criminal objective." And they continue that they plausibly alleged such "a tacit understanding between the Franchisors and their franchisees to turn a blind eye to allow and profit from the sex trafficking at the Microtel and SES." We disagree.

Accepting all allegations in the amended complaints, the Does have failed to plausibly allege a Georgia RICO claim. First, the Does alleged that the franchisors violated O.C.G.A. §§ 16-14-4(a) and (c). Section 16-14-4(a) makes it illegal "for any person, through a pattern of racketeering activity or proceeds derived therefrom, to acquire or maintain, directly or indirectly, any interest in or control of any enterprise, real property, or personal property of any nature, including money." A "pattern of racketeering activity" means "[e]ngaging in at least two acts of racketeering activity in furtherance of one or more incidents, schemes, or transactions that have the same or similar intents, results, accomplices, victims, or methods of commission or otherwise are interrelated by distinguishing characteristics." O.C.G.A. § 16-14-3(4)(A). A "racketeering activity" is the commission, attempted commission, solicitation, coercion, or intimidation of another "to commit any crime which is chargeable by indictment under" Georgia law. Id. at § 16-14-3(5)(A). And "[a]ny person who is injured by reason of any violation of Code Section 16-4-4 shall have a cause of action" against the violator. Id. at § 16-14-6(c).

The Does alleged that the franchisors "as parties to the crime, and as co-conspirators" subjected them to sexual servitude in violation of O.C.G.A. § 16-5-46(c)(1) "when they were coerced into performing or conducting sexually explicit conduct for which something of value, directly or indi-

rectly, was given, promised to, or received by someone." That "threadbare recital[ ]" of the elements of "sexual servitude" is insufficient to plausibly allege a violation of Section 16-5-46(c)(1). See Iqbal, 556 U.S. at 663, 129 S.Ct. 1937.

The Does also alleged that the franchisors committed false imprisonment, keeping a place of prostitution, pimping, and pandering, in violation of Georgia law. Each allegation contained no more than a threadbare recital of the elements of the crimes supported by conclusory allegations. Accordingly, the Does failed to plausibly allege the predicate acts necessary to support their RICO claims. The district court did not err in dismissing the Does' substantive RICO claims against the franchisors.

Section 16-14-4(c) makes it illegal "for any person to conspire or endeavor to violate" Section 16-14-4(a). To violate Section 16-14-4(c), one must either commit an overt act to "effect the object of" the endeavor or conspiracy or a co-conspirator must commit such an overt act. See O.C.G.A. § 16-14-4(c)(1)–(2). The Does alleged that the franchisors conspired "to acquire money through a pattern of racketeering activity." But the pattern of racketeering activity on which they predicate their conspiracy counts relies on the same threadbare allegations as the substantive RICO claims. Because those allegations are insufficient to plausibly allege any RICO violation, the district court also correctly dismissed the Does' conspiracy counts.

[21] Finally, the district court dismissed the Does' negligence claims after concluding that the amended complaints merely alleged ordinary franchise relationships "which do not give rise to vicarious liability against franchisors." A franchisor that "maintain[s] no control over the operation of the [franchise]" and "simply pro-

vide[s] supplies and consultation services" to franchisee employees does not owe a duty to patrons of the franchise. *Cobb v. Popeye's, Inc.*, 188 Ga.App. 443, 373 S.E.2d 233, 235 (1988). Such a duty only arises if the franchisor retains a right to control the day-to-day operations of the franchise. *See Schlotzky's, Inc. v. Hyde*, 245 Ga.App. 888, 538 S.E.2d 561, 562 (2000).

The Does allege that the franchisors "owned and/or managed and/or operated and/or oversaw and/or controlled the operation" of their hotels and that they "had supervisory control over" the hotels. Those allegations are mere recitations of the requirements for franchisor liability, and the Does do not allege any facts to support them. Accordingly, they have failed to plausibly allege that the franchisors owed the Does a duty. *See Iqbal*, 556 U.S. at 663, 129 S.Ct. 1937.

**[22–24]** The Does' argument that the franchisors ratified the acts of the franchisees also fails. Under O.C.G.A. § 10-6-1, a principal-agent relationship arises when one party "subsequently ratifies the acts of another in his behalf." A party ratifies the acts of another by accepting and retaining the benefits of the other party's alleged unauthorized act. *DaimlerChrysler Motors Co. v. Clemente*, 294 Ga.App. 38, 668 S.E.2d 737, 746 (2008). But the principal must also have "full knowledge of all the material facts" for that acceptance and retention to constitute ratification. *Hyer v. Citizens & S. Nat'l Bank in Macon*, 188 Ga.App. 452, 373 S.E.2d 391, 393 (1988).

The Does did not plausibly allege that the franchisors had "full knowledge of all the material facts" regarding the franchise employees' actions in assisting and facilitating sex trafficking. The Does argue otherwise based on their allegations that the franchisors sent inspectors to the hotels "while hotel employees either assisted or at the very least, turned a blind eye" to the trafficking occurring there. But that allegation alone does not rise to the level of plausibly alleging the franchisors' full knowledge of *all material facts*. Accordingly, the Does did not plausibly allege that the franchisors ratified the franchise employees' actions, and the district court did not err in dismissing the negligence claims.

## V.  CONCLUSION

Applying the plain meaning of Section 1595(a) to all allegations in the amended complaints, the Does failed to plausibly allege a violation of that section. Nor have the Does plausibly alleged a violation of state law. Accordingly, the district court's grant of the franchisors' motions to dismiss is **AFFIRMED**.

Because we conclude that jurisdiction is proper under 28 U.S.C. § 1291, we **DENY** the Does' petitions for permission to appeal under Section 1292(b) as moot.

JORDAN, Circuit Judge, Concurring.

I join the court's opinion and write separately to emphasize some aspects of our decision.

First, our opinion addresses the plaintiffs' TVPRA "beneficiary" claims against franchisors which do not operate or manage the hotels at which sex trafficking allegedly occurred. *See* 18 U.S.C. § 1595(a). I agree that the allegations here are insufficient given the plaintiffs' assertion of (and reliance on) a "sex trafficking venture." *See, e.g., E.S. v. Best Western Int'l, Inc.*, 510 F.Supp. 3d 420, 427–28 (N.D. Tex. 2021); *S.J. v. Choice Hotels Int'l, Inc.*, 473 F.Supp. 3d 147, 153–54 (E.D.N.Y. 2020). But, as the court explains, similar claims against those who own, operate, or manage the hotels in question (e.g., franchisees) would withstand a Rule 12(b)(6) motion to dismiss. *See, e.g., Ricchio v.*

**730**　　　　21 FEDERAL REPORTER, 4th SERIES

*McLean*, 853 F.3d 553, 555–57 (1st Cir. 2017); *S.Y. v. Naples Hotel Co.*, 476 F.Supp. 3d 1251, 1256–57 (M.D. Fla. 2020).

Second, the participation element of a "beneficiary" claim under § 1595(a) does not require that the defendant in question have participated in the sex trafficking act itself. *See, e.g., S.Y.*, 476 F.Supp. 3d at 1256. Instead, as the court explains, "participation in a venture" requires only that a defendant take part in a common undertaking or enterprise involving risk and potential profit.



**UNITED STATES of America, Interested Party-Appellant,**

**v.**

**SECRETARY FLORIDA AGENCY FOR HEALTH CARE ADMINISTRATION, in her official capacity, State Surgeon General, in his official capacity as the State Surgeon General and Secretary of the Florida Department of Health, Kristina Wiggins, in her official capacity as Deputy Secretary of the Florida Department of Health and Director of Children's Medical Services, State Surgeon General John Armstrong, MD, Deputy Secretary Dr. Celeste Philip, et al., Defendants-Appellees.**

No. 17-13595

United States Court of Appeals, Eleventh Circuit.

Filed: 12/22/2021

Appeal from the United States District Court for the Southern District of Florida, D.C. Docket No. 0:12-cv-60460-WJZ

Bonnie I. Robin-Vergeer, Thomas E. Chandler, U.S. Department of Justice, Civil Rights Division, Appellate Section, Washington, DC, Elizabeth Erin McDonald, Emily M. Smachetti, Lindsey Weinstock, U.S. Attorney General's Office, Washington, DC, Emily M. Smachetti, U.S. Attorney General's Office, Miami, FL, U.S. Attorney Service - Southern District of Florida, U.S. Attorney Service - SFL, Miami, FL, for Interested Party-Appellant.

Andrew Taylor Sheeran, Leslei Gayle Street, Florida Agency for Health Care Administration, Tallahassee, FL, Stuart F. Williams, Liberty Dental, Tallahassee, FL, for Defendant-Appellee Secretary Florida Agency for Health Care Administration.

Caryl Kilinski, Office of the Attorney General, Tallahassee, FL, Andrew Taylor Sheeran, Florida Agency for Health Care Administration, Tallahassee, FL, Jennifer Ann Tschetter, Florida Department of Health, Tallahassee, FL, for Defendants-Appellees Surgeon General, State of Florida, Kristina Wiggins.

Jay Patrick Reynolds, Florida Department of Health, Tallahassee, FL, for Defendant-Appellee John Armstrong.

William Eugene Gandy, Jr., Florida Department of Health, Tallahassee, FL, for Defendant-Appellee Celeste Philip.

Carter Glasgow Phillips, Sidley Austin, LLP, Washington, DC, Andre V. Bardos, GrayRobinson, PA, Tallahassee, FL, Stefan R. Grow, Florida Agency for Health